**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| IN RE: AIR CRASH INTO THE JAVA SEA ON JANUARY 9, 2021 | MDL No. 1:23-md-3072 |
| This Document Relates To: ALL CASES | |

**BRIEF IN SUPPORT OF BOEING'S MOTION TO DISMISS FOR FORUM NON CONVENIENS**

**TABLE OF CONTENTS**

**PAGE**

INTRODUCTION ....................................................................................................... 1

FACTUAL BACKGROUND ....................................................................................... 3

    A.    Sriwijaya Air is an Indonesian airline that serves mostly domestic routes
and does not fly to North America. ......................................................... 3

    B.    Sriwijaya Air flight 182 crashed into the Java Sea shortly after taking off
from Soekarno-Hatta International Airport in Jakarta. ........................... 4

    C.    Indonesian authorities investigated the accident and identified Sriwijaya's
maintenance and training activities, which were performed in Indonesia,
as some of the contributing factors. ....................................................... 4

    D.    This accident and the aviation industry are the subject of intense public
interest in Indonesia. .............................................................................. 7

    E.    The plaintiffs brought suit against Boeing in the United States. ........... 8

ARGUMENT ............................................................................................................ 10

    A.    The Court should address *forum non conveniens* before ruling on the
pending remand motions. ....................................................................... 10

    B.    Federal courts routinely grant motions to dismiss for *forum non
conveniens* for cases arising out of foreign aviation accidents. ........... 10

    C.    Indonesia is an available and adequate forum. .................................... 14

    D.    The private and public interest factors strongly favor an Indonesian forum. ...... 17

        1.    Plaintiffs' choice of a U.S. forum is not entitled to special
deference. ..................................................................................... 17

        2.    The private interest factors weigh heavily in favor of dismissal. ........... 18

        3.    The public interest factors also strongly favor an Indonesian forum ....... 25

CONCLUSION ........................................................................................................ 30

# TABLE OF AUTHORITIES

**PAGE(S)**

CASES

*Abad v. Bayer Corp.*,
563 F.3d 663 (7th Cir. 2009) ...................................................................................18

*Ahmed v. Boeing Co.*,
720 F.2d 224 (1st Cir. 1983).....................................................................................12

*Aprillia v. Boeing*,
No. 23-cv-00474 (E.D. Va. Oct. 13, 2022).............................................................5, 8

*Ballesteros v. Boeing Co.*,
No. C22-0393 TSZ, 2023 WL 2757229 (W.D. Wash. Apr. 3, 2023).....................25

*Baumgart v. Fairchild Aircraft Corp.*,
981 F.2d 824 (5th Cir. 1993) ...................................................................................13

*Can v. Goodrich Pump & Engine Control Sys., Inc.*,
711 F. Supp. 2d 241 (D. Conn. 2010) ......................................................................13

*Cheng v. Boeing Co.*,
708 F.2d 1406 (9th Cir. 1983) .................................................................................13

*Chhawchharia v. Boeing Co.*,
657 F. Supp. 1157 (S.D.N.Y. 1987)..........................................................................14

*Clerides v. Boeing Co.*,
534 F.3d 623 (7th Cir. 2008) ........................................................................... passim

*Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster NV*,
569 F.3d 189 (4th Cir. 2009) ...................................................................................29

*Da Rocha v. Bell Helicopter Textron, Inc.*,
451 F. Supp. 2d 1318 (S.D. Fla. 2006) ....................................................................13

*Daimler AG v. Bauman*,
571 U.S. 117 (2014).................................................................................................18

*De Aguilar v. Boeing Co.*,
11 F.3d 55 (5th Cir. 1993) .......................................................................................12

*DiFederico v. Marriott Int'l, Inc.*,
714 F.3d 796 (4th Cir. 2013) ...................................................................................17

## TABLE OF AUTHORITIES (CONTINUED)

**PAGE(S)**

*ElcomSoft, Ltd. v. Passcovery Co.*,
   958 F. Supp. 2d 616 (E.D. Va. 2013) ...................................................................24

*Esheva v. Siberia Airlines*,
   499 F. Supp. 2d 493 (S.D.N.Y. 2007)...................................................................13

*Faat v. Honeywell Int'l, Inc.*,
   No. CIV.A 04-4333, 2005 WL 2475701 (D.N.J. Oct. 5, 2005)..............................13

*Ford Motor Co. v. Nat'l Indem. Co.*,
   972 F. Supp. 2d 850 (E.D. Va. 2013) ...................................................................28

*Fortaner v. Boeing Co.*,
   504 F. App'x 573 (9th Cir. 2013) .........................................................................13

*Francois ex rel. Estate of Francois v. Hartford Holding Co.*,
   424 F. App'x 138 (3rd Cir. 2011)........................................................................12

*Galbert v. W. Caribbean Airways*,
   715 F.3d 1290 (11th Cir. 2013) ...........................................................................13

*Gambra v. Int'l Lease Fin. Corp.*,
   377 F. Supp. 2d 810 (C.D. Cal. 2005) ..................................................................13

*Grodinsky v. Fairchild Indus., Inc.*,
   507 F. Supp. 1245 (D. Md. 1981).........................................................................14

*Gschwind v. Cessna Aircraft Co.*,
   161 F.3d 602 (10th Cir. 1998) .............................................................................12

*Gulf Oil Corp. v. Gilbert*,
   330 U.S. 501 (1947)......................................................................................24, 29

*Harp v. Airblue Ltd.*,
   879 F. Supp. 2d 1069 (C.D. Cal. 2012) ................................................................13

*Helog Ag v. Kaman Aerospace Corp.*,
   228 F. Supp. 2d 91 (D. Conn. 2002).....................................................................13

*Hensley v. City of Charlotte*,
   No. 21-2308, 2023 WL 1990298 (4th Cir. Feb. 14, 2023) .....................................10

*In re Air Crash Disaster Over Makassar Strait, Sulawesi*,
   No. 09-CV-3805 2011 WL 91037 (N.D. Ill. Jan. 11, 2011)............................ passim

## TABLE OF AUTHORITIES (CONTINUED)

PAGE(S)

*In re: Air Crash Into the Java Sea on January 9, 2021*,
  MDL No. 3072 (J.P.M.L. Apr. 7, 2023) ...................................................................8

*In re Air Crash Over the Mid-Atl. on June 1, 2009*,
  760 F. Supp. 2d 832 (N.D. Cal. 2010) .................................................................13

*In re Air Crash Over the S. Indian Ocean on Mar. 8, 2014*,
  352 F. Supp. 3d 19 (D.D.C. 2018), *aff'd* 946 F.3d 607 (D.C. Cir. 2020)..............18

*In re Air Crash over the Southern Indian Ocean on March 8, 2014*,
  946 F.3d 607 (D.C. Cir. 2020) ...........................................................................13

*In re Air Crash Over Taiwan Straits on May 25, 2002*,
  331 F. Supp. 2d 1176 (C.D. Cal. 2004) ...................................................13, 21, 22

*In re Bridgestone/Firestone, Inc.*,
  420 F.3d 702 (7th Cir. 2005) ..............................................................................30

*In re Disaster at Riyadh Airport, Saudi Arabia, on Aug. 19, 1980*,
  540 F. Supp. 1141 (D.D.C. 1982) ........................................................................14

*Jennings v. Boeing Co.*,
  660 F. Supp. 796 (E.D. Pa.), *order amended on denial of reconsideration*,
  677 F. Supp. 803 (E.D. Pa. 1987), *aff'd*, 838 F.2d 1206 (3d Cir. 1988)................14

*Jiali Tang v. Synutra Int'l, Inc.*,
  656 F.3d 242 (4th Cir. 2011) ........................................................................ passim

*Kastenbaum v. Boeing*,
  No. 23-cv-00044 (E.D. Va. Jan. 11, 2023) .............................................................8

*Kern v. Jeppesen Sanderson, Inc.*,
  867 F. Supp. 525 (S.D. Tex. 1994) ......................................................................13

*King v. Cessna Aircraft Co.*,
  562 F.3d 1374 (11th Cir. 2009) ...........................................................................13

*Kolawole v. Sellers*,
  863 F.3d 1361 (11th Cir. 2017) .......................................................................12, 21

*Kryvicky v. Scandinavian Airlines System*,
  807 F.2d 514 (6th Cir. 1986) ..........................................................................12, 27

*Lauritzen v. Larsen*,
  345 U.S. 571 (1953)...........................................................................................28

## TABLE OF AUTHORITIES (CONTINUED)

PAGE(S)

*Leon v. Millon Air, Inc.*,
　251 F.3d 1305 (11th Cir. 2001) .....................................................................................13, 26

*Lleras v. Excelaire Services Inc.*,
　354 F. App'x 585 (2d Cir. 2009) .............................................................................................12

*Lueck v. Sundstrand Corp.*,
　236 F.3d 1137 (9th Cir. 2001) ...................................................................................... passim

*Lumenta v. Bell Helicopter Textron, Inc.*,
　No. 01-14-00207-CV, 2015 WL 5076299 (Tex. App. Aug. 27, 2015) ...................................16

*Magnin v. Teledyne Cont'l Motors*,
　91 F.3d 1424 (11th Cir. 1996) ................................................................................................13

*Martino v. Viacao Aerea Riograndese, S.A.*,
　No. Civ.A 90-1883, 1991 WL 13886 (E.D. La. Jan. 25, 1991) ..............................................13

*Melgares v. Sikorsky Aircraft Corp.*,
　613 F. Supp. 2d 231 (D. Conn. 2009) ................................................................................13, 26

*Miskow v. Boeing Co.*,
　664 F.2d 205 (9th Cir. 1981) ..................................................................................................13

*Navarrete De Pedrero v. Schweizer Aircraft Corp.*,
　635 F. Supp. 2d 251 (W.D.N.Y. 2009) ...................................................................................13

*Nolan v. Boeing Co.*,
　919 F.2d 1058 (5th Cir. 1990) .........................................................................................13, 21, 25

*Pettitt v. Boeing Co.*,
　No. 09 C 3709, 2010 WL 3861066 (N.D. Ill. Sept. 28, 2010)................................................13

*Phillips v. China Airlines, Ltd.*,
　985 F.2d 573 (9th Cir. 1993) ..................................................................................................13

*Piper Aircraft Co. v. Reyno*,
　454 U.S. 235 (1981)..................................................................................................... passim

*Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*,
　361 F.3d 11 (1st Cir. 2004)......................................................................................................23

*Robinson v. McNeil Consumer Healthcare*,
　615 F.3d 861 (7th Cir. 2010) ..................................................................................................28

**TABLE OF AUTHORITIES (CONTINUED)**

PAGE(S)

*Rubenstein v. Piper Aircraft Corp.*,
    587 F. Supp. 460 (S.D. Fla. 1984) ...........................................................................14

*Rustal Trading US, Inc. v. Makki*,
    17 F. App'x 331 (6th Cir. 2001) ...............................................................................18

*Satz v. McDonnell Douglas Corp.*,
    244 F.3d 1279 (11th Cir. 2001) ........................................................................2, 3, 13

*Schijndel v. Boeing Co.*,
    263 F. App'x 555 (9th Cir. 2008) ............................................................................13

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
    549 U.S. 422 (2007)............................................................................................10, 17

*Siswanto v. Airbus Americas, Inc.*,
    No. 15-CV-5486, 2016 WL 7178460 (N.D. Ill. Dec. 9, 2016)...................... passim

*United States v. Moussaoui*,
    382 F.3d 453 (4th Cir. 2004) ...................................................................................23

*Vorbiev v. McDonnell Douglas Helicopters, Inc.*,
    No. C 08-05539 JSW, 2009 WL 1765675 (N.D. Cal. June 18, 2009)....................13

*Wahyuni v. Boeing*,
    No. 23-cv-00475 (E.D. Va. Jan. 20, 2023) ...........................................................5, 8

*Zermeno v. McDonnell Douglas Corp.*,
    246 F. Supp. 2d 646 (S.D. Tex. 2003) ....................................................................13

*Zipfel v. Halliburton Co.*,
    832 F.2d 1477 (9th Cir. 1987), *mandate recalled and*
    *amended on other grounds by* 861 F.2d 565 (9th Cir. 1988)............................13, 16

**RULES**

Fed. R. Civ. P. 45(b)(2)-(3)................................................................................................23

**OTHER AUTHORITIES**

Caseload Statistics Data Tables C-5, U.S. Courts,
    https://www.uscourts.gov/statistics-reports/caseload-statistics-data-tables ...........30

**TABLE OF AUTHORITIES (CONTINUED)**

**PAGE(S)**

*In review: court procedure in Indonesia*, LEXOLOGY (Mar. 22, 2021),
    https://www.lexology.com/library/ detail.aspx?g=97b887df-af61-44a9-a6f0-
    83d99df76126 ..................................................................................................................30

## INTRODUCTION

For over four decades, federal courts have routinely exercised their discretion to dismiss lawsuits arising out of foreign aviation accidents under the doctrine of *forum non conveniens*. These decisions reflect the faithful application of *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981), in which the Supreme Court held that the location of the witnesses and evidence and the various public and private interests at stake demonstrated that it would be far more convenient to litigate a wrongful death action stemming from a Scottish aviation accident in Scotland than in the United States. Since *Piper*, federal courts have dismissed lawsuits related to foreign aviation accidents in favor of many countries including, most relevant here, Indonesia. *See infra* at 12–14 (collecting cases). Dismissal in those cases was held appropriate even where—as in *Piper*—the aircraft and other components were designed or manufactured in the United States and alleged to be defective.

This lawsuit, too, is directly controlled by *Piper.* It arises out of the January 9, 2021, crash of Sriwijaya Air flight 182 off the coast of Indonesia, in which 62 passengers and crew tragically died. As in *Piper*, this litigation is dominated by contacts with the foreign forum: the flight was a domestic Indonesian flight, operated by an Indonesian airline; all of the decedents were Indonesian citizens; the aircraft had been registered and maintained in Indonesia for almost a decade; and the pilots were trained in Indonesia pursuant to Indonesian aviation regulations. Indonesian authorities investigated the accident and identified a series of factors that contributed to the accident, including piloting, maintenance, and the performance of the aircraft's systems. Cases like this one may be dismissed in favor of a foreign forum when an alternative forum is available, adequate, and "more convenient in light of the public and private interests involved." *Jiali Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 248 (4th Cir. 2011) (citing *Piper*, 454 U.S. at 241). These requirements are plainly satisfied here.

First, Indonesia is available and adequate to hear claims arising out of aviation accidents. *See infra* at 14–16. Indonesia is available because Boeing agrees to submit to the jurisdiction of an Indonesian court as a condition of dismissal and the plaintiffs' claims are not time-barred. *See Jiali Tang*, 656 F.3d at 250; *Piper*, 454 U.S. at 242. And it is adequate because the parties "can come within [Indonesia's] jurisdiction" and "will not be deprived of all remedies or treated unfairly." *Jiali Tang*, 656 F.3d at 249 (citation omitted). While the plaintiffs' "potential damages award may be smaller" in Indonesia, and while Indonesian courts may have different litigation procedures than U.S. courts, those are not valid reasons to keep the cases here. *Piper*, 454 U.S. at 252 n.18, 255; *see also Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1283 (11th Cir. 2001).

Second, the relevant private and public interest factors strongly favor dismissal. As to the private interest factors, it would be not only inconvenient but fundamentally unfair to proceed in the United States. *See Piper*, 454 U.S. at 242, 259. The airline that operated the flight, Sriwijaya Air, cannot be joined in these proceedings. Indonesia is the only forum where all entities potentially responsible for the accident can be brought into court. Furthermore, most of the key witnesses (and their documents) are in Indonesia, including airline employees with knowledge of Sriwijaya's maintenance and training practices, Indonesian accident investigators, and third-party damages witnesses. Those witnesses and their documents are outside the subpoena power of a U.S. court. Moreover, Indonesian law does not have a mechanism for compelling the production of testimony or documents for use in foreign proceedings, and Sriwijaya Air will not voluntarily provide its evidence for use here. To the extent plaintiffs may argue that some witnesses and documents are in the United States, that does not tip the balance of the private interest factors. As a condition of dismissal, Boeing will make any personnel and documents that are deemed relevant available in Indonesia. It would be far more convenient for the parties to proceed in Indonesia—

the only forum where the relevant witnesses, evidence, and all potentially at fault parties can be brought into a single proceeding. *See Piper*, 454 U.S. at 258–59, 259 n.27; *Satz*, 244 F.3d at 1284 n.4.

As to the public interest factors, proceeding in Indonesia would allow the country with the strongest connection to the accident to resolve the plaintiffs' claims. *See Jiali Tang*, 656 F.3d at 252–53. Indonesia has an "extremely high" local interest in this domestic aviation accident that involved Indonesian citizens and an Indonesian airline; Virginia's and Illinois' interests are minimal in comparison. *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1147 (9th Cir. 2001). Further, if the cases proceed in the United States, the Court would "be required to untangle problems in conflict of laws, and in law foreign to itself." *Piper*, 454 U.S. at 251 (citation and internal quotation marks omitted). Indonesian law likely controls some or all legal issues in the case, such as identifying who properly represents the decedents' heirs and beneficiaries. Dismissal would allow an Indonesian court to resolve these issues in the first instance, and would avoid burdening this Court with what is, at its core, an Indonesian dispute.

For these reasons, and for the reasons discussed below, the Court should dismiss this action for *forum non conveniens*.

## FACTUAL BACKGROUND

**A.    Sriwijaya Air is an Indonesian airline that serves mostly domestic routes and does not fly to North America.**

According to its website, Sriwijaya Air is one of Indonesia's "domestic leading airlines." *See* Shultz Decl. ¶ 8, Ex. A ("About Us" webpage). It flies nearly one million passengers every month to dozens of destinations within Indonesia and to a handful of countries within the region. *See id.* The airline maintains more than 50 offices in Indonesia, including its headquarters at Soekarno-Hatta International Airport outside Jakarta. *See id.* ¶ 9, Ex. B ("Offices" webpage); *id.*,

Ex. D (letter from Anita Quy to Mack Shultz (hereinafter "Quy Letter")). It has maintenance personnel stationed in ten locations around the country, as well as a large pilot training facility near Jakarta. *See* McIntosh Decl., Ex. B at 67 (Final Accident Investigation Report (hereinafter "Final Report")); Shultz Decl., Ex. C (NAMTC webpage). It does not have any presence in the United States and has never operated flights to or from the U.S.[1] *See* Quy Letter. The Sriwijaya employees and documents relevant to this case are located in Indonesia. *See id.*

**B.      Sriwijaya Air flight 182 crashed into the Java Sea shortly after taking off from Soekarno-Hatta International Airport in Jakarta.**

On January 9, 2021, Sriwijaya Air flight 182 crashed into the Java Sea shortly after takeoff from Soekarno-Hatta International Airport in Jakarta, Indonesia. The flight was bound for Supadio International Airport in Pontianak, Indonesia. There were 62 passengers and crew on board, all of whom were citizens of Indonesia. Tragically, none survived. McIntosh Decl. ¶ 4.

The accident aircraft was a Boeing 737-500 with serial number 27323. *See* Final Report at 7. It was manufactured in 1994, nearly three decades before the accident. *See id.* Final assembly occurred in Washington state, as did most of Boeing's design activity. McIntosh Decl. ¶ 14. Since 2012, the aircraft had been registered in Indonesia. *See* Final Report at 7. The airplane had not been in the United States in the nine years before the accident. *See* Quy Letter.

**C.      Indonesian authorities investigated the accident and identified Sriwijaya's maintenance and training activities, which were performed in Indonesia, as some of the contributing factors.**

Indonesia immediately opened an investigation into the cause of the crash pursuant to international law. *See* McIntosh Decl., ¶ 6, Ex. A (copy of Annex 13 to the Convention on

---

[1] Sriwijaya Air is currently in a state of suspension of debt payment obligations under the supervision of the Indonesian court. *See* Declaration of Tony Budidjaja (hereinafter "Budidjaja Decl."), ¶ I.C.10. The applicable Indonesian process does not prevent Sriwijaya from continuing to operate nor does it prevent a lawsuit from being filed against Sriwijaya. *Id.* ¶ I.C.11. Accordingly, the present plaintiffs can sue Sriwijaya Air in an Indonesian court. *Id.*

International Civil Aviation). Indonesia's Komite Nasional Keselamatan Transportasi (KNKT) led the nearly two-year-long investigation. Agencies from the United Kingdom, Singapore, and the United States also participated in the investigation, subject to KNKT supervision. *See* Final Report at xiii; McIntosh Decl., Ex. A ¶ 5.25 (other countries may participate in an accident investigation "under the control of the investigator-in-charge"). Boeing acted as a technical adviser to the NTSB. *See* McIntosh Decl. ¶ 7. The KNKT published its final accident investigation report on November 10, 2022. *See* Final Report.[2] The KNKT's investigation records and investigators are located in Indonesia. *See* McIntosh Decl. ¶¶ 9–10. Boeing's records relating to the investigation are primarily located in Washington state and California. *Id.* ¶ 13.

According to the KNKT, the accident was caused by the pilots' failure to notice or react to a thrust imbalance in the airplane's left and right engines, which led the plane to enter a leftward roll. *See* Final Report at xiii, 1–3. The thrust imbalance was created when one of the thrust levers pilots use to control the engines' thrust became stuck. *Id.* The aircraft's automated systems were active and attempted to reduce the engine thrust. *Id.* The left thrust lever decreased as commanded while the right thrust lever failed to change position. *Id.* As a result, the right engine improperly maintained takeoff thrust. *Id.* The airplane's systems then directed the left engine to reduce its thrust even further to compensate for the excess thrust in the right engine, and the thrust imbalance eventually led the aircraft to turn and then roll significantly to the left. *Id.* at 133. That roll became so extreme that the aircraft's systems warned the pilots that the aircraft was excessively rolling. *Id.* at 134. The pilots took control of the aircraft from the automated systems but, rather than fixing

---

[2] Some of the complaints have incorporated the KNKT report by reference. *See, e.g.*, Complaint at 9, *Aprillia v. Boeing*, No. 23-cv-00474 (E.D. Va. Oct. 13, 2022), ECF No. 1-1; Complaint at 7, *Wahyuni v. Boeing*, No. 23-cv-00475 (E.D. Va. Jan. 20, 2023), ECF No. 1-1.

the situation, rolled the aircraft even further to the left. *Id.* at 3, 124–5. They then were unable to recover the aircraft from that roll, and it crashed soon after.

The KNKT linked the thrust asymmetry to flawed maintenance work performed by Sriwijaya in Indonesia. According to the final report, Sriwijaya's maintenance records contained more than 120 pilot reports of issues with the accident aircraft's autothrottle and differences in engine parameters. *Id.* at 117–18. At least eight reports related to movement problems with the right thrust lever, and three of them occurred in the month before the accident. *Id.* at 117–18, 131. Sriwijaya's maintenance personnel did not respond effectively. According to the report, nobody at Sriwijaya ever examined key portions of the thrust lever control system, even though records suggested that "the thrust control cable experienced friction or binding within the mechanical system." *Id.* at 118. The KNKT found that Sriwijaya's maintenance personnel "stopped the trouble shooting steps [prematurely]" and did not conduct additional required inspections. *Id.* at 128.

The Indonesian investigators also found that a system designed to monitor engine thrust levels, the cruise thrust split monitor (CTSM), did not disengage the autothrottle as early as it should have. *Id.* at 120. Investigators could not identify a specific cause, although they speculated that the right flight spoiler position signal read by the autothrottle computer may have been too low to trigger CTSM action. *Id.* Boeing's documents relating to the CTSM are primarily located in Washington state or California. McIntosh Decl. ¶ 14.

The KNKT also found that Sriwijaya's pilot training program played a role in the accident. The KNKT faulted the pilots for failing to recognize that they were entering an asymmetric thrust condition and for failing to properly respond to the upset condition. Final Report at 122–24. Investigators found that Sriwijaya's mandatory pilot upset prevention and recovery training

program lacked detail, which made the "upset recovery training inadequate in ensuring that pilots have enough knowledge" to recover during an upset condition. *Id.* at 126.

Finally, the KNKT found that Sriwijaya's safety management system had not sufficiently trained employees—including pilots, maintenance personnel, and dispatchers—in the importance of reporting flight hazards. *Id.* at 129. Flight data confirmed that the accident aircraft experienced seven unreported asymmetric thrust lever events in the year before the accident. *Id.* at 131. Witnesses and documents related to Sriwijaya's maintenance, training, and safety management systems are all in Indonesia. *See* Quy Letter.

**D.    This accident and the aviation industry are the subject of intense public interest in Indonesia.**

The aviation industry generally, and this accident specifically, are of intense public interest in Indonesia. Indonesia is the world's largest archipelago with more than 17,500 islands spread across 730,000 square miles. Budidjaja Decl. ¶ V.B.1. The country's geography makes civil aviation a key domestic industry. *Id.* ¶¶ V.B.1–V.C.4. Given the importance of the aviation industry to its economy, the Indonesian government actively works to promote aviation safety, and it takes responsibility for investigating aviation accidents in its territory. *Id.* ¶¶ V.B.4, V.E.1–13.

The loss of Sriwijaya Air flight 182 has generated significant public interest in Indonesia. *Id.* ¶¶ V.A.1–8. Following the accident, a committee of the Indonesian House of Representatives proposed reforms to improve aviation safety in Indonesia. *Id.* ¶¶ V.A.5–6. Further, Indonesia has shown a strong interest in ensuring that victims' next of kin receive fair compensation for their losses. *See id.* ¶¶ I.C.8, V.A.7–8, V.F.7. Boeing's expert on Indonesian law, Tony Budidjaja, opines that if the plaintiffs pursue their claims in an Indonesian forum, "there will likely be constant mass media coverage and public attention in Indonesia" that could result in continued pressure to improve domestic airline operations and ensure that the decedents' families are fairly

compensated. *Id.* ¶¶ V.F.1–7. The Indonesian public likely will not receive the same level of media coverage, or the same associated benefits, if litigation proceeds in the United States. *Id.* ¶ V.F.2.

**E.    The plaintiffs brought suit against Boeing in the United States.**

Following the accident, 68 plaintiffs sued Boeing on behalf of 42 decedents in Illinois and Virginia. *See In re: Air Crash Into the Java Sea on January 9, 2021*, MDL No. 3072 (J.P.M.L. Apr. 7, 2023). The plaintiffs are represented by five different sets of counsel, who have filed 21 separate lawsuits. *See* Shultz Decl. ¶¶ 5–6. In several instances, multiple lawsuits purport to be filed on behalf of the same decedents. *See id.*

Generally speaking, the plaintiffs allege that the accident aircraft's autothrottle system was defective and that Boeing's instructions and manuals did not provide adequate warnings and guidance. The complaints specifically put pilot training and aircraft maintenance—both of which were performed by Sriwijaya Air in Indonesia—at issue. For example, in *Kastenbaum v. Boeing*, the plaintiff alleged that Boeing's manuals "did not provide adequate instructions and advice as to the maintenance of the of the subject aircraft" and "did not provide adequate instructions and advice as to the recovery of the aircraft in the event of an upset." Complaint at 7, No. 23-cv-00044 (E.D. Va. Jan. 11, 2023), ECF No. 1-2. Similarly, in *Aprillia v. Boeing*, the plaintiffs alleged that "[j]ust as older automobiles require more maintenance and attention, so do older aircraft" and that Sriwijaya Air performed maintenance on the autothrottle in the days prior to the accident. Complaint at 7–9, No. 23-cv-00474 (E.D. Va. Oct. 13, 2022), ECF No. 1-1. The other complaints contain similar allegations.[3] To prove or disprove the plaintiffs' claims, the parties will need to

---

[3] *See also, e.g.*, Complaint at 3–4, *Ridwan v. Boeing*, No. 23-cv-00470 (E.D. Va. Sept. 9, 2022), ECF No. 1-1 (alleging that the manuals Boeing supplied did not provide adequate "instructions and advice as to the maintenance of the accident aircraft" or for "recovery of the accident aircraft in the event of an upset"); Complaint at 6, 9, *Wahyuni v. Boeing*, No. 23-cv-00475 (E.D. Va. Jan. 20, 2023), ECF No. 1-1 (raising allegations about maintenance and training documents); Complaint at 3–4, *Riyanto v. Boeing*, No. 23-cv-00618 (E.D. Va. Jan. 20, 2023), ECF No. 1-1 (same).

determine whether and how Sriwijaya's pilots and maintenance personnel used Boeing's instructions and manuals, and whether any such use caused the accident. The relevant causation witnesses on these points are all in Indonesia. *See* Quy Letter.

Notably, Indonesia and its citizens already have demonstrated a strong interest in ensuring the victims' families receive compensation. For example, the Indonesian government has already paid compensation to some of the victims' families through a state-sponsored insurance fund that provides insurance directly to passengers. *See* Budidjaja Decl. ¶ I.C.8. Further, Sriwijaya, an Indonesian company, has also settled with several of the plaintiffs in Indonesia, who executed releases there. *See* Shultz Decl. ¶ 7.

Boeing's evidence related to the design, manufacture, assembly, testing, and certification of the accident aircraft and to the manuals related to the aircraft is in Washington state and/or California. *See* McIntosh Decl. ¶ 14. One of the Boeing employees who worked on the investigation is located in Virginia and has files on his computer there relating to his work. *Id.* Boeing did not conduct any other relevant activities in Virginia or Illinois, and there are no other relevant Boeing witnesses in those states. McIntosh Decl. ¶ 15.

The 21 cases making up this litigation were all originally filed in state court in either Virginia or Illinois. Shultz Decl. ¶ 5. Boeing removed all 21 cases to federal court and plaintiffs moved to remand in 20 of the 21 cases. *Id.* Some, but not all, of the remand motions have been fully briefed. *Id.* While the remand motions were pending, Boeing moved to establish an MDL proceeding and the United States Judicial Panel on Multidistrict Litigation ultimately ordered the Illinois cases transferred to this Court for coordinated or consolidated pretrial proceedings.

### ARGUMENT

Under the doctrine of *forum non conveniens*, a court can dismiss a lawsuit if "a court abroad is the more appropriate and convenient forum for adjudicating the controversy." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007). *Forum non conveniens* dismissal is warranted when the moving party shows the proposed alternative forum is "1) available; 2) adequate; and 3) more convenient in light of the public and private interests." *Jiali Tang*, 656 F.3d at 248 (citing *Piper*, 454 U.S. at 241). Each of those factors is plainly satisfied here.

**A.      The Court should address *forum non conveniens* before ruling on the pending remand motions.**

Boeing notes that, under *Sinochem International Co. v. Malaysia International Shipping Corp.*, 549 U.S. 422 (2007), the Court has discretion to resolve the motion for *forum non conveniens* before it resolves the motions for remand. As the Supreme Court explained in *Sinochem*, "where subject-matter or personal jurisdiction is difficult to determine, and *forum non conveniens* considerations weigh heavily in favor of dismissal, the court properly takes the less burdensome course." *Id.* at 436; *see also Hensley v. City of Charlotte*, No. 21-2308, 2023 WL 1990298, at *2 n.* (4th Cir. Feb. 14, 2023) (observing that under *Sinochem*, a "district court does have 'leeway' to dismiss a case on certain 'threshold' nonmerits grounds without first determining subject matter jurisdiction"). Although Boeing is confident that all of these cases were properly removed to federal court, efficiency considerations weigh in favor of first ruling on Boeing's motion for *forum non conveniens*, which applies equally to all cases, rather than the plaintiffs' 20 separate motions to remand, which present a variety of issues.

**B.      Federal courts routinely grant motions to dismiss for *forum non conveniens* for cases arising out of foreign aviation accidents.**

Federal courts regularly grant motions to dismiss for *forum non conveniens* in lawsuits that relate to foreign aviation accidents based on the Supreme Court's opinion in *Piper Aircraft Co. v.*

*Reyno*, 454 U.S. 235. *Piper* arose out of an airplane accident in Scotland that killed six Scottish citizens. British accident investigators determined that pilot error may have caused the crash. *Id.* at 238–39. Nevertheless, the plaintiff brought a wrongful death suit in the United States against the aircraft and propeller manufacturers, both American companies. *Id.* at 239–40. The defendants moved to dismiss for *forum non conveniens*, and the district court granted the motion after finding that Scotland was an adequate, available, and more convenient forum. *Id.* at 241–44.

The Supreme Court held that dismissal in favor of Scotland was appropriate. It first found that the fact Scotland had "less favorable" substantive laws than the United States should not be given much weight in the analysis. *Id.* at 247. Instead, while plaintiffs might "not be able to rely on a strict liability theory [in Scotland], and although their potential damages award may be smaller, there is no danger that they will be deprived of any remedy or treated unfairly." *Id.* at 255.

The Court next held that the district court's analysis of the private and public interest factors was reasonable. For example, although design and manufacturing records for the propeller and plane were in the United States, a "large proportion" of other evidence was located in Great Britain and "many crucial witnesses" were "beyond the reach of compulsory process" in the United States. *Id.* at 257–58. Thus, the parties would face "fewer evidentiary problems" with a trial in Scotland. *Id.* Further, Scotland had "a very strong interest in th[e] litigation" because "[t]he accident occurred in its airspace" and "[a]ll of the decedents were Scottish." *Id.* at 260. Any U.S. "interest in ensuring that American manufacturers [were] deterred from producing defective products . . . [was] simply not sufficient to justify the enormous commitment of judicial time and resources that would inevitably be required if the case were to be tried here." *Id.* at 260–61.

Dozens of federal courts have applied *Piper* and granted motions to dismiss for *forum non conveniens* in cases involving foreign aviation accidents, including in Indonesia. For example:

- **First Circuit.** In *Ahmed v. Boeing Co.*, a Pakistan International Airline flight crashed shortly after takeoff in Saudi Arabia. The plaintiffs sued on behalf of 22 Pakistani decedents. The First Circuit affirmed the district court's *forum non conveniens* dismissal in favor of Saudi Arabia or Pakistan. *See* 720 F.2d 224 (1st Cir. 1983).

- **Second Circuit.** In *Lleras v. Excelaire Services Inc.*, Gol Linhas Inteligentes S.A. flight 1907 crashed in the Amazon rainforest in Brazil. The plaintiffs sued on behalf of decedents who were Brazilian citizens and residents. The Second Circuit affirmed the district court's *forum non conveniens* dismissal in favor of Brazil. *See* 354 F. App'x 585 (2d Cir. 2009).

- **Third Circuit.** In *Francois ex rel. Estate of Francois v. Hartford Holding Co.*, Cardinal Airlines, Inc. flight 947 crashed while approaching the Commonwealth of Dominica. The plaintiffs sued on behalf of a Dominican national and a citizen of the Netherlands. The Third Circuit affirmed the district court's *forum non conveniens* dismissal in favor of Dominica. *See* 424 F. App'x 138 (3d Cir. 2011).

- **Fifth Circuit.** In *De Aguilar v. Boeing Co.*, a Mexicana Airlines flight crashed in Mexico, killing everyone aboard. The Fifth Circuit affirmed the district court's *forum non conveniens* dismissal in favor of Mexico. *See* 11 F.3d 55 (5th Cir. 1993).

- **Sixth Circuit.** In *Kryvicky v. Scandinavian Airlines System*, Avianca flight 011 crashed in Madrid. The plaintiff, the surviving spouse of one of the decedents, was a U.S. resident. The Sixth Circuit affirmed the district court's *forum non conveniens* dismissal in favor of Spain. *See* 807 F.2d 514 (6th Cir. 1986).

- **Seventh Circuit.** In *Clerides v. Boeing Co.*, Helios Airways flight 522 crashed in Greece after the plane failed to pressurize. Nearly all of the decedents were nationals of Greece or Cyprus. The Seventh Circuit affirmed the district court's *forum non conveniens* dismissal in favor of Greece or Cyprus. *See* 534 F.3d 623 (7th Cir. 2008).

- **Ninth Circuit.** In *Lueck v. Sundstrand Corp.*, Ansett New Zealand flight 703 crashed on approach to Palmerston North, New Zealand. All but one of the passengers were citizens of New Zealand. The Ninth Circuit affirmed the district court's *forum non conveniens* dismissal in favor of New Zealand. *See* 236 F.3d 1137 (9th Cir. 2001).

- **Tenth Circuit.** In *Gschwind v. Cessna Aircraft Co.*, the pilot of a Cessna was killed in a plane crash near Cannes, France. The Tenth Circuit affirmed the district court's *forum non conveniens* dismissal in favor of France. *See* 161 F.3d 602 (10th Cir. 1998).

- **Eleventh Circuit.** In *Kolawole v. Sellers*, Dana Airlines flight 992 crashed while approaching the airport in Lagos, Nigeria. All 153 passengers and crew were killed, as were ten people on the ground. The pilot and some of the decedents were citizens of the United States. The Eleventh Circuit affirmed the district court's *forum non conveniens* dismissal as to the non-U.S. citizen or resident decedents in favor of Nigeria. *See* 863 F.3d 1361 (11th Cir. 2017).

- **D.C. Circuit.** In *In re Air Crash over the Southern Indian Ocean on March 8, 2014*, Malaysia Airlines flight MH370 disappeared over the Southern Indian Ocean while en route from Malaysia to China. There were 239 passengers and crew, 152 of whom were Chinese and 50 of whom were Malaysian. The D.C. Circuit affirmed the district court's *forum non conveniens* dismissal in favor of Malaysia. *See* 946 F.3d 607 (D.C. Cir. 2020).

- **Northern District of Illinois.** In *In re Air Crash Disaster Over Makassar Strait, Sulawesi*, Adam Air flight DHI 574 crashed off the coast of Indonesia, killing all 102 people on board. The plaintiffs sued on behalf of 52 decedents, none of whom were U.S. citizens or residents. The court dismissed the action for *forum non conveniens* in favor of Indonesia. *See* No. 09-CV-3805, 2011 WL 91037 (N.D. Ill. Jan. 11, 2011).

- **Northern District of Illinois.** In *Siswanto v. Airbus Americas, Inc.*, AirAsia flight 8501 crashed near Borneo, Indonesia. Of the 162 decedents, 155 were Indonesian nationals. The Northern District of Illinois dismissed the action for *forum non conveniens* in favor of Indonesia. *See* No. 15-CV-5486, 2016 WL 7178460 (N.D. Ill. Dec. 9, 2016).

There are many additional examples, as well.[4] In sum, federal courts have consistently granted motions to dismiss for *forum non conveniens* when an aviation accident involving a foreign

---

[4] Additional cases include: *Fortaner v. Boeing Co.*, 504 F. App'x 573 (9th Cir. 2013) (dismissal in favor of Spain); *Galbert v. W. Caribbean Airways*, 715 F.3d 1290 (11th Cir. 2013) (Martinique); *King v. Cessna Aircraft Co.*, 562 F.3d 1374 (11th Cir. 2009) (dismissal of European plaintiffs in favor of Italy); *Schijndel v. Boeing Co.*, 263 F. App'x 555 (9th Cir. 2008) (Singapore); *Leon v. Millon Air, Inc.*, 251 F.3d 1305 (11th Cir. 2001) (Ecuador); *Satz*, 244 F.3d 1279 (Argentina); *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424 (11th Cir. 1996) (France); *Phillips v. China Airlines, Ltd.*, 985 F.2d 573 (9th Cir. 1993) (Taiwan); *Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824 (5th Cir. 1993) (Germany); *Nolan v. Boeing Co.*, 919 F.2d 1058 (5th Cir. 1990) (United Kingdom); *Zipfel v. Halliburton Co.*, 832 F.2d 1477 (9th Cir. 1987) (Indonesia), *mandate recalled and amended on other grounds by* 861 F.2d 565 (9th Cir. 1988); *Cheng v. Boeing Co.*, 708 F.2d 1406 (9th Cir. 1983) (Taiwan); *Miskow v. Boeing Co.*, 664 F.2d 205 (9th Cir. 1981) (Canada); *Harp v. Airblue Ltd.*, 879 F. Supp. 2d 1069 (C.D. Cal. 2012) (Pakistan); *In re Air Crash Over the Mid-Atl. on June 1, 2009*, 760 F. Supp. 2d 832 (N.D. Cal. 2010) (France); *Pettitt v. Boeing Co.*, No. 09 C 3709, 2010 WL 3861066 (N.D. Ill. Sept. 28, 2010) (Cameroon); *Can v. Goodrich Pump & Engine Control Sys., Inc.*, 711 F. Supp. 2d 241 (D. Conn. 2010) (Turkey); *Vorbiev v. McDonnell Douglas Helicopters, Inc.*, No. C 08-05539 JSW, 2009 WL 1765675 (N.D. Cal. June 18, 2009) (Russia); *Navarrete De Pedrero v. Schweizer Aircraft Corp.*, 635 F. Supp. 2d 251 (W.D.N.Y. 2009) (Mexico); *Melgares v. Sikorsky Aircraft Corp.*, 613 F. Supp. 2d 231 (D. Conn. 2009) (Spain); *Esheva v. Siberia Airlines*, 499 F. Supp. 2d 493 (S.D.N.Y. 2007) (Russia); *Da Rocha v. Bell Helicopter Textron, Inc.*, 451 F. Supp. 2d 1318 (S.D. Fla. 2006) (Brazil); *Gambra v. Int'l Lease Fin. Corp.*, 377 F. Supp. 2d 810 (C.D. Cal. 2005) (France); *Faat v. Honeywell Int'l, Inc.*, No. CIV.A 04-4333, 2005 WL 2475701 (D.N.J. Oct. 5, 2005) (Spain); *In re Air Crash Over Taiwan Straits on May 25, 2002*, 331 F. Supp. 2d 1176 (C.D. Cal. 2004) (Taiwan); *Zermeno v. McDonnell Douglas Corp.*, 246 F. Supp. 2d 646 (S.D. Tex. 2003) (Mexico); *Helog Ag v. Kaman Aerospace Corp.*, 228 F. Supp. 2d 91 (D. Conn. 2002) (Germany); *Kern v. Jeppesen Sanderson, Inc.*, 867 F. Supp. 525 (S.D. Tex. 1994) (Nepal, Pakistan, Thailand, Germany, Great Britain, the Netherlands, or Spain); *Martino v. Viacao Aerea Riograndese, S.A.*, No. Civ.A 90-1883, 1991 WL

airline occurs abroad and the key evidence is located there.[5] In many of these cases, the plaintiffs raised product defect claims against U.S. manufacturers, yet the courts granted *forum non conveniens* dismissals regardless. There is no reason for the Court to depart from this highly persuasive—and, in the case of *Piper*, binding—authority here.

## C.   Indonesia is an available and adequate forum.

Indonesia provides an available and adequate forum for plaintiffs' claims. *See Makassar Strait*, 2011 WL 91037, at *4–6 (finding Indonesia available and adequate in the context of an aviation accident); *Siswanto*, 2016 WL 7178460, at *7–9 (same). Boeing, the sole defendant in these cases, is amenable to process in Indonesia, making Indonesia available. *Jiali Tang*, 656 F.3d at 249–50. An Indonesian forum also is adequate as "(1) all parties can come within that forum's jurisdiction" and "(2) the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." *Id.* at 249 (citation omitted).

**Availability**. A declaration by the defendant not to contest service of process and to submit to the jurisdiction of the foreign forum, as well as confirmation that the plaintiffs' claims are not barred by a statute of limitations in the foreign forum, fulfill this requirement. *Id.* at 250.

---

13886 (E.D. La. Jan. 25, 1991) (Brazil); *Jennings v. Boeing Co.*, 660 F. Supp. 796 (E.D. Pa.) (England or Scotland), *order amended on denial of reconsideration*, 677 F. Supp. 803 (E.D. Pa. 1987), *aff'd*, 838 F.2d 1206 (3d Cir. 1988); *Chhawchharia v. Boeing Co.*, 657 F. Supp. 1157 (S.D.N.Y. 1987) (India); *Rubenstein v. Piper Aircraft Corp.*, 587 F. Supp. 460 (S.D. Fla. 1984) (West Germany); *In re Disaster at Riyadh Airport, Saudi Arabia, on Aug. 19, 1980*, 540 F. Supp. 1141 (D.D.C. 1982) (Saudi Arabia or the plaintiffs' separate domiciles); *Grodinsky v. Fairchild Indus., Inc.*, 507 F. Supp. 1245 (D. Md. 1981) (Canada).

[5] Plaintiffs may point to the fact that cases relating to the Lion Air and Ethiopian Airlines accidents involving 737 MAX aircraft proceeded in the United States. But those cases are not contrary to *Piper* or the other authorities marshalled above. Boeing did not move to dismiss for *forum non conveniens* in those cases, so the courts presiding over them never had occasion to decide the issue. And each of those cases presented unique circumstances not present here. For instance, in the Ethiopian Airlines flight 302 accident, the passengers and crew killed in the accident were from more than 30 different countries.

Indonesia is available. Boeing has agreed not to contest service of process in Indonesia and to consent to the jurisdiction of an Indonesian forum as a condition of *forum non conveniens* dismissal. *See* Shultz Decl. ¶ 3. As Indonesian law expert Tony Budidjaja explains, Indonesian courts must accept jurisdiction over a case unless the defendant raises a jurisdictional challenge. *See* Budidjaja Decl. ¶¶ I.C.1–4, III.C.1–6. Indonesian law also allows the plaintiffs to sue Boeing in Indonesia because the accident occurred there. *Id.* Finally, the plaintiffs face no statute of limitations issues. *Id.* The Indonesian courts will hear the plaintiffs' re-filed cases. *Id.*

**Adequacy**. Indonesia easily clears the adequacy hurdle, as well: Boeing is subject to jurisdiction in Indonesia (as explained above), and the plaintiffs can bring suit and will be treated fairly there.

First, the plaintiffs plainly have a remedy in Indonesia. A foreign remedy is only insufficient if it "is so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper*, 454 U.S. at 254; *see also Jiali Tang*, 656 F.3d at 251. That is not the case here. The Indonesian Civil Law allows a plaintiff to recover damages for an "unlawful act"—a legal concept that Mr. Budidjaja describes as "very similar to civil tort." Budidjaja Decl. ¶ III.B.1. The plaintiffs would be able to recover compensatory damages if they can show (1) "an unlawful act exists"; (2) it "is attributable to the defendant either by fault or negligence"; (3) "the commission of the unlawful act by the defendant has caused injury or loss to the plaintiff"; and (4) "causation between the unlawful act of the defendant and the injury or loss sustained by the plaintiff." *Id.* ¶ III.B.6.[6] Parties have litigated claims in Indonesia arising out of prior aviation accidents, confirming that the plaintiffs can bring their action there. *See Jiali Tang*, 656 F.3d at 251. For example, following the 2005 crash of a Boeing 737-200 airplane operated by Mandala Airlines, more than 100

---

[6] Boeing agrees to respect the final judgment of an Indonesian court, subject to its rights of appeal. Shultz Decl. ¶ 3.

plaintiffs filed six lawsuits in the Central Jakarta District Court against Boeing and the engine manufacturer alleging the defendants committed unlawful acts by supplying defective products. Budidjaja Decl. ¶ III.D.1–3. Indonesian courts have also overseen litigation in at least two other aviation accidents since 2007. *Id.* ¶¶ III.D.4–5.

Second, the parties will be treated fairly by the Indonesian courts. *See Makassar Strait*, 2011 WL 91037, at *5–6; *Siswanto*, 2016 WL 7178460, at *8–9; *see also* Budidjaja Decl. ¶ I.C.5. Indonesia has a robust civil law tradition that has been in place since the Dutch colonial era. Budidjaja Decl. ¶ II.A.1. Civil cases are heard in the General Judiciary Court by panels of three district court judges, who follow the inquisitorial model of judging. *Id.* ¶¶ II.B.4, 12–13. Indonesian courts have authority to summon domestic witnesses and institutions—including, for example, the KNKT—to give evidence in court proceedings, and the parties' attorneys are able to examine and cross-examine witnesses. *Id.* ¶¶ II.B.13, III.A.18, 24. Parties also have the ability to join necessary third parties as defendants in lawsuits, and Indonesian courts can exercise jurisdiction over them. *Id.* ¶ III.B.21. Mr. Budidjaja explains that the joinder procedure is especially "appropriate when the involvement of such a third party is important to determine the issue of liability and/or availability of key evidence, which is under the possession and control of such third party." *Id.* If any party disagrees with the panel's ruling, it can appeal the decision to the Indonesian High Court and the Indonesian Supreme Court. *Id.* ¶¶ III.A.28–30.

U.S. courts have repeatedly held that Indonesia is an available and adequate forum, including in aviation accident cases. *See, e.g.*, *Makassar Strait*, 2011 WL 91037, at *4–6 (aviation accident); *Siswanto*, 2016 WL 7178460, at *7–9 (same); *Zipfel*, 832 F.2d at 1484 (same); *Lumenta v. Bell Helicopter Textron, Inc.*, No. 01-14-00207-CV, 2015 WL 5076299, at *5–6 (Tex. App. Aug. 27, 2015) (same). There is no reason to depart from their holdings.

**D.      The private and public interest factors strongly favor an Indonesian forum.**

Because Indonesia is both available and adequate, the Court's inquiry turns to whether it is more convenient to litigate these claims there. The Court must balance the private and public interest factors against the plaintiffs' choice of forum and dismiss if the relevant factors, "when weighed against plaintiff's choice of forum, . . . strongly favor" Indonesia. *Jiali Tang*, 656 F.3d at 246 (citation omitted).

*Piper* and the many federal cases applying it make the Court's task easy. *See supra* at 12–14 (listing federal *forum non conveniens* dismissals in the aviation context). Here, just as in *Piper*, the decedents are all from the alternative forum; the accident occurred in the alternative forum and was investigated by its authorities; and, unlike in the U.S., the witnesses and other evidence related to liability and damages are located, or can be made available, there. *See Piper*, 454 U.S. 235. Indonesia is a more convenient forum.

**1.      Plaintiffs' choice of a U.S. forum is not entitled to special deference.**

As a threshold matter, the Court must first decide if the plaintiffs' choice of a U.S. forum is entitled to "heightened deference." *See DiFederico v. Marriott Int'l, Inc.*, 714 F.3d 796, 803 (4th Cir. 2013). It is not.

Courts apply a presumption of convenience when the plaintiff sues in his or her home forum, where the defendant bears a "heavy burden" to show the case could be more conveniently litigated elsewhere. *Sinochem*, 549 U.S. at 430. But that presumption is far less reasonable "when the plaintiff or real parties in interest are foreign." *Piper*, 454 U.S. at 256.

Here, all of the plaintiffs and/or the real parties in interest are Indonesian citizens.[7] Thus, their selection of a U.S. forum is not entitled to special deference. *See Jiali Tang*, 656 F.3d at 252–

---

[7] Eleven of the pending Sriwijaya Air cases were filed by a U.S. plaintiff, Jonathan Kastenbaum, as administrator of the estates of the decedents. As the Supreme Court recognized in *Piper*,

53 (granting "little deference" to plaintiffs' selection of a Maryland forum "because they are all Chinese citizens and residents"). Because a *forum non conveniens* dismissal would merely require the plaintiffs to refile their complaints at home, the presumption in favor of their selection becomes "little more than a tie breaker." *Abad v. Bayer Corp.*, 563 F.3d 663, 667 (7th Cir. 2009). There is no need for a tie breaker here.

### 2. The private interest factors weigh heavily in favor of dismissal.

The next step in a *forum non conveniens* analysis is to weigh the private interest factors, which determine where it would be more convenient for the parties to litigate. The federal courts, including the Fourth Circuit, have consistently emphasized the importance of trying the case in the forum with the greatest and most convenient access to proof. *See, e.g.*, *Jiali Tang*, 656 F.3d at 252 (dismissing in favor of China given location of witnesses and evidence, as well as inability to compel attendance of Chinese witnesses in the U.S.). Federal courts have also consistently emphasized the *inconvenience* of litigating foreign aviation accident cases in the United States, given the lack of access to critical evidence. *See supra* at 12–14. Further, in this case Indonesia is the only forum where all potentially liable parties can be joined. *Piper*, 454 U.S. at 259. These problems raise serious due process concerns, and it would be fundamentally unfair to force Boeing to defend itself in a forum where it lacks access to key witnesses and evidence. *See Daimler AG v.*

---

however, merely serving as an administrator for a foreign decedent's estate does not entitle a plaintiff to deference in his selection of forum. In *Piper*, the named plaintiff was appointed administratrix of the estates of five decedents. She was "not related to and [did] not know any of the decedents or their survivors; she was a legal secretary to the attorney who filed this lawsuit." 454 U.S. at 239. The Supreme Court looked to the citizenship of the real parties in interest, not to the plaintiff-administratrix, to decide what level of deference was owed. That rule applies here; Mr. Kastenbaum's citizenship should be ignored in favor of the citizenship of the decedents. *See also, e.g.*, *Rustal Trading US, Inc. v. Makki*, 17 F. App'x 331, 338 (6th Cir. 2001) (no deference owed when the plaintiff was "for all intents and purposes" a foreign plaintiff); *see also In re Air Crash Over the S. Indian Ocean on Mar. 8, 2014*, 352 F. Supp. 3d 19, 45 (D.D.C. 2018) ("[T]he possibility that [the named plaintiffs] were selected solely for purposes of this litigation cases [sic] doubt on the suggestion that their choice of forum warrants significant deference."), *aff'd* 946 F.3d 607 (D.C. Cir. 2020).

*Bauman*, 571 U.S. 117, 142 (2014) (due process "demands" fair play and substantial justice). The private interest factors weigh strongly in favor of an Indonesian forum.

   ***The relative ease of accessing key evidence favors dismissal.*** The first private interest factor is the "relative ease of access to sources of proof." *Piper*, 454 U.S. at 241 n.6. When evaluating this factor, courts do not just tally up "the number of witnesses or quantity of evidence in each locale." *Lueck*, 236 F.3d at 1146. Instead, they "evaluate 'the materiality and importance of the anticipated [evidence and] witnesses' testimony and then determine[ ] their accessibility and convenience to the forum." *Id.* (citation omitted; alterations in original). Not surprisingly, because all the decedents in this tragic accident were Indonesian and were killed when an aircraft maintained and operated by an Indonesian airline crashed in Indonesian waters, the majority of the witnesses and other proof are located in Indonesia. This factor strongly favors dismissal.

   To start with, most of the key liability evidence—including key third-party witnesses and documents, as well as physical evidence from the accident airplane—is located in Indonesia:

- **Sriwijaya Air.** The KNKT report and the plaintiffs' own allegations suggest that maintenance, training, and safety management issues at Sriwijaya Air contributed to the crash. *See supra* at 4–8. Testimony from Sriwijaya Air employees who developed the airline's maintenance and upset recovery training procedures, who trained Sriwijaya Air's maintenance personnel, who maintained the accident aircraft, who trained and flew with the accident pilots, and who developed and implemented the airline's safety management system will be essential for determining liability. Further, seven other flights experienced unreported "abnormal movement of thrust levers" on the accident aircraft between March 2020 and January 2021. *See* Final Report at 92–110. The pilot in command of one of those flights also flew the accident flight. *Id.* at 102. The testimony of the surviving co-pilot who flew that prior flight with the accident pilot will be critical to understanding how the accident pilot addressed asymmetric thrust events in real time and why no pilot report was filed. All of Sriwijaya's witnesses are located in Indonesia, and the airline has said it will not cooperate in U.S. litigation or voluntarily produce witnesses here. *See* Quy Letter.

- **KNKT investigators.** The KNKT served as the investigator-in-charge for the accident investigation. *See supra* at 4–5. Boeing participated in some, but not all, parts of the investigation. *See* McIntosh Decl. ¶ 11. For example, the KNKT conducted witness interviews without Boeing's participation, and Boeing did not receive any wreckage

for examination. *Id.* KNKT investigators are the only witnesses who have knowledge about the entire investigation, including who was interviewed, what documents were collected, and the location of the wreckage and other physical evidence. Testimony about the investigation from KNKT investigators, who are located in Indonesia, is highly relevant to determining liability. *See id.* ¶ 9.

- **Air traffic control.** AirNav Indonesia provided air traffic services for the accident flight. AirNav is located in Jakarta at the Jakarta Air Traffic Service Center. Final Report at 78. Testimony from the Indonesian air traffic controller who provided services to the accident flight to explain the accident sequence will be highly relevant liability evidence. *Id.* at 6, 78.

Key documentary evidence related to liability is also available only in Indonesia. For example, Boeing received some unauthenticated (and hence potentially inadmissible) training and maintenance records for Sriwijaya Air during the investigation. *See* McIntosh Decl. ¶ 10. Boeing did not, however, receive a complete set of those or other records, which are available only in Indonesia. *See id.*; Quy Letter. Sriwijaya Air has said it will not produce documents or witnesses to authenticate records in the U.S. cases. *See* Quy Letter. But Boeing anticipates that documentary evidence from Sriwijaya Air—including documents related to training and maintenance procedures, the safety management program, the pilots' training histories and personnel records, and maintenance records—will be a key part of this litigation. Further, Boeing believes that the KNKT's complete investigation file is located in Indonesia, as are the Flight Data Recorder (FDR), CVR, and any remaining wreckage. *See* McIntosh Decl. ¶ 10. This important evidence for Boeing's defense can only be accessed in Indonesia.

The case law makes clear that when, as here, crucial witnesses and documents are more conveniently or only available in the foreign forum, the private interest factors weigh strongly in favor of *forum non conveniens* dismissal. In *Jiali Tang*, for example, the Fourth Circuit recognized that because "most of the evidence and witnesses are in China" and the district court would be unable "to compel the attendance of [key] Chinese witnesses," proceeding in the United States would be highly inconvenient. 656 F.3d at 252. In the aviation context, federal courts have

similarly held that the private interest factors favor dismissal when witnesses and other evidence related to an airline's maintenance and training efforts, the foreign accident investigation, and the wreckage are located abroad. *See, e.g.*, *Piper*, 454 U.S. at 242, 258–59; *Clerides*, 534 F.3d at 629; *Lueck*, 236 F.3d at 1146–47; *Siswanto*, 2016 WL 7178460, at *10.

To be sure, the plaintiffs will focus on the location of Boeing's witnesses and documents as relevant to their claims. But that evidence will be available in the Indonesian proceedings because, as a condition of dismissal, Boeing will make available in Indonesia any personnel and documents that are deemed relevant by the Indonesian court. *See* Shultz Decl. ¶ 3; *see also Clerides*, 534 F.3d at 629 (the location of Boeing's evidence did not alter the private interest analysis "given Boeing's agreement to produce its documents and witnesses" in the foreign forum); *Lueck*, 236 F.3d at 1147 ("[B]ecause the district court cannot compel production of much of the New Zealand evidence, whereas the parties control, and therefore can bring, all the United States evidence to New Zealand, the private interest factors weigh in favor of dismissal.").

In addition to the liability evidence, all of the damages witnesses and documents are located in Indonesia. *See Piper*, 454 U.S. at 242, 258–59; *see also, e.g.*, *Kolawole*, 863 F.3d at 1372; *Nolan*, 919 F.2d at 1069. The decedents were Indonesian citizens. As a result, evidence and witnesses related to the decedents' employment, income, education, military service, medical history, and familial ties are in Indonesia. *See, e.g.*, *Lueck*, 236 F.3d at 1146 (discussing damages); *Clerides*, 534 F.3d at 629 (same). Many of the third-party sources of proof Boeing would need to test the plaintiffs' damages claims are outside of the parties' control, and there is no feasible way to bring them into a U.S. proceeding. *See* Budidjaja Decl. ¶¶ IV.1–6; *see also infra* at 22–25. "Given the number of decedents, the volume of this evidence is substantial," which again weighs strongly in favor of dismissal. *In re Air Crash Over Taiwan Straits*, 331 F. Supp. 2d at 1196

("While the parties dispute the location of the relevant liability proof, there is no question that damages proof is overwhelmingly located in Taiwan.").

Finally, Boeing will need to obtain evidence from Indonesia to address two issues unique to certain plaintiffs. First, in several cases, multiple lawsuits have been filed on behalf of the estates of the same decedents. *See* Shultz Decl. ¶ 6. Boeing will need to obtain records from Indonesia that establish which plaintiff is the proper representative of the estate. Second, the plaintiffs' attorneys have notified Boeing that at least some of the decedents' families have settled with the airline in Indonesia. *See id.* ¶ 7. Documents related to those settlements are in Indonesia and may be relevant to the plaintiffs' claims against Boeing, especially if the settlement agreements name Boeing as a released party and plaintiffs challenge the releases' enforceability.

In short, the location of the evidence in this case is *exactly* the same as it was in *Piper.* There, the Supreme Court held that Scotland was more convenient under the first private interest factor because most maintenance, pilot training, and accident investigation witnesses were located in Great Britain, as were "all witnesses to damages." *Piper*, 454 U.S. at 242, 258–59. It rejected the plaintiff's argument that the district court should have kept the case simply because the manufacturers' "design, manufacture, and testing" records were in the U.S. *Id.* at 257. As in *Piper*, the first private interest factor strongly weighs in favor of dismissal here.

***The availability of compulsory process over, and cost of securing, foreign witnesses favors dismissal.*** The second private interest factor looks at the "availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses." *Piper*, 454 U.S. at 241 n.6 (citation omitted). This factor, too, strongly supports dismissal.

As Boeing explained above, most of the liability witnesses and all of the damages witnesses are located in Indonesia. *See supra* at 19–22. Many of these individuals are unlikely to be willing

to participate in U.S.-based litigation, and Sriwijaya Air has stated that it will not produce any witnesses or documents in U.S. litigation. *See* Quy Letter.

Without the voluntary cooperation of Sriwijaya or other Indonesian witnesses, Boeing will not be able to adequately defend itself in the United States. First, it cannot be disputed that this court (or any U.S. court) lacks subpoena power over any foreign national third parties in Indonesia. *See* Fed. R. Civ. P. 45(b)(2)-(3); *see also United States v. Moussaoui*, 382 F.3d 453, 463–64 (4th Cir. 2004) (recognizing "the well established and undisputed principle that the process power of the district court does not extend to foreign nationals abroad"). Further, as explained by Mr. Budidjaja, there is no reliable or convenient way to compel the attendance of unwilling Indonesian witnesses or to obtain their documents for use in U.S. proceedings. *See* Budidjaja Decl. ¶¶ IV.1–6. Indonesia does not have a statutory mechanism to compel an Indonesian witness to testify in, or to bring documents to, a proceeding in the United States. *See id.* ¶ IV.2. Nor is Indonesia a party to any bilateral or multilateral agreement—such as the Hague Convention on the Taking of Evidence Abroad in Civil Commercial Matters—that would give a United States court grounds to obtain evidence from third parties in Indonesia. *See id.* ¶ IV.3.

While Boeing could attempt to seek evidence through letters rogatory, that process would not be a convenient, effective, or fair method of obtaining evidence. The process would likely take a year or more, and there is no guarantee that an Indonesian court would grant the request or that an Indonesian recipient would comply if it did. *Id.* ¶¶ IV.4–5; *see also Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*, 361 F.3d 11, 21 (1st Cir. 2004) (recognizing that letters rogatory are inherently "burdensome, costly, and time-consuming"). Even a successful letter rogatory would not secure a witness's "live testimony," which is a "superior[]" and more convenient form of evidence. *Clerides*, 534 F.3d at 630 (noting that where evidence can only be

obtained via letters rogatory, the private interest factors favor dismissal); *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511 (1947); *Siswanto*, 2016 WL 7178460, at *11. Instead, the witness would at most be ordered to respond to "a series of written questions." Budidjaja Decl. ¶ IV.5. "Certainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants." *Gulf Oil*, 330 U.S. at 511; *see also, e.g.*, *Jiali Tang*, 656 F.3d at 252 (an inability to compel foreign witnesses will "greatly undermin[e] a fact-finding effort" in the original forum); *ElcomSoft, Ltd. v. Passcovery Co.*, 958 F. Supp. 2d 616, 622 (E.D. Va. 2013) (same).

If these cases were re-filed in Indonesia, however, Indonesian courts would have the authority to summon witnesses in Indonesia to appear in domestic proceedings, *id.* ¶ III.A.24, and Boeing has already committed to produce documents and witnesses deemed relevant there, *see* Shultz Decl. ¶ 3; *Clerides*, 534 F.3d at 629; *Lueck*, 236 F.3d at 1147. Plaintiffs would therefore not be deprived of any relevant Boeing documents and witnesses if the cases were re-filed in Indonesia.

Finally, the cost and burden of securing the attendance of even willing Indonesian witnesses in the United States would be substantial. *See ElcomSoft*, 958 F. Supp. 2d at 622 (finding the second private interest factor favors dismissal when the alternative forum "is far from this District, and [] any willing witnesses will face significant travel costs"). Virginia and Illinois are both more than 9,000 miles from Indonesia, and there are no direct flights between Indonesia and either U.S. forum. *See* Shultz Decl. ¶¶ 12–13, Exs. E–F.

***The inability to implead third-party defendants in the U.S. favors dismissal.*** The final private interest factor consists of "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Piper*, 454 U.S. at 241 n.6. The inability to implead in this court all

parties that are potentially at fault for the accident falls in this category and by itself weighs heavily in favor of dismissal.

U.S. courts do not have personal jurisdiction over wrongful death claims that may be asserted against Sriwijaya Air. *See Makassar Strait*, 2011 WL 91037, at *7 (federal courts lack personal jurisdiction over an airline that "has never operated in the U.S. nor . . . sought to do so"). Both KNKT investigators and the plaintiffs have identified Sriwijaya Air as a potentially responsible party. Yet, the airline cannot be brought into this U.S. litigation. In contrast, the plaintiffs can sue Sriwijaya Air in Indonesia and, if they choose not to do so, Boeing could implead the airline into the case as a third-party defendant. *See* Budidjaja Decl. ¶ III.B.21. Courts regularly recognize that "the problems posed by the inability to implead potential third-party defendants clearly support[] holding the trial in" the alternative forum. *Piper*, 454 U.S. at 259; *see also Tazoe*, 631 F.3d at 1335 (same); *Nolan*, 919 F.2d at 1069 (same); *Ballesteros v. Boeing Co.*, No. C22-0393 TSZ, 2023 WL 2757229, at *5 (W.D. Wash. Apr. 3, 2023) (finding Colombia a "superior forum" because all parties could be joined in legal proceedings there).[8]

\*\*\*

In sum, Indonesia is the only forum where all of the relevant parties can be joined and the key relevant evidence can be obtained. The private interest factors overwhelmingly favor dismissal in favor of Indonesia. *See, e.g.*, *Piper*, 454 U.S. at 242, 258–59; *Lueck*, 236 F.3d at 1147.

### 3.    The public interest factors also strongly favor an Indonesian forum.

Finally, the public interest factors, which assess whether the existing or the alternative forum has a stronger interest in the litigation, heavily favor dismissal.

---

[8] Courts can also consider the "possibility of view of premises, if view would be appropriate." *Piper*, 454 U.S. at 241 n.6. This factor is neutral, because the accident occurred over water and there are no premises to view. *See Makassar Strait*, 2011 WL 91037, at *7; *Siswanto*, 2016 WL 7178460, at *12.

*The local interest in local controversies favors dismissal.* The most important public interest factor in this case is Indonesia's "local interest in having localized controversies decided at home." *Piper*, 454 U.S. at 241 n.6 (citation omitted).

Courts routinely hold that foreign countries have an "extremely high" interest in litigation related to domestic aviation accidents, especially those that involve their citizens and domestic airlines. *Lueck*, 236 F.3d at 1147; *see also Siswanto*, 2016 WL 7178460, at *12 ("Indonesia's local interests in the subject [aviation accident] litigation cannot be overstated."). That principle applies with full force here. The Sriwijaya Air flight 182 accident involved the crash of an Indonesian airline, in Indonesia, with 62 decedents who all were Indonesian. It was investigated by Indonesian authorities, who have shown a strong interest in "protecting the health and safety of [] residents," especially given the aviation industry's importance to travel within Indonesia. *Clerides*, 534 F.3d at 630; *see also supra* at 7–9. Indonesian legislators took immediate steps to improve aviation safety in Indonesia. *See supra* at 7.

Indonesia also has a "significant and compelling local interest" in the "full and fair compensation to the families of its citizens who died in the crash." *Melgares*, 613 F. Supp. 2d at 249; *see also Clerides*, 534 F.3d at 630; *Leon*, 251 F.3d at 1315. The accident received extraordinary media attention in Indonesia, including with respect to compensation for surviving family members. *See supra* at 7–9. And since several plaintiffs have already settled with the airline, Indonesia has the strongest interest in ensuring that the releases negotiated and signed in Indonesia by Indonesian parties are appropriately interpreted and enforced. Indonesia has an overwhelming public interest in the accident under these circumstances. *See* Budidjaja Decl. ¶¶ V.F.1–7.

By comparison, Virginia's and Illinois's interests are legally insignificant. The aircraft was neither designed nor manufactured in those states. In *Clerides*, for example, the Seventh Circuit

recognized that the Northern District of Illinois (which at the time was where Boeing maintained its headquarters) had "no local connection" to litigation arising from a foreign aviation accident because "the development and manufacture of the Boeing systems likely involved in the crash" occurred in Washington, not Illinois. 534 F.3d at 626, 630. The same is true here. Any generalized interest that Virginia, Illinois, or even the United States may have in regulating Boeing is "simply not sufficient to justify the enormous commitment of judicial time and resources that would inevitably be required if the case were to be tried here." *Piper*, 454 U.S. at 261; *see also Lueck*, 236 F.3d at 1147 (Arizona's interest in regulating its manufacturers "is slight compared to the time and resources the district court in Arizona would expend" in managing the case).

Further, even if Boeing's design and manufacturing work in Washington state did factor into the public interest analysis, it still would not tip the scales in plaintiffs' favor. As the Supreme Court has explained, having a trial where the product was manufactured is likely to have only "*insignificant*" "incremental deterrence" on domestic manufacturers. *Piper*, 454 U.S. at 260–61 (emphasis added). The United States obviously has an interest in regulating Boeing, but so do other countries, including Indonesia. *See Cleride*s, 534 F.3d at 630 (interests of Greece and Cyprus in regulating the use of allegedly defective products within their borders "matched" the United States' interest in regulating domestic companies); *see also Kryvicky*, 807 F.2d at 517 ("[T]he country where the injury occurred has a greater interest in the ensuing products liability litigation than the country where the product was manufactured."). Given the totality of the facts here, Indonesia's local interest is more compelling.

***Familiarity with the governing law favors dismissal.*** The next two public interest factors assess "the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action" and "the avoidance of unnecessary problems in conflict of laws, or in

the application of foreign law." *Piper*, 454 U.S. at 241 n.6 (citation omitted). Dismissal in favor of the foreign forum is preferred when a court would "likely encounter complex issues of [foreign] law," *Jiali Tang*, 656 F.3d at 252, and the "court would be required to untangle problems in conflict of laws, and in law foreign to itself," *Piper*, 454 U.S. at 251 (citation and internal quotation marks omitted). This factor also favors dismissal.

Here, the Court would face a double burden. First, it would need to decide which choice-of-law rules apply, since Boeing removed all 21 cases under both diversity and admiralty jurisdiction. If the Court proceeds under its diversity jurisdiction, then Virginia's *lex loci delicti* rule—which selects the law in a tort case based on the "place of the wrong"—would apply. *Ford Motor Co. v. Nat'l Indem. Co.*, 972 F. Supp. 2d 850, 856 (E.D. Va. 2013). If, however, the Court proceeds under admiralty jurisdiction, it would need to apply the seven-factor test set out in *Lauritzen v. Larsen*, 345 U.S. 571 (1953).[9]

The Court's task would not end there. Regardless of how the broader choice of law issues are resolved, the court would have to apply Indonesian law to resolve certain questions. For example, the Court would have to decide who is entitled, under Indonesian law, to bring claims on behalf of the estate of the five decedents who are at issue in two or more separate actions. *See* Shultz Decl. ¶ 6. This question involves complicated issues of Indonesian probate law, which for some plaintiffs might need to be resolved in Indonesia's religious courts. *See* Budidjaja Decl. ¶¶ II.B.3, III.C.10. The Court may also need to grapple with legal issues under Indonesian law relating to the validity, enforceability, and effect of contracts between Indonesian parties, entered into on Indonesian soil, such as whether the settlement agreements some plaintiffs entered into

---

[9] Further, if any cases are remanded to Illinois and proceed to trial there, that district court would likewise be faced with a similar choice of law analysis and complex issues of Indonesian law, whether under Illinois' "most significant relationship" test or federal admiralty law. *See Robinson v. McNeil Consumer Healthcare*, 615 F.3d 861, 865 (7th Cir. 2010).

with Sriwijaya are enforceable under Indonesian law, whether plaintiffs' claims against Boeing are barred by the releases, whether Boeing could assert an empty chair defense against the airline given a settlement, and whether the settlement amounts could result in a setoff or credit. *See* Shultz Decl. ¶ 7.

But the Court does not need to answer these questions. The *forum non conveniens* doctrine favors dismissal to "avoid[] unnecessary problems in conflict of laws, or in the application of foreign law." *Piper*, 454 U.S. at 241 n.6 (citation omitted). There is no question the "effort at applying [Indonesian] law" would "tax the court system." *Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster NV*, 569 F.3d 189, 201 (4th Cir. 2009). An Indonesian court indisputably would be better positioned to resolve these issues in the first instance.

**The unfairness of burdening citizens with jury duty favors dismissal.** Courts also examine "the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper*, 454 U.S. at 241 n.6 (citation omitted). "Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Gulf Oil*, 330 U.S. at 508–09. Citizens in Virginia and Illinois have no local connection to the victims, the plaintiffs, their families and colleagues, "or the development and manufacture of the Boeing systems likely involved" in the plaintiffs' claims. *Clerides*, 534 F.3d at 630. Given the availability and adequacy of an Indonesian forum, there is no reason to direct the time and resources of the Eastern District of Virginia, the Northern District of Illinois, and the citizens in those districts toward evaluating claims brought by Indonesian plaintiffs based on events alleged to have occurred in Indonesia.

**Court congestion in the Northern District of Illinois favors dismissal.** Finally, courts may weigh "the administrative difficulties flowing from court congestion" in the current and alternative forum. *Piper*, 454 U.S. at 241 n.6 (citation omitted); *see also Gulf Oil*, 330 U.S. at 508. The court

compares the courts' average time to decision, if available, or the "docket[s] being carried by the district court[ ]" and the foreign forum. *In re Bridgestone/Firestone, Inc.*, 420 F.3d 702, 705 (7th Cir. 2005); *see Clerides*, 534 F.3d at 630 (citing "current median time to trial").

The median time to trial for civil cases in the Northern District of Illinois was 51.2 months for the year ending December 31, 2022, and 26.4 months in the Eastern District of Virginia for the same period. *See* Caseload Statistics Data Tables C-5, U.S. Courts, https://www.uscourts.gov/statistics-reports/caseload-statistics-data-tables. The Indonesian Supreme Court expects district courts to resolve cases within five months after the registration of claims. Budidjaja Decl. ¶ II.B.9. In practice, district courts typically take between six months and a year to enter judgment after the registration of claims. Arifin, Purba & Firmansyah, *In review: court procedure in Indonesia*, LEXOLOGY (Mar. 22, 2021), https://www.lexology.com/library/detail.aspx?g=97b887df-af61-44a9-a6f0-83d99df76126; *see also Makassar Strait*, 2011 WL 91037, at *9 (air crash litigation in Indonesia moved "expeditiously, with trials concluding on some claims within nine months of the first hearing").[10] Even considering the rapid pace of litigation in this district, this factor strongly favors dismissal for the cases that may need to be returned to the Northern District of Illinois for trial and is at least neutral for the cases that would be tried in the Eastern District of Virginia.

## CONCLUSION

For these reasons, Boeing respectfully requests that this Court dismiss plaintiffs' complaint in favor of refiling in the courts of Indonesia.

---

[10] This time period includes preliminary briefing, an evidentiary hearing, and post-hearing briefing, which the district court relies on to enter final judgment. *See In review: court procedure in Indonesia*, LEXOLOGY, (Mar. 22, 2021), https://www.lexology.com/library/detail.aspx?g=97b887df-af61-44a9-a6f0-83d99df76126.

Dated:  June 26, 2023

By: /s/ Benjamin L. Hatch
Benjamin L. Hatch, VA Bar No. 70116
BHatch@mcguirewoods.com
McGuireWoods LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, VA 23510-1655
Telephone:     +1.757.640.3700
Facsimile:     +1.757.640.3947

Mack H. Shultz (admitted *pro hac vice*)
MShultz@perkinscoie.com
Perkins Coie LLP
1201 3rd Avenue, Ste 4900
Seattle, WA 98101
Telephone:     +1.206.359.8000
Facsimile:     +1.206.359.9000

*Attorneys for Defendant The Boeing Company*

## <u>CERTIFICATE OF SERVICE</u>

I, Benjamin L. Hatch, hereby certify that on June 26, 2023, I filed the foregoing **_BRIEF IN SUPPORT OF BOEING'S MOTION TO DISMISS FOR FORUM NON CONVENIENS_** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record.

_/s/ Benjamin L. Hatch_
Benjamin L. Hatch
BHatch@mcguirewoods.com
McGuireWoods LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, VA 23510-1655
Telephone:     +1.757.640.3700
Facsimile:     +1.757.640.3947
