**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

Alexandria Division

| | |
|---|---|
| IN RE:<br><br>AIR CRASH INTO THE JAVA SEA<br>ON JANUARY 9, 2021 | MDL No. 1:23MD3072 |

**SUPPLEMENTAL MEMORANDUM OF FACTS AND LAW IN SUPPORT OF REMAND**

**INTRODUCTION**

On January 9, 2021, a Boeing 737-500 aircraft operating on a commercial domestic flight from Jakarta to Pontianak, Indonesia crashed shortly after takeoff killing all 62 people on board. Products liability actions were commenced against the Boeing Company (Boeing) in the Circuit Court of Cook County, Illinois.

Plaintiffs were eager to prosecute their case before a jury. Boeing took procedural steps to stop plaintiffs: removing these actions, requesting that the actions be transferred under 28 U.S.C. § 1407, telling courts that its principal place of business was no longer in Illinois. In so doing, Boeing has stopped this case from proceeding to its merits for several months.

Boeing improperly removed these actions. One action has been remanded back to state court in Illinois. Boeing has told courts in other jurisdictions that its principal place of business is in Illinois. The Court, respectfully, should remand the actions to the state court in Illinois so that the cases can be tried in the plaintiffs' preferred forum.

1

**FACTS**

On January 9, 2021, a Boeing 737-500 aircraft operating as Sriwijaya Air flight number SJY182, registration PK-CLC, was on a scheduled passenger flight from Soekarno-Hatta International Airport, Jakarta, Indonesia with an intended destination of Supadio International Airport, Pontianak. Indonesia. Ex. A, p.1.

The accident aircraft departed from Runway 25R in Jakarta at 2:36 p.m. local time in daylight conditions. Id., p.33, ¶2, p.132, ¶17. After take-off, the autopilot was engaged at an altitude of 1,780 feet. Id., p. 33, ¶4. After the aircraft climbed past 7,600 feet, the thrust lever position of the left engine started reducing, while the thrust lever position of the right engine remained. Id., p.33, ¶8. This occurred because the plane's autothrottle system malfunctioned or suffered from an "anomaly." Ex. A, p. xiii, 116-121.

The radar data known as Automatic Dependent Surveillance – Broadcasting or "ADS-B" for the flight (Ex. B) shows that this malfunction or anomaly originated while the aircraft was over land at some point between points A and B. Ex. C. The plane crashed about 11 nautical miles northwest of Jakarta, and about 80 meters southeast of the last known aircraft position recorded by the ADS-B. Ex A, p. 40, Ex. B.

In an action that is not before the Court but involving the same claims, Plaintiff Riyanto, commenced an action in the Circuit Court of Cook County, Illinois against Boeing on January 9, 2021

which Boeing removed claiming that its principal place of business was in Chicago, Illinois.[1]

On April 27, 2022, Boeing's President and Chief Executive Officer (CEO) issued an update to its employees on the company's first-quarter results from Chicago, Illinois. Ex. D.

On May 17, 2022, Boeing filed an annual stock report in the State of Virginia listing its principal offices in Arlington, Virginia but all its corporate officers were listed in Chicago, Illinois.  Ex. E.

On June 30, 2022, Boeing filed its 10-Q form with the Securities and Exchange Commission listing its state of incorporation as Delaware but its principal executive offices in Arlington, Virginia. Ex. F

Auditors, Deloitte and Touche LLP, who signed off on the 10-Q report on July 27, 2022 did so in Chicago, Illinois, (Exhibit F at Exhibit 15 to 10-Q), even though they have offices in Virginia.

Boeing's CEO and Executive Vice President and Chief Financial Officer (CFO) certified the Form 10-Q but their certification unlike Deloitte's letter does not specify where they were located when they signed the document. Exhibit F at Exhibits 31.1; 32.1 to 10-Q.

On July 27, 2022, Boeing's CEO issued an update to its employees on the company's first-quarter results from Chicago, Illinois. Ex. G.

---

[1] *Riyanto v. Boeing*, No. 21-1475, --- F.Supp.3d ----, ----, 2022 WL 16635556 (N.D. Ill. Nov. 2, 2022)

On August 16, 2022, Plaintiffs Wadu, Ponijan, Ridwan, and Ridwan II, commenced actions against Boeing in the Circuit Court of Cook County, Illinois. Ex. H.

On September 8, 2022, Boeing admitted in an unrelated action, *Harrold v. The Boeing Company*, that "[a]t the time the action was filed and at all times since, Defendant Boeing was and continues to be a corporation incorporated under the laws of Delaware and with its principal place of business in Illinois." Ex, I, Id., 4:22-cv-00942-RLW, Dkt. 1.

On September 9, 2022, Boeing removed the Wadu, Ponijan, and Ridwan actions.

On September 19, 2022, Plaintiffs Aprillia et al. (Aprillia I) commenced their first action against Boeing in the Circuit Court of Cook County, Illinois but due to a filing error, dismissed that action without prejudice on September 30, 2022. Ex. J.

On September 23, 2022, after correcting the filing mistake, Plaintiffs Aprillia et al. (Aprillia II) commenced a subsequent action against Boeing in the Circuit Court of Cook County, Illinois an. Ex. K.

On October 13, 2022, Boeing removed Aprillia I which had been dismissed, it then amended its notice and removed Aprillia II on October 18, 2022.

On October 26, 2022, Boeing's CEO issued an update to its employees on the company's first-quarter results from Chicago, Illinois. Ex. L.

On November 2, 2022, the Riyanto action was remanded to state court for lack of jurisdiction.[2]

---

[2] *Id.*

On November 17, 2022, Boeing admitted in an unrelated action, *McCabe v. Aerojet Rocketdyne, Inc.*, that "BOEING admits that it is duly organized, created, and existing under and by virtue of the laws of Delaware with a principal place of business in the State of Illinois." Id., 22-cv-62148-WPD, Dkt. 1-4, Ex. M.

On December 1, 2022, Boeing filed an annual stock report in the State of Virginia listing its principal offices in Arlington, Virginia but all its corporate officers were listed in Chicago, Illinois.  Ex. N.

On December 5, 2022, Boeing admitted in an unrelated action, *Crosby v. Basf Corporation et al.*, that "BOEING admits that it is duly organized, created, and existing under and by virtue of the laws of Delaware with a principal place of business in the State of Illinois." Id., 22-cv-62225-RAR, Dkt. 1-4, Ex. O.

On December 15, 2022, Plaintiffs in Aprillia II filed a first amended complaint adding eight additional plaintiffs to the action that Boeing removed. Ex. P.

On January 5, 2023, Plaintiffs, Arifini, Handayani, Wahyuni, and Marizal, commenced an action in the Circuit Court of Cook County, Illinois and Boeing removed them on January 20, 2023. Ex. Q.

On January 9, 2023, Plaintiff Riyanto commenced a separate action on behalf of other decedents in the Circuit Court of Cook County, Illinois and Boeing removed them on January 20, 2023. Ex. R.

On January 25, 2023, Boeing's CEO issued an update to its employees on the company's first-quarter results from Chicago, Illinois. Ex. S.

5

On March 10, 2023, Boeing filed an annual stock report in the State of Virginia listing its principal offices and its officers' location in Arlington, Virginia. Ex. T.

On March 14, 2023, Boeing's sister company, Boeing Aerospace, whose Treasurer is also the Assistant Treasurer and President for Boeing, filed an annual stock report in the state of Virginia listings its principal place of business and offices in Chicago, Illinois. Ex. U.

On April 12, 2023, Boeing admitted in an unrelated action, *Sims v. Aerojet*, that "Boeing admits that it is duly organized, created, and existing under and by virtue of the laws of Delaware with a principal place of business in the State of Illinois." Id., 0:22-cv-62148-WPD, Dkt. 192, Ex. V.

On June 22, 2023, the Circuit Court of Cook County, Illinois, granted Plaintiff Aprillia's petition to vacate the dismissal without prejudice entered on October 6, 2022, on Plaintiff Aprillia I, Ex. J, and set the matter for a status conference on July 28, 2023. Ex. W.

As of June 23, 2023, a public record search reveals that Boeing's current treasurer is located in Ridgefield, Connecticut. Ex. X, and Boeing's president and assistant treasurer is in the greater Chicago area Id. As to Boeing's Executive Council,[3] a public record search reveals that except for one, most of them are located outside of Arlington, Virginia. Id.

---

[3] https://www.boeing.com/company/bios/ (last checked June 23, 2023).

6

Public records search also indicates that Boeing's CEO maintains a residence in Chicago, Illinois and that he still owns the residence.

## GENERAL LAW

On questions of federal law, "every Circuit ... has concluded that when one district court transfers a case to another, the norm is that the transferee court applies its own Circuit's cases on the meaning of federal law." *AER Advisors, Inc. v. Fidelity Brokerage Servs., LLC*, 921 F.3d 282, 288 (1st Cir. 2019); *accord Bradley v. United States*, 161 F.3d 777, 782 n.4 (4th Cir. 1998) (declining to "apply the law of another circuit simply because the case was transferred from the other circuit"); *Key v. Robertson*, 2009 WL 5942664, at *5, fn. 3. (E.D. Va. Feb. 23, 2009) (same).

"The burden of establishing federal jurisdiction is placed upon the party seeking removal." *Mulcahey v. Columbia Organic Chems. Co., Inc.*, 29 F.3d 148, 151 (4th Cir. 1994). "Because removal jurisdiction raises significant federalism concerns, [courts] must strictly construe removal jurisdiction." *Id.*; *Creekmore v. Food Lion, Inc.*, 797 F. Supp. 505, 507 (E.D. Va. 1992) ("[C]ourts strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court."). However, "[i]f federal jurisdiction is doubtful, a remand is necessary." *Mulcahey*, 29 F.3d at 151; *see also A.E.A. v. Volvo Penta of the Ams., LLC*, 77 F. Supp. 3d 481, 488, (E.D. Va. 2015).

//

//

//

## BOEING CANNOT SHOW THAT ITS PRINCIPAL PLACE OF BUSINESS WAS NOT IN CHICAGO WHEN ILLINOIS ACTIONS COMMENCED

Boeing's principal place of business was in Chicago, Illinois when these actions commenced.

A corporation's principal place of business determines its citizenship. *Hertz Corp. v. Friend*, 559 U.S. 77 (2010). Citizenship is determined at the time an action is commenced. *Rowland v. Patterson*, 882 F.2d 97, 99 (4th Cir. 1989)(en banc).[4] Principal place of business refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities even if some of the officers are not located at that particular location. *Central West Virginia Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101 (4th Cir.2011)(the presence of a vice president and a general manager in Western Virginia was insufficient to establish citizenship there when seven other corporate officers were located in Michigan).

As the Fourth Circuit explained in *Hoschar v. Appalachian Power Co.*, 739 F.3d 163 (4th Cir. 2014), "if a corporation's day-to-day operations are managed in one state, while its officers make significant corporate decisions and set corporate policy in another, the principal place of business is the latter." 739 F.3d at 172 (citing *Mountain State Carbon*, 636 F.3d at 106); *see also id.* ("[T]he corporation's day-to-day operations are not 'relevant to the "nerve center" test under *Hertz*.'"(*quoting Mountain State Carbon*, 636 F.3d at 105)).

---

[4] *Arbee Mechanical Contractors v. Capital Sun Corp.*, 683 F.Supp. 144, 146 (E.D.Va. Apr. 24, 1988)(same); *Virginia v. SupportKids Servs., Inc.*, 2010 WL 1381420, at *2 (E.D.Va. Mar.30, 2010)(same).

Like *Mountain State Carbon*, apart from one officer, the record demonstrates that none of the officers who make significant corporate decisions and set corporate policy for Boeing are *currently* located in Virginia. When the actions in this case *commenced*, the record demonstrates that officers who made significant corporate decisions and set corporate policy were in Chicago, Illinois because Chicago is the address listed on corporate filings filed with the state of Virginia. Further, Boeing's CEO was announcing corporate decisions and policy from Chicago throughout 2022 as late as January 25, 2023.

The record demonstrates that Boeing announced its decision to relocate its offices in 2022, took administrative steps consistent with that decision by restructuring its corporation, but has yet to complete the transition from Illinois to Virginia because most of its corporate officers have not relocated here. That some of Boeings' attorneys in unrelated matters filed pleadings in other courts in late 2022 and early 2023 stating the same at best demonstrates that Boeing had not completed its transition from Illinois to Virginia.

On this record, Boeing cannot carry its burden that at the time the actions in this case commenced its principal place of business was not in Illinois. *Hoschar* at 169. The 10-Q form cited by Boeing in its notice of removal is the type of evidence treated with skepticism by the Supreme Court as establishing a corporation's principal place of business. *Hertz Corp.*, 559 U.S. at 97. The Court should not give the form much weight.

And to extent Boeing suggests otherwise discovery is the means of testing the reliability and veracity of Boeing's position.

9

*Hoschar* at 167-169 (4th Cir. 2014)(discussing use of an affidavit and a 30(b)(6) deposition to establish corporation's principal place of business); *Columbia Group, Inc. v. Logistics Management Institute*, 2020 WL 6948802 (E.D.VA, August 31, 2020)(same).

The Court should respectfully find that Boeing's principal place of business was in Chicago, Illinois when the Ilinois actions commenced.

## BECAUSE BOEING'S PRINCIPAL PLACE OF BUSINESS IS IN CHICAGO, ILLINOIS, DIVERSITY JURISDICTION IS BARRED

As explained in Part II, A, Boeing was a citizen of Illinois when the Illinois actions commenced. The forum-defendant rule prohibits removal based solely on diversity jurisdiction when "any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2).

Because Boeing was a citizen of Illinois when the actions commenced and was properly served and joined, removal based on diversity of citizenship is prohibited. *Campbell v. Hampton Roads Bankshares, Inc.*, 925 F. Supp. 2d 800, 809-10 (E.D. Va. 2013).

## THIS COURT LACKS ADMIRALTY JURISDICTION BECAUSE THE TORT DID NOT OCCUR ON NAVIGABLE WATERS AND WAS NOT CAUSED BY A VESSEL ON NAVIGABLE WATER

Boeing cannot invoke admiralty jurisdiction because it fails to satisfy "conditions both of location **and** of connection with maritime activity." *Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 226 (4th Cir. 2022) ("BP P.L.C."). To determine whether admiralty jurisdiction exists, the Court looks to the complaint. *Id.*

The complaints allege that the tort occurred over land and other evidence supports that allegation. Plaintiffs have alleged that the autothrottle system malfunctioned or suffered from an anomaly while the plane was over land, an allegation reinforced in the final KNKT report. Boeing's notice of removal only states that the aircraft crashed into the water several miles off the coast of Java and says nothing about when the autothrottle system malfunctioned or suffered from an anomaly. Because the alleged tort occurred on land, the court's analysis can end. *Ford Motor Company v. Wallenius Lines*, 476 F.Supp. 1362, 1365 (E.D. Va. 1979).

If not, the tort has no connection with maritime activity. "[A] plane's unexpected descent will almost invariably have been attributable to a cause unrelated to the sea—be it pilot error, defective design or manufacture or engine," [and it] alone is insufficient to justify invocation of admiralty jurisdiction." *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 270-271 (1972). Here, the plane's unexpected descent and crash eleven miles northwest of Jakarta had no impact "on maritime commerce" and had nothing to do with "maritime activity" but rather Boeing's autothrottle system which malfunctioned or suffered from an anomaly. *White v. United States*, 53 F.3d 43, 45-46 (4th Cir. 1995). The latter is reinforced by the KNKT report which makes clear that the autothrottle system is built and designed for use in an airplane not a maritime vessel. Ex. A, p. 17.

Even if Boeing were to meet the stringent tests for admiralty jurisdiction, plaintiffs have invoked their right to pursue common-law remedies in state court, a right preserved to them under maritime law. *BP P.L.C.* at 225. Here, by filing their actions in

11

state court in Illinois, plaintiffs invoked their right to pursue common-law remedies against Boeing in that forum. *Id. citing Lu Junhong v. Boeing Co.*, 792 F.3d 805, 817–18 (7th Cir. 2015).

## CONCLUSION

Though "anomalies" exist in this case given the pending Virginia actions, those anomalies were created by Boeing's decisions. *Hertz* at 96. Plaintiffs should not suffer consequences because of those decisions.

The Court should accept the anomaly and remand the Illinois actions back to Cook County, Illinois for the reasons set out but also because there is an existing action currently pending in the circuit ready to proceed to its merits.

Plaintiffs respectfully ask that the Court return these actions to state court in Illinois.

Dated: July 5, 2023                     Respectfully submitted,

By: */s/ Mohammad Hamoudi*
        By Counsel

Charles Herrmann (WA Bar No. 6173)
Anthony Marsh (WA Bar No. 45194)
Mohammad Hamoudi (WA Bar No. 48512, CA Bar No. 273104)
Pro Hac Vice
HERRMANN LAW GROUP
505 5th Avenue South, Suite 330
Seattle, WA 98104
(206) 625-9104

By: */s/ Thomas Patrick Routh*
        By Counsel

Thomas Patrick Routh
Nolan Law Group
20 N Clark St 30th Floor
Chicago, Illinois 60602-5094

(312) 630-4000

By: */s/ Floyd Wisner*
       By Counsel

Floyd A. Wisner
Alexandra Wisner
Wisner Law Firm
161 N. Clark Street Suite 1600
Chicago, Illinois 60601
(312) 216-5168

By: */s/ Sanjiv N. Singh*
       By Counsel

Sanjiv N. Singh
Sanjiv N. Singh, A Professional Law Corporation
1700 S. El Camino Real Suite 503
San Mateo, CA 94402
(650) 389-2255
[pro hac vice admission pending]

By: */s/ Michael B. Indrajana*
       By Counsel

Michael B. Indrajana
Indrajana Law Group, A Professional Law Corporation
1700 S. El Camino Real Suite 503
San Mateo, CA 94402
(650) 597-0928
[pro hac vice admission pending]

By: */s/ Vincent C. Mancini*
       By Counsel

Vincent C. Mancini
Reimer Dobrovolny & La Bardi PC
15 Spinning Wheel Road
Suite 310
Hinsdale, IL 60521
(630) 654-9547
[pro hac vice admission pending]