**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| IN RE: AIR CRASH INTO THE JAVA SEA ON JANUARY 9, 2021 | |
| This document relates to the following cases: | MDL No. 1:23-md-3072 |
| 1:23-cv-00470 (*Ridwan v. Boeing Co.*)<br>1:23-cv-00472 (*Ridwan v. Boeing Co.*)<br>1:23-cv-00473 (*Ponjian v. Boeing Co.*)<br>1:23-cv-00484 (*Wadu v. Boeing Co.*) | |

**BOEING'S CONSOLIDATED MEMORANDUM IN
<u>OPPOSITION TO PLAINTIFFS' MOTIONS TO REMAND</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 1

ARGUMENT ........................................................................................................................ 3

I.     Plaintiffs' arguments against diversity jurisdiction are foreclosed by the Supreme Court's decision in *Dart Cherokee* and cases applying it ................... 3

II.    The forum defendant rule does not apply here for multiple reasons. ................ 4

    A.    Plaintiffs waived the forum defendant rule ............................................ 5

    B.    The forum defendant rule does not apply because Boeing removed before the complaints were served ......................................................... 6

    C.    In any event, Boeing was not a forum defendant in Illinois because it had moved its headquarters to Virginia. ............................................... 6

III.   Removal was proper on the basis of admiralty jurisdiction ............................. 13

    A.    The locality test is satisfied ................................................................. 14

    B.    The connection test is satisfied. ........................................................... 17

CONCLUSION .................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

C**ASES**

*1075 Mkt. St. Owners' Ass'n v. U.S. Dep't of Health & Hum. Servs. through Becerra*,
859 F. App'x 90 (9th Cir. 2021) ...................................................................................12

*Almutairi v. Johns Hopkins Health Sys. Corp.*,
No. ELH-15-2864, 2016 WL 97835 (D. Md. Jan. 8, 2016).......................................5

*Am. Oil Co. v. McMullin*,
433 F.2d 1091 (10th Cir. 1970) ...................................................................................5

*Belmora LLC v. Bayer Consumer Care AG*,
987 F.3d 284 (4th Cir. 2021) , *cert. denied*, 142 S. Ct. 483 (2021).........................3

*Betzner v. Boeing Co.*,
910 F.3d 1010 (7th Cir. 2018) .....................................................................................4

*Boakye v. NCL (Bahamas) Ltd.*,
295 F. Supp. 3d 1342 (N.D. Ga. 2018) ......................................................................13

*Boschetto v. Hansing*,
539 F.3d 1011 (9th Cir. 2008) ...................................................................................12

*Branch Banking & Tr. Co. v. Okay*,
No. 1:16CV555(JCC/JFA), 2016 WL 4441997 (E.D. Va. Aug. 23, 2016) ..............5

*Campbell v. Hampton Roads Bankshares, Inc.*,
925 F. Supp. 2d 800 (E.D. Va. 2013) .........................................................................6

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*,
334 F.3d 390 (4th Cir. 2003) .....................................................................................12

*Central W. Va. Energy Co. v. Mountain State Carbon, LLC*,
636 F.3d 101 (4th Cir. 2011) .......................................................................................7

*Chang-Williams v. Dep't of the Navy*,
766 F. Supp. 2d 604 (D. Md. 2011)............................................................................19

*Councell v. Homer Laughlin China Co.*,
823 F. Supp. 2d 370 (N.D. W. Va. 2011) ...................................................................5

*Curry v. Boeing Co.*,
542 F. Supp. 3d 804 (N.D. Ill. 2021) ...................................................................13, 17

*Darrough v. LTI Trucking Servs., Inc.*,
No. 12-0024-DRH, 2012 WL 1149158 (S.D. Ill. Apr. 5, 2012)...............................10

## TABLE OF AUTHORITIES (continued)

**Page(s)**

*Dart Cherokee Basin Operating Co. v. Owens*,
    574 U.S. 81 (2014) .................................................................................1, 3, 4

*Donais v. Green Turtle Bay, Inc.*,
    No. 5:10-cv-167-TBR, 2012 WL 399160 (W.D. Ky. Feb. 7, 2012).......................14

*Encompass Ins. Co. v. Stone Mansion Rest. Inc.*,
    902 F.3d 147 (3d Cir. 2018)...........................................................................6

*Exec. Jet Aviation, Inc. v. City of Cleveland, Ohio*,
    409 U.S. 249 (1972).............................................................................13, 14, 18

*Gibbons v. Bristol-Meyers Squibb Co.*,
    919 F.3d 699 (2d Cir. 2019)...........................................................................6

*Hall v. Coca-Cola Co.*,
    No. 2:18cv244, 2018 WL 4928976 (E.D. Va. Oct. 11, 2018) .................................4

*Hammill v. Olympic Airways, S.A.*,
    398 F. Supp. 829 (D.D.C. 1975) ...............................................................18, 19

*Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*,
    213 F.3d 48 (2d Cir. 2000)............................................................................5

*Hertz Corp. v. Friend*,
    559 U.S. 77 (2010).........................................................................7, 8, 9, 10

*Holbein v. TAW Enters., Inc.*,
    983 F.3d 1049 (8th Cir. 2020) ......................................................................5

*Hoschar v. Appalachian Power Co.*,
    739 F.3d 163 (4th Cir. 2014) ....................................................................7, 10

*Howard v. Crystal Cruises, Inc.*,
    41 F.3d 527 (9th Cir. 1994) ........................................................................13

*In re Korean Air Lines Disaster of Sept. 1, 1983*,
    829 F.2d 1171 (D.C. Cir. 1987), *aff'd sub nom. Chan v. Korean Air Lines, Ltd.*,
    490 U.S. 122 (1989)....................................................................................3

*In re Lion Air Flight JT 610 Crash*,
    No. 18 C 07686, 2022 WL 17820965 (N.D. Ill. Dec. 20, 2022) .........................13

*In re Norfolk S. Ry. Co.*,
    756 F.3d 282 (4th Cir. 2014) ........................................................................5

## TABLE OF AUTHORITIES (continued)

**Page(s)**

*In re Shell Oil Co.*,
   932 F.2d 1518 (5th Cir. 1991) ................................................................5

*In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*,
   97 F.3d 1050 (8th Cir. 19fs96) .............................................................3

*Isla Nena Air Servs., Inc. v. Cessna Aircraft Co.*,
   380 F. Supp. 2d 74 (D.P.R. 2005), *aff'd on other grounds*, 449 F.3d 85
   (1st Cir. 2006) ...................................................................................18

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*,
   513 U.S. 527 (1995)...............................................................13, 14, 17

*Korea Exch. Bank, N.Y. Branch v. Trackwise Sales Corp.*,
   66 F.3d 46 (3d Cir. 1995)...................................................................5

*LaCourse v. PAE Worldwide Inc.*,
   980 F.3d 1350 (11th Cir. 2020) .........................................................13

*Lewis v. Timco, Inc.*,
   716 F.2d 1425 (5th Cir. 1983) ..........................................................15

*Lively v. Wild Oats Mkts., Inc.*,
   456 F.3d 933 (9th Cir. 2006) .............................................................5

*Lu Junhong v. Boeing Co.*,
   792 F.3d 805 (7th Cir. 2015) .......................................14, 15, 16, 17, 19

*Mancuso v. Kimex, Inc.*,
   484 F. Supp. 453 (S.D. Fla. 1980) ....................................................19

*McQueen v. Aramark Corp.*,
   No. 2:15-CV-492-DAK, 2016 WL 1261067 (D. Utah Mar. 30, 2016) ..................15

*Menowitz v. Brown*,
   991 F.2d 36 (2d Cir. 1993).................................................................3

*Miller v. United States*,
   725 F.2d 1311 (11th Cir. 1984) ....................................................14, 19

*Moores v. Greenberg*,
   834 F.2d 1105 (1st Cir. 1987).............................................................5

*Morris v. Nuzzo*,
   718 F.3d 660 (7th Cir. 2013) .............................................................5

## TABLE OF AUTHORITIES (continued)

**Page(s)**

*Mullinex v. John Crane, Inc.*,
No. 4:18-cv-33, 2020 WL 2025538 (E.D. Va. Apr. 27, 2020) ................................................17

*Offshore Logistics, Inc. v. Tallentire*,
477 U.S. 207 (1986) ................................................................................13, 14, 17, 18, 19

*Pacheco de Perez v. AT&T Co.*,
139 F.3d 1368 (11th Cir. 1998) ...........................................................................................5

*Pan-Alaska Fisheries, Inc. v. Martine Constr. & Design Co.*,
565 F.2d 1129 (9th Cir. 1977) ...........................................................................................15

*Pavlides v. Galveston Yacht Basin, Inc.*,
727 F.2d 330 (5th Cir. 1984) .............................................................................................15

*Plastic Moldings Corp. v. Park Sherman Co.*,
606 F.2d 117 (6th Cir. 1979) ...............................................................................................5

*Richard v. Tallant*,
No. 20-1752, 2022 WL 2526680 (4th Cir. July 7, 2022) ......................................................7

*Riverside Const. Co. v. Entergy Miss., Inc.*,
626 F. App'x 443 (5th Cir. 2015), *as revised* (Oct. 16, 2015) ...............................................19

*Roberts v. United States*,
498 F.2d 520 (9th Cir. 1974) .............................................................................................19

*Rowland v. Patterson*,
882 F.2d 97 (4th Cir. 1989) .................................................................................................7

*Sanchez v. Loffland Bros. Co.*,
626 F.2d 1228 (5th Cir. 1980) ...........................................................................................13

*Saratoga Fishing Co. v. J.M. Martinac & Co.*,
520 U.S. 875 (1997) ...........................................................................................................15

*Savage Servs. Corp. v. United States*,
522 F. Supp. 3d 1114 (S.D. Ala. 2021), *aff'd*, 25 F.4th 925 (11th Cir. 2022) .......................14

*Sayers v. Sears, Roebuck & Co.*,
732 F. Supp. 654 (W.D. Va. 1990) .......................................................................................7

*Scott v. Cricket Commc'ns, LLC*,
865 F.3d 189 (4th Cir. 2017) ...............................................................................................4

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*Sisson v. Ruby*,
    497 U.S. 358 (1990) ................................................................................................17

*Siswanto v. Airbus*,
    153 F. Supp. 3d 1024 (N.D. Ill. 2015) ..................................................................12

*Siswanto v. Airbus Ams., Inc.*,
    No. 15-cv-5486, 2016 WL 7178458 (N.D. Ill. Dec. 9, 2016)............................16, 19

*Spigner v. Apple Hospitality REIT, Inc.*,
    No. 3:21cv758 (DJM), 2022 WL 1451397 (E.D. Va. Mar. 1, 2022).......................6

*Stark v. Armstrong World Indus.*,
    21 F. App'x 371 (6th Cir. 2001) .............................................................................15

*Taghadomi v. United States*,
    401 F.3d 1080 (9th Cir. 2005) ................................................................................14

*Texas Brine Co. v. Am. Arb. Ass'n*,
    955 F.3d 482 (5th Cir. 2020) ....................................................................................6

*Williams v. United States*,
    711 F.2d 893 (9th Cir. 1983) ............................................................................14, 18

**STATUTES**

28 U.S.C. § 1332(c)(1)..................................................................................................7

28 U.S.C. § 1333(1) ...............................................................................................13, 19

28 U.S.C. § 1441(a) .....................................................................................................19

28 U.S.C. § 1441(b)(2) ...................................................................................1, 4, 6, 13

28 U.S.C. § 1446(a) ...................................................................................................4, 5

28 U.S.C. § 1447(c) ...................................................................................................5, 6

46 U.S.C. § 30301.......................................................................................................13, 14

**RULES**

Fed. R. Civ. P. 8(a) ........................................................................................................4

## INTRODUCTION

These four cases—part of the multidistrict litigation arising out of the Sriwijaya Air flight SJY182 accident off the coast of Indonesia—were properly removed to federal court on the basis of diversity jurisdiction and admiralty jurisdiction. It is indisputable that the parties are diverse, that more than $75,000 is at stake, and that the accident occurred in the Pacific Ocean. Nevertheless, Plaintiffs filed four essentially identical motions to remand in the Northern District of Illinois, and also filed a supplemental memorandum improperly seeking to raise new arguments. Jurisdiction is proper and remand should be denied, for the following reasons.

**First**, Plaintiffs dispute that Boeing's notice of removal provided sufficient *evidence* for diversity jurisdiction. Only a short and plain statement of the grounds for removal is required; evidence is not. *See Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 84 (2014). **Second**, the non-jurisdictional "forum defendant" limitation on removal of diversity cases (28 U.S.C. § 1441(b)(2)) does not apply for multiple reasons, starting with Plaintiffs' failure to raise that argument in their motions to remand. It also has no application because Boeing removed before being served, which is the trigger for applying the limitation. And Boeing was not a "forum defendant" in Illinois in any event, because it had moved its headquarters to Virginia before the cases were filed and removed. **Lastly**, no "forum defendant" rule applies to admiralty jurisdiction, and this Court properly has admiralty jurisdiction over this accident in the Pacific Ocean.

The Court should deny Plaintiffs' motions to remand.

## BACKGROUND

Preliminarily, Boeing notes that it responds herein to the arguments asserted by Plaintiffs in their original motions to remand filed in the Northern District of Illinois and in the supplemental memorandum filed in this Court. *See Ridwan v. Boeing Co.*, No. 1:23-cv-00470, Dkt. No. 15 (original motion to remand); *Ridwan v. Boeing Co.*, No. 1:23-cv-00472, Dkt. No. 14 (same);

1

*Ponjian v. Boeing Co.*, No. 1:23-cv-00473, Dkt. No. 14 (same); *Wadu v. Boeing Co.*, No. 1:23-cv-00484, Dkt. No. 14 (same); *In re Air Crash into the Java Sea on Jan. 9, 2021*, No. 1:23-md-3072, Dkt. No. 19 (supplemental memorandum). The four motions to remand filed by Plaintiffs are substantively identical and there are no individual differences between the cases that impact the jurisdictional analysis. Therefore, this opposition will cite only to the motion and pleadings in *Wadu*, which was the lowest numbered case in the Northern District of Illinois.

These lawsuits arise from the 2021 crash of Sriwijaya Air flight SJY182 into the Java Sea off the coast of Indonesia. Sriwijaya Air is an Indonesian air carrier. *E.g.*, *Wadu v. Boeing Co.*, No. 1:23−00484 (E.D. Va.), Dkt. No. 1-1, ("Compl.") ¶¶ 3, 8. The flight was a commercial, intra-Indonesia flight that departed from Jakarta and was bound for Pontianak. *Id.* ¶ 8. Jakarta is located on the Indonesian island of Java, while Pontianak is across the Java Sea on the island of Borneo. There is no bridge connecting Java to Borneo, so the only way to travel between the two islands is either by boat or airplane.

The aircraft crashed into the water several miles off the coast of Java. *Wadu*, Dkt. No. 1-2, KNKT Final Aircraft Accident Investigation Report ("KNKT Final Report") at 40. The 62 people on board, all citizens of Indonesia, died in the crash. *Id.* at 3.

Plaintiffs, as heirs and beneficiaries, bring wrongful death claims on their own behalf and survival actions on behalf of the estates of their decedents alleging strict liability and negligence. *E.g.*, Compl. ¶¶ 1, 8. They sued Boeing in August 2022 in the Circuit Court for Cook County. Before Boeing was served with the complaints, it removed the cases to the Northern District of Illinois. *Wadu*, Dkt. No. 11 at 4 (joint status report stating that Boeing had not been served). On October 7, 2022, Plaintiffs moved to remand. *E.g.*, *Wadu*, Dkt. No. 14, ("Mot.").

The JPML then transferred these cases to this Court for centralized pretrial proceedings along with 17 other actions arising from the crash of Sriwijaya Air flight SJY182. Dkt. No. 1. Pursuant to a Consent Motion, this Court allowed a supplemental memorandum limited to "any relevant differences between Seventh and Fourth Circuit law on the issues briefed in their original motions to remand." Dkt. No. 17, at 1. On questions of federal law, a transferee court applies the law of its own circuit.[1]

## ARGUMENT

I. **Plaintiffs' arguments against diversity jurisdiction are foreclosed by the Supreme Court's decision in *Dart Cherokee* and cases applying it.**

Plaintiffs do not dispute that the parties are diverse and that the amount in controversy exceeds $75,000. Boeing is a citizen of Virginia (where it is headquartered and has its principal place of business) and Delaware (where it is incorporated). Plaintiffs and decedents are all citizens and residents of Indonesia. Compl. ¶ 1. Although Plaintiffs incorrectly assert that Boeing is a citizen of Illinois, *see* Mot. at 10–11, it is undisputed that Boeing is not a citizen of Indonesia. Thus, there is complete diversity.

The only argument Plaintiffs advance against diversity jurisdiction is that Boeing failed to *prove* that its headquarters and principal place of business was in Arlington, Virginia. *See* Mot. at 9–11. Plaintiffs say that Boeing only cited its Form 10-Q Quarterly Report in its removal notices

---

[1] *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996); *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993); *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1175–76 (D.C. Cir. 1987), *aff'd sub nom. Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122 (1989); *see also Belmora LLC v. Bayer Consumer Care AG*, 987 F.3d 284, 293 (4th Cir. 2021) (applying transferee court's law to a transfer under § 1404(a)) ("[W]hen one district court transfers a case to another, the norm is that the transferee court applies its own Circuit's cases on the meaning of federal law.") (internal quotation marks and citations omitted)), *cert. denied*, 142 S. Ct. 483 (2021).

and, thus, did not satisfy "its burden of persuasion … that its principal place of business was in the State of Virginia." *Id.* at 11.

That argument is foreclosed by *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81 (2014). *Dart* construed the "short and plain statement" language of § 1446(a) and concluded that it incorporated the same "short and plain statement" rule that applies to complaints under Federal Rule of Civil Procedure 8(a). *Id.* at 87. Boeing had no obligation to submit evidence or *prove* diversity jurisdiction with the notice of removal. *Id.*; *Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 195 (4th Cir. 2017); *Hall v. Coca-Cola Co.*, No. 2:18cv244, 2018 WL 4928976, at *4 (E.D. Va. Oct. 11, 2018); *see also Betzner v. Boeing Co.*, 910 F.3d 1010, 1014 (7th Cir. 2018). Evidence is only required when a plaintiff (or the court) contests a defendant's allegations. *See Dart*, 574 U.S. at 89.

Boeing's notices of removal state that Boeing "is a Delaware corporation that has its headquarters and principal place of business in Arlington, Virginia." *E.g.*, *Wadu*, Dkt. No. 1 at 3–4. That more than suffices under *Dart Cherokee*, and since Plaintiffs do not actually dispute the existence of diverse citizenship, nothing more is required.

## II.     The forum defendant rule does not apply here for multiple reasons.

Despite this Court's order that the supplemental memorandum be limited to addressing differences between Fourth and Seventh Circuit law as relevant to the already-filed motions to remand, Plaintiffs used their supplemental memorandum to introduce a new argument: that the non-jurisdictional "forum defendant" limitation on removing diversity cases (28 U.S.C. § 1441(b)(2)) requires remand. That was *not* a basis for remand in Plaintiffs' original motions, and indeed was never mentioned. The rule is waivable, it was waived, and in any event, it does not apply.

### A.     Plaintiffs waived the forum defendant rule.

The "forum defendant" rule of 1441(b)(2) is a non-jurisdictional limitation on removal, and a plaintiff has only 30 days from the notice of removal to raise non-jurisdictional limitations on removal. Under 28 U.S.C. § 1447(c), "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)." Because Plaintiffs did not raise the argument within 30 days of Boeing's filing of its notices of removal, the argument is waived.

That the forum defendant rule is non-jurisdictional is well-established.[2] Although the Fourth Circuit has apparently not addressed this question specifically, it has held that "the statutory requirements for removal provided in 28 U.S.C. §§ 1441–1453"—which includes the forum defendant rule—are the "defect[s] other than lack of subject matter jurisdiction." *In re Norfolk S. Ry. Co.*, 756 F.3d 282, 292 (4th Cir. 2014). District courts within the Fourth Circuit too have agreed that the forum defendant rule is procedural, not jurisdictional. *Branch Banking & Tr. Co. v. Okay*, No. 1:16CV555(JCC/JFA), 2016 WL 4441997, at *3 n.2 (E.D. Va. Aug. 23, 2016); *Almutairi v. Johns Hopkins Health Sys. Corp.*, No. ELH-15-2864, 2016 WL 97835, at *6 (D. Md. Jan. 8, 2016) (collecting cases); *Councell v. Homer Laughlin China Co.*, 823 F. Supp. 2d 370, 379 (N.D. W. Va. 2011).

---

[2] All ten circuits to consider the question agree. *See Holbein v. TAW Enters., Inc.*, 983 F.3d 1049, 1053 (8th Cir. 2020); *Morris v. Nuzzo*, 718 F.3d 660, 665 (7th Cir. 2013); *Lively v. Wild Oats Mkts., Inc.*, 456 F.3d 933, 939 (9th Cir. 2006); *Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 50 n.2 (2d Cir. 2000); *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1372 n.4 (11th Cir. 1998); *Korea Exch. Bank, N.Y. Branch v. Trackwise Sales Corp.*, 66 F.3d 46, 50 (3d Cir. 1995); *In re Shell Oil Co.*, 932 F.2d 1518, 1521–23 (5th Cir. 1991); *Moores v. Greenberg*, 834 F.2d 1105, 1106 n.1 (1st Cir. 1987); *Plastic Moldings Corp. v. Park Sherman Co.*, 606 F.2d 117, 119 n.1 (6th Cir. 1979); *Am. Oil Co. v. McMullin*, 433 F.2d 1091, 1093–95 (10th Cir. 1970).

Under 28 U.S.C. § 1447(c), Plaintiffs had 30 days from the notice of removal to raise the forum defendant rule. They did not. It is waived.

### B.    The forum defendant rule does not apply because Boeing removed before the complaints were served.

The forum defendant rule only applies when a defendant has been properly served: "A civil action otherwise removable solely on the basis of … [diversity jurisdiction] may not be removed if any of the parties in interest *properly joined and served* as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2) (emphasis added). Here, Boeing was not served before these cases were removed.

Three circuits have squarely held that § 1441(b)(2) does not apply when removal occurs before proper service. *See Texas Brine Co. v. Am. Arb. Ass'n*, 955 F.3d 482, 485–87 (5th Cir. 2020); *Gibbons v. Bristol-Meyers Squibb Co.*, 919 F.3d 699, 704–07 (2d Cir. 2019); *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 151–54 (3d Cir. 2018). No circuit has held otherwise. The most recent, and most persuasive, authority in this District has concluded the same. *Spigner v. Apple Hospitality REIT, Inc.*, No. 3:21cv758 (DJM), 2022 WL 1451397, at *2–5 (E.D. Va. Mar. 1, 2022).[3] Accordingly, even if Plaintiffs had not waived the forum defendant rule, it would not apply here. Boeing removed before it was served and thus removal was proper.

### C.    In any event, Boeing was not a forum defendant in Illinois because it had moved its headquarters to Virginia.

Further, the forum defendant rule cannot apply because, at the relevant times, Boeing was not a citizen of Illinois. In May 2022, before these cases were filed and removed, Boeing announced the move of its corporate headquarters from Chicago, Illinois to Arlington, Virginia.

---

[3] *Spigner* rejected *Campbell v. Hampton Roads Bankshares, Inc.*, 925 F. Supp. 2d 800 (E.D. Va. 2013), in light of the more recent decisions by the Second, Third, and Fifth Circuits approving of pre-service removal. *See Spigner*, 2022 WL 1451397, at *3.

And as the evidence shows, contrary to Plaintiffs' allegations (*see* Supp. Mem. at 8), Boeing's principal place of business was not in Illinois, but rather Virginia, at the time of filing and removal.

As Plaintiffs concede, citizenship is assessed at the time the action is commenced. *Rowland v. Patterson*, 882 F.2d 97, 99 (4th Cir. 1989); Supp. Mem. at 8. In a removed case, this means courts look to whether diversity "existed both at the time the action was originally commenced in state court and at the time of filing the petition for removal." *Rowland*, 882 F.2d at 99; *see also Richard v. Tallant*, No. 20-1752, 2022 WL 2526680, at *2 n.* (4th Cir. July 7, 2022) (unpublished); *Sayers v. Sears, Roebuck & Co.*, 732 F. Supp. 654, 656 (W.D. Va. 1990). Corporations are citizens of the states where they are incorporated and where they have their principal place of business. 28 U.S.C. § 1332(c)(1). Boeing unquestionably is incorporated in Delaware. Compl. at 4; *Wadu*, Dkt. No. 1-1 ¶ 2. The only dispute is the location of Boeing's principal place of business.

For purposes of diversity jurisdiction, a corporation's principal place of business is "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities," which is "often metaphorically called … the corporation's 'nerve center.'" *Hertz Corp. v. Friend*, 559 U.S. 77, 80–81 (2010) (internal citation omitted); *see also Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 170–74 (4th Cir. 2014). As Plaintiffs concede, this is true "even if some of the officers are not located at that particular location." Supp. Mem. at 8 (citing *Central W. Va. Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101 (4th Cir. 2011)). This test is intended to be "straightforward," "simple," and "predictab[le]," which is valuable both "to corporations making business and investment decisions" and to "plaintiffs deciding whether to file suit in a state or federal court." *Hertz*, 559 U.S. at 94–95. Applying the test here, it is clear that Boeing's principal place of business at the time of filing and removal was Arlington, Virginia.

First, that is where Boeing's headquarters was located, as reflected in Boeing's contemporaneous public and corporate records. Declaration of Koji Torihara in Support of The Boeing Company's Oppositions to Plaintiffs' Motions to Remand ("Torihara Decl.") ¶¶ 4–10 (filed contemporaneously herewith). Boeing's filings with the SEC also identify Arlington, Virginia as the company's principal offices, *id.* ¶ 7, and its corporate bylaws identify the Arlington headquarters as the location of the "Corporation's executive offices" and direct that all notices from shareholders to the company be sent there. *Id.* ¶ 8. As the Supreme Court held in *Hertz*, the "'nerve center' will typically be found at a corporation's headquarters." 559 U.S. at 81.

Second, Arlington, Virginia is where Boeing's high-level officers actually directed, controlled, and coordinated Boeing's activities at the relevant time. *See* Torihara Decl. ¶¶ 11–15. All communications with and activities of Boeing's Board of Directors are coordinated by Boeing's Office of the Corporate Secretary in Arlington. *Id.* ¶ 15. Boeing's Board met in Arlington in October 2022, while it has not met in Illinois since 2019. *Id.* ¶ 11. Boeing's Executive Council, a group of high-ranking Boeing executives, met in Arlington in November 2022; it has not met in Illinois since 2020. *Id.* ¶ 12. And Boeing's Chief Executive Officer and Chief Financial Officer have been in Arlington for all of Boeing's quarterly earnings conferences since May 2022. *Id.* ¶ 13. Boeing's leadership with enterprise-wide authority also is and was at the time of filing and removal primarily based at Boeing's headquarters in Arlington. *Id.* ¶¶ 19–26.

As the Supreme Court recognized in *Hertz*, "in this era of telecommuting, some corporations may divide their command and coordinating functions among officers who work at several different locations." 559 U.S. at 95–96. That is true for Boeing, especially during and after the COVID-19 pandemic. Nonetheless, the single location with the most officers with

responsibility for Boeing's oversight and strategic decision-making at the time this case was filed and removed was Arlington, Virginia.

The primary office of Boeing's President and Chief Executive Officer (CEO), David Calhoun, was in Arlington at the relevant times. Torihara Decl. ¶ 19. Mr. Calhoun maintains his primary office in Arlington even though his primary residence is in New Hampshire and he works in multiple locations. *Id.* From Arlington, Mr. Calhoun oversees the company's three business units: Boeing Commercial Airplanes; Boeing Defense, Space & Security; and Boeing Global Services. *See id.* ¶¶ 16–19. The leaders of each of these business units "report to, are accountable to, and are directed by" him. *Id.* ¶ 17.

Arlington is also where five other corporate leaders with enterprise-wide responsibilities were based at the time these cases were filed and removed (and still are). This includes Boeing's Chief Communications Officer, Corporate Secretary, Chief Strategy Officer, Chief Sustainability Officer, and Executive Vice President of Government Operations. *Id.* ¶ 21. Boeing's Chief Financial Officer also regularly traveled to Arlington for work even though his primary residence was in Connecticut. *Id.* ¶ 20. These are the kinds of "top officers" that are relevant to the "nerve center" test. *Hertz*, 559 U.S. at 96.

By comparison with these seven senior officials, only six members of Boeing's Executive Council with enterprise-wide responsibilities during the time these suits were filed and removed were not based in Arlington, Virginia. Four members were based in Washington state, Florida, and Ontario. Torihara Decl. ¶ 23.a–d. And only two—the former Treasurer and former Chief Compliance Officer—had offices in Chicago, Illinois. *Id.* ¶ 25.

Travel records further reinforce that Boeing's nerve center was in Arlington, Virginia, not Illinois. In all, those members of the Executive Council with enterprise-wide responsibilities

whose primary residences were in neither Illinois or Virginia, including Mr. Calhoun and Mr. West, made a total of 16 business trips to Illinois and 48 business trips to Virginia. *Id.* ¶¶ 19, 20, 21.e., 23.

In short, this is not a case of attempted jurisdictional manipulation, such as where the company's supposed headquarters is "nothing more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat." *Hertz*, 559 U.S. at 97. Arlington was at the time of filing and removal, and still is, "the place of actual direction, control, and coordination" of Boeing. *Id.*; *Hoschar*, 739 F.3d at 172.

None of the documents cited in Plaintiffs' supplemental memorandum change this conclusion. Plaintiffs cite a filing with the Commonwealth of Virginia's State Corporation Commission that listed a principal office address in Delaware and addresses for certain executives and directors in Illinois. Supp. Mem. at 9. That information was outdated and erroneous at the time it was filed, and has since been updated. The current filing correctly reflects that Boeing's corporate headquarters is located in Arlington. Torihara Decl. ¶ 9, Ex. A. An erroneous government form does not overcome "unchallenged affidavits" showing that the corporate officers had their offices in another state and that "corporate activities [we]re directed from that office." *Darrough v. LTI Trucking Servs., Inc.*, No. 12-0024-DRH, 2012 WL 1149158, at *2 (S.D. Ill. Apr. 5, 2012).

Further, Plaintiffs assert that "Boeing's CEO was announcing corporate decisions and policy from Chicago throughout 2022 as late as January 25, 2023," because three news releases regarding company-wide emails sent by Mr. Calhoun were labeled as being issued from Chicago. *See* Supp. Mem. at 9. The designation of a location on a press release is hardly competent evidence as to the location of corporate decision-making. Furthermore, contrary to Plaintiffs' assertions,

Mr. Calhoun was in the Arlington area when these releases were issued. Indeed, on the day of each release, Mr. Calhoun gave an interview to CNBC in Washington D.C. discussing the quarterly earnings. Declaration of Mack H. Shultz, Jr. in Support of The Boeing Company's Oppositions to Plaintiffs' Motions to Remand (filed contemporaneously herewith) ("Shultz Decl.") ¶¶ 26–28, Exs. AA–AC. Boeing also issued news releases the same day that discussed the quarterly earnings in detail; all of those news releases were designated as issued from Arlington. *Id.* ¶¶ 30–32, Exs. AD–AF. Finally, Boeing's website contains 228 press releases from after the May 5, 2022, announcement of the move of the corporate headquarters to Virginia through July 11, 2023. *Id.* ¶ 29. Only six of these news releases were designated as coming from Chicago (including the three cited by Plaintiffs). By comparison, 55 were issued from Arlington, with the remainder coming from around the world. *Id.* While Boeing does not believe the locations listed in these news releases are relevant to this inquiry, to the extent they are, they further establish that Boeing's principal place of business is in Arlington, not in Illinois.

Plaintiffs also cite various court filings that erroneously listed Illinois as Boeing's principal place of business after its headquarters moved to Virginia. *See* Supp. Mem. at 9. As Boeing informed Plaintiffs before their supplemental memorandum was filed, these filings were erroneous at the time and have since been corrected where appropriate. Declaration of Erin E. Williams in Support of The Boeing Company's Opposition to Plaintiffs' Motion to Remand ("Williams Decl.") ¶¶ 2–3, Ex. A; Declaration of Lucia V. Pazos in Support of The Boeing Company's Opposition to Plaintiffs' Motion to Remand ("Pazos Decl.") ¶¶ 2–7, Exs. A–I. In none of those cases did Boeing gain any advantage from the mistaken assertion that its principal place of business was in Chicago. Williams Decl. ¶ 4; Pazos Decl. ¶ 8. Furthermore, Boeing has correctly asserted its principal place of business was in Virginia in many more cases following the announcement of the headquarters

11

move. Shultz Decl. ¶¶ 2–25, Exs. A–Z (cataloguing filings that correctly identify Boeing's headquarters in Virginia). For example, in opposing remand in *Ballesteros v. Boeing Co.*, No. 2:22-cv-00393-TSZ (W.D. Wa. May 16, 2022), Dkt. No. 16, 11 days after the announcement, Boeing described the move and its import as follows:

> On May 5, 2022, Boeing announced that it will be moving its corporate headquarters to Arlington, Virginia. News outlets have universally and accurately reported that Boeing is moving its headquarters from Chicago to Arlington. Once this transition is complete, a substantial majority of Boeing's executive council members who hold enterprise-wide decision-making authority will either retain or establish offices in Arlington, Virginia.

*Id.* at 10 (internal citations omitted) (emphasis in original); *see* Shultz Decl. Ex. A (copy of brief). The handful of mistaken pleadings identified by Plaintiffs do nothing to undermine the *fact*, as reflected in many more contemporaneous filings, that Boeing's headquarters and principal place of business was and is in Arlington.

Thus, even if the forum defendant rule were not waived and unavailable because removal preceded service, it still would not apply because Boeing's headquarters and principal place of business at the time of filing and removal was not in Illinois. This Court can and should reach this conclusion without ordering the jurisdictional discovery Plaintiffs have requested regarding the location of Boeing's headquarters. That request does not clear the "high hurdle" necessary to justify it. *See Siswanto v. Airbus*, 153 F. Supp. 3d 1024, 1032 (N.D. Ill. 2015). Speculation, bare allegations, and conclusory assertions are insufficient to justify jurisdictional discovery. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402–03 (4th Cir. 2003); *see also 1075 Mkt. St. Owners' Ass'n v. U.S. Dep't of Health & Hum. Servs. through Becerra*, 859 F. App'x 90, 92 (9th Cir. 2021) ("Jurisdictional discovery is inappropriate 'on little more than a hunch that it might yield jurisdictionally relevant facts.'" (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008))). Plaintiffs assert that they need discovery in order to "test[] the reliability and

veracity of Boeing's position," Supp. Mem. at 9, but there is no real dispute of material fact with respect to the location of Boeing's headquarters and principal place of business.

## III.   Removal was proper on the basis of admiralty jurisdiction.

Removal was also independently proper based on admiralty jurisdiction.[4] Admiralty jurisdiction exists if (1) the alleged tort occurred on navigable water (the locality test) and (2) the activity in question bears a substantial relationship to traditional maritime activity (the connection test). *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995); 28 U.S.C. § 1333(1). This accident, in which the airplane crashed into the ocean several miles off the coast, satisfies both tests.[5]

---

[4] Even if this Court concludes that the forum defendant rule bars removal based on diversity jurisdiction, that limitation would not apply to removal based on admiralty jurisdiction. That is because the forum defendant rule bars removal only if it is based "solely" on diversity, 28 U.S.C. § 1441(b)(2); *see Curry v. Boeing Co.*, 542 F. Supp. 3d 804, 819–20 (N.D. Ill. 2021), as Plaintiff concedes, Mot. at 11 (citing *Boakye v. NCL (Bahamas) Ltd.*, 295 F. Supp. 3d 1342, 1346 (N.D. Ga. 2018)).

[5] The Court may also have admiralty jurisdiction for another reason. Plaintiffs' complaints imply that U.S. law applies to their wrongful death and survival claims. Although Boeing asserts that Indonesian law likely controls some or all legal issues in the case, *see* Dkt. No. 12 (Brief in Support of Boeing's Motion to Dismiss for *Forum Non Conveniens*), at 11, if U.S. law were to apply, Plaintiffs' claims would be governed solely by the Death on the High Seas Act (DOHSA), which grants federal courts admiralty jurisdiction and preempts state law claims. *See* 46 U.S.C. § 30301, *et seq.*; *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 218–19, 232 (1986) (holding that "admiralty jurisdiction is expressly provided under DOHSA" and that DOHSA preempts state law); *Exec. Jet Aviation, Inc. v. City of Cleveland, Ohio*, 409 U.S. 249, 263–64 & n.13 (1972) (noting that "it may be considered as settled" that DOHSA "gives the federal admiralty courts jurisdiction of" wrongful-death actions "arising out of aircraft crashes into the high seas beyond one marine league from shore"); *LaCourse v. PAE Worldwide Inc.*, 980 F.3d 1350, 1358 (11th Cir. 2020) (holding that DOHSA "preempts all other wrongful-death claims under state or general maritime law"); *In re Lion Air Flight JT 610 Crash*, No. 18 C 07686, 2022 WL 17820965, at *3– 7 (N.D. Ill. Dec. 20, 2022). Courts have held that, for purposes of DOHSA, the "high seas" includes the territorial waters of a foreign country. *Howard v. Crystal Cruises, Inc.*, 41 F.3d 527, 529–30 (9th Cir. 1994) (holding that DOHSA applies to death caused by injury on Mexico's territorial waters and collecting cases); *Sanchez v. Loffland Bros. Co.*, 626 F.2d 1228, 1229–30 & n.4 (5th Cir. 1980) (per curiam) (holding that DOHSA applies to death on Venezuelan lake and collecting cases). In *Executive Jet*, the Supreme Court noted that the test it laid out for admiralty jurisdiction did not apply if an act of Congress specifically granted federal courts admiralty jurisdiction. *See*

## A.     The locality test is satisfied.

The locality test is satisfied if the tort occurred on navigable water. *Grubart*, 513 U.S. at 534. These four cases meet the test for two *independent* reasons: (1) the injuries occurred with the crash into the Java Sea, and (2) part of the alleged "wrong" occurred over navigable waters.

**Crash on navigable waters.** Plaintiffs' injuries occurred, and the alleged tort was completed, when the aircraft crashed into navigable waters. It is irrelevant that some tortious conduct may have occurred on land, as Plaintiffs allege (Mot. at 5–7). *See, e.g., Taghadomi v. United States*, 401 F.3d 1080, 1084 (9th Cir. 2005) (admiralty jurisdiction extends over claims arising from Coast Guard's activity on land when injury occurred on water); *Miller v. United States*, 725 F.2d 1311, 1315 (11th Cir. 1984) (admiralty jurisdiction exists when an airplane crashed into waters more than one marine league from the shores of the United States even though the alleged negligence occurred on land); *Williams v. United States*, 711 F.2d 893, 896 (9th Cir. 1983) (admiralty jurisdiction exists over claim that FAA's negligence on land caused accident in Pacific Ocean); *Savage Servs. Corp. v. United States*, 522 F. Supp. 3d 1114, 1127 (S.D. Ala. 2021) (admiralty jurisdiction exists over claims relating in part to alleged negligence of United States Army Corp of Engineers that occurred on land when oil spill occurred in a lock), *aff'd*, 25 F.4th 925 (11th Cir. 2022); *Donais v. Green Turtle Bay, Inc.*, No. 5:10-cv-167-TBR, 2012 WL 399160, at *4 (W.D. Ky. Feb. 7, 2012) (admiralty jurisdiction exists over claims relating in part to alleged negligence of boat repair workers when boat explosion occurred on water). There is no requirement that "the whole tort … occur on the water," *Lu Junhong v. Boeing Co.*, 792 F.3d 805, 816 (7th Cir.

---

*Exec. Jet Aviation*, 409 U.S. at 263–64. Courts have subsequently held that DOHSA is such an act. *See, e.g.*, *Offshore Logistics*, 477 U.S. at 218–19.

2015) (accident landing in San Francisco), and there is no serious question that Plaintiffs' injuries were sustained when the airplane hit the water.

**Alleged wrong on navigable waters.** The locality test is also met here because the alleged wrong occurred, at least in part, over navigable waters. *See, e.g.*, *Lu Junhong*, 792 F.3d at 814–16 (admiralty jurisdiction proper because plaintiffs alleged autothrottle problems that occurred over San Francisco Bay). Indeed, "the locality test can be met if either the tortious conduct begins on land but culminates with an injury on navigable waters or the tortious conduct begins on a vessel on navigable waters but culminates with an injury on the land." *McQueen v. Aramark Corp.*, No. 2:15-CV-492-DAK, 2016 WL 1261067, at *4 (D. Utah Mar. 30, 2016). Here, key events in the chain of causation occurred while the aircraft was over navigable water, and therefore the "wrongful conduct," if any, occurred at least in part over navigable water.

Plaintiffs attempt to narrowly frame the wrongful conduct as stemming from the design, manufacture, and sale of the aircraft's autothrottle and accompanying manuals on land. Mot. at 6–7. But courts have repeatedly recognized that product liability claims based on the onshore design and manufacture of products that cause injury on or over navigable water fall within admiralty jurisdiction. *See, e.g.*, *Saratoga Fishing Co. v. J.M. Martinac & Co.*, 520 U.S. 875 (1997); *Stark v. Armstrong World Indus.*, 21 F. App'x 371 (6th Cir. 2001); *Pavlides v. Galveston Yacht Basin, Inc.*, 727 F.2d 330 (5th Cir. 1984); *Lewis v. Timco, Inc.*, 716 F.2d 1425, 1426 (5th Cir. 1983); *Pan-Alaska Fisheries, Inc. v. Martine Constr. & Design Co.*, 565 F.2d 1129 (9th Cir. 1977).

Plaintiffs also assert that an autothrottle failure first occurred while the aircraft was over land. *See* Mot. at 7. But Plaintiffs also allege that it persisted over water and caused the accident. That suffices for admiralty jurisdiction.

According to the final report, the airplane's thrust levels started becoming asymmetric at 07:38:40 UTC. KNKT Final Report at 33. By 07:39:48 UTC, while the aircraft was more than 10,000 feet over the Java Sea, it began turning left as the thrust asymmetry increased. *See id.* at 34, 40. As can be seen on the following diagram, that unintended turn to the left (followed by the sharp right turn and the crash) began while the aircraft was over water:



*Id.* at 40, 124 (circle added to show unintended left turn and resulting loss of control). The aircraft crashed into the Java Sea less than a minute later. *See id.* at 3, 34, 40. Much of this sequence, including the unintended turn to the left and the failure of the pilots to recover the aircraft, occurred over the Java Sea. This alone is enough to satisfy the locality test. *See, e.g.*, *Lu Junhong*, 792 F.3d at 814, 816; *Siswanto v. Airbus Ams., Inc.*, No. 15-cv-5486, 2016 WL 7178458, at *4–5 (N.D. Ill. Dec. 9, 2016).

Boeing's jurisdictional allegations, backed by the investigation report, "control unless it is legally impossible for them to be true (or to have the asserted consequences)." *Lu Junhong*, 792 F.3d at 815. The locality test is therefore independently satisfied because the alleged wrong occurred at least in part over navigable water.

### B.     The connection test is satisfied.

The connection test has two components: (1) whether the incident giving rise to the suit had a "potentially disruptive impact on maritime commerce," and (2) whether "'the general character' of the 'activity giving rise to the incident'" has a "substantial relationship to traditional maritime activity." *Grubart*, 513 U.S. at 534 (quoting *Sisson v. Ruby*, 497 U.S. 358, 364–65, 364 n.2 (1990)). Both elements are satisfied in these cases.

**Disruptive impact.** Even a possibility that an incident could injure a crewmember or passenger is a potentially disruptive impact on maritime commerce sufficient to satisfy the first component of the test. *See, e.g.*, *Mullinex v. John Crane, Inc.*, No. 4:18-cv-33, 2020 WL 2025538, at *2 (E.D. Va. Apr. 27, 2020) (exposure to asbestos on Navy ships); *Curry*, 542 F. Supp. 3d at 814 ("serious questions about aircraft safety"). This case involves the death of all passengers and crew on a commercial flight between islands, and Plaintiffs do not seriously contest that this element is met.

**Substantial relationship.** Plaintiffs argue instead that Sriwijaya flight SJY182 did not bear a significant relationship to traditional maritime activity. *See* Mot. at 7–9. In a case neither cited nor distinguished by Plaintiffs, the Supreme Court made clear that flights bear a significant relationship to traditional maritime activity if, prior to the advent of air travel, the activity would have been performed by boat. *Offshore Logistics*, 477 U.S. at 218–19. *Offshore Logistics* arose from a helicopter flight ferrying workers from an oil rig to the shore, a flight that the Supreme Court found bore a substantial relationship to traditional maritime activity:

17

> [A]dmiralty jurisdiction is appropriately invoked here under traditional principles because the accident occurred on the high seas and in furtherance of an activity bearing a significant relationship to a traditional maritime activity. Although the decedents were killed while riding in a helicopter and not a more traditional maritime conveyance, that helicopter was engaged in a function traditionally performed by waterborne vessels: the ferrying of passengers from an "island," albeit an artificial one, to the shore.

*Id.* (internal citations omitted).

Since the Supreme Court's decision in *Offshore Logistics*, "virtually every court considering the issue has found that aircraft crashes during overseas or inter-island flights involve a traditional maritime activity." *Isla Nena Air Servs., Inc. v. Cessna Aircraft Co.*, 380 F. Supp. 2d 74, 79–80 (D.P.R. 2005) (collecting cases), *aff'd on other grounds*, 449 F.3d 85 (1st Cir. 2006). Here, flight SJY182 was ferrying passengers and cargo from one Indonesian island to another and thus bears a substantial relationship to traditional maritime activity.

Plaintiffs also argue that flight SJY182 is not related to maritime activity because it was a domestic flight, because it was not transoceanic, because it was intended to be relatively short, and because it crashed in Indonesian territorial waters. *See* Mot. at 7–9. These arguments are all wrong. First, numerous courts have found that domestic flights, such as those involving islands, satisfy the connection test. *See, e.g.*, *Williams*, 711 F.2d at 894, 896 (flight from California to Hawaii); *Isla Nena Air Servs.*, 380 F. Supp. 2d at 76, 81 (flight from Puerto Rico to another nearby island); *Hammill v. Olympic Airways, S.A.*, 398 F. Supp. 829, 834 (D.D.C. 1975) (flight from Corfu to Athens). Indeed, *Offshore Logistics* was a flight to an offshore oil rig, which is an "artificial" island. 477 U.S. at 219. Although Plaintiffs seek to support their argument with reference to the Supreme Court's ruling in *Executive Jet*, Mot. at 7–9, that reliance is misplaced. The *Executive Jet* Court determined there was no admiralty jurisdiction not because the flight was domestic, but because, before air travel, the planned journey from Cleveland to Maine would have been "almost entirely over land." 409 U.S. at 272. The same is not true, however, of travel within Indonesia, a

collection of islands. Second, flight SJY182 was transoceanic as it was intended to cross the Java Sea, a part of the Pacific Ocean. *See, e.g.*, *Siswanto*, 2016 WL 7178458, at *1, 4 (crash in the Java Sea met substantial relationship test); *Offshore Logistics*, 477 U.S. at 219 (flight over the Gulf of Mexico, which is part of the Atlantic Ocean). Third, short flights fall within admiralty jurisdiction as long as they are a substitute for a function historically served by boats. *E.g.*, *Miller*, 725 F.2d at 1315 (admiralty jurisdiction over flight between Bahamas and Florida, which are 85 miles apart). If a flight from an oil rig in the Gulf of Mexico to Louisiana bears a substantial relationship to traditional maritime activity, so too does a flight between Indonesian islands. Fourth and finally, Plaintiffs cite no case to show why it matters that the crash occurred in Indonesian territorial waters, and numerous courts have reached the opposite conclusion in similar circumstances. *Roberts v. United States*, 498 F.2d 520, 524 (9th Cir. 1974) (crash in Japanese waters); *Mancuso v. Kimex, Inc.*, 484 F. Supp. 453, 454–55 (S.D. Fla. 1980) (crash in Jamaican waters); *Hammill*, 398 F. Supp. at 834 (crash in Greek waters). The connection test is satisfied here.

Because both the locality and connection tests are satisfied, this Court has admiralty jurisdiction over this action. Removal was therefore proper on that basis alone, as the Court has original jurisdiction over this action. 28 U.S.C. § 1441(a) ("[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed.").[6]

---

[6] Unlike other plaintiffs involved in litigation arising from the Sriwijaya accident, Plaintiffs did not raise the argument that the savings-to-suitors clause, 28 U.S.C. § 1333(1), bars removal. Indeed, Plaintiffs incorporated arguments related to admiralty jurisdiction from other plaintiffs' motions to remand, *see, e.g., Wadu*, No. 1:22−04896 (N.D. Ill.), Dkt. 14 at 3 n.1, but specifically declined to incorporate any argument related to the savings-to-suitors clause, *compare Wadu*, No. 1:22−04896 (N.D. Ill.), Dkt. 14, *with Riyanto v. Boeing Co.*, No. 21-cv-01475 (N.D. Ill.), Dkt. 15. That argument is therefore waived, *see Lu Junhong*, 792 F.3d at 818; *Riverside Const. Co. v. Entergy Miss., Inc.*, 626 F. App'x 443, 447 (5th Cir. 2015), *as revised* (Oct. 16, 2015), and cannot be raised for the first time in a reply brief, *Chang-Williams v. Dep't of the Navy*, 766 F. Supp. 2d 604, 620 (D. Md. 2011). In any event, for the reasons discussed in Boeing's responses to the

## CONCLUSION

Plaintiffs' motions to remand should be denied. This Court has both diversity and admiralty jurisdiction. The forum defendant rule does not apply for three independent reasons: (1) Plaintiffs waived it, (2) Boeing was not served prior to removing, and (3) Boeing was not a citizen of Illinois at the relevant time. Moreover, even if the rule did apply to bar removal on the basis of diversity jurisdiction, admiralty jurisdiction independently supports removal. Accordingly, removal is proper here.

Dated:  July 21, 2023

By: /s/ Benjamin L. Hatch
Benjamin L. Hatch, VA Bar No. 70116
BHatch@mcguirewoods.com
McGuireWoods LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, VA 23510-1655
Telephone:    +1.757.640.3700
Facsimile:     +1.757.640.3947

Mack H. Shultz (admitted *pro hac vice*)
MShultz@perkinscoie.com
Perkins Coie LLP
1201 3rd Avenue, Ste 4900
Seattle, WA 98101
Telephone:    +1.206.359.8000
Facsimile:     +1.206.359.9000

*Attorneys for Defendant The Boeing Company*

---

Virginia Plaintiffs' motions to remand in the *Kastenbaum* cases, the savings-to-suitors clause does not bar removal here. *See, e.g., Kastenbaum v. Boeing Co.*, No. 1:23-cv-00044 (E.D. Va.), Dkt. 22 at 15–19.

**CERTIFICATE OF SERVICE**

I, Benjamin L. Hatch, hereby certify that on July 21, 2023, I filed the foregoing ***BOEING'S***

***MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTIONS TO REMAND*** with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to the

attorneys of record.

/s/ *Benjamin L. Hatch*
Benjamin L. Hatch
McGuireWoods LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, VA 23510-1655
Telephone:     +1.757.640.3700
Facsimile:     +1.757.640.3947
BHatch@mcguirewoods.com