**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

IN RE: AIR CRASH INTO THE JAVA SEA
ON JANUARY 9, 2021

This document relates to ONLY the following
case:

1:23-cv-00474 (*Aprillia v. Boeing Co.*)

MDL No. 1:23-md-3072

**BOEING'S MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION TO REMAND**

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................. 1

BACKGROUND .................................................................................................. 2

ARGUMENT ....................................................................................................... 3

    I.    Plaintiffs' motion to remand should be denied as untimely. .................................. 3

    II.    Plaintiffs' motion to remand should be denied because removal was proper on the basis of both diversity jurisdiction and admiralty jurisdiction.................... 6

        A.    Removal was proper on the basis of diversity jurisdiction. ........................ 6

            1.    *Riyanto* has no preclusive effect. ..................................................... 6

            2.    The forum defendant rule does not apply because Boeing removed before the complaint was served...................................... 8

            3.    In any event, Boeing is not a forum defendant in Illinois because it had moved its corporate headquarters to Virginia. ...................................................................................... 8

        B.    Removal was proper on the basis of admiralty jurisdiction...................... 14

            1.    The locality test is satisfied.......................................................... 15

            2.    The connection test also is satisfied.............................................. 19

            3.    Plaintiffs' arguments based on the savings-to-suitors clause have been waived and, in any event, the clause does not bar removal. ...................................................................................... 20

CONCLUSION.................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*1075 Mkt. St. Owners' Ass'n v. U.S. Dep't of Health & Hum. Servs. through Becerra*,
    859 F. App'x 90 (9th Cir. 2021) ......................................................................................14

*A.E.A. ex rel. Angelopoulos v. Volvo Penta of the Ams., LLC*,
    77 F. Supp. 3d 481 (E.D. Va. 2015) .................................................................................21

*Almutairi v. Johns Hopkins Health Sys. Corp.*,
    No. ELH-15-2864, 2016 WL 97835 (D. Md. Jan. 8, 2016) ...............................................5

*Am. Oil Co. v. McMullin*,
    433 F.2d 1091 (10th Cir. 1970) .........................................................................................4

*B & B Hardware, Inc. v. Hargis Indus., Inc.*,
    575 U.S. 138 (2015) ...........................................................................................................7

*Belmora LLC v. Bayer Consumer Care AG*,
    987 F.3d 284 (4th Cir. 2021), *cert. denied*, 142 S. Ct. 483 (2021) ..................................3

*Boakye v. NCL (Bahamas) Ltd.*,
    295 F. Supp. 3d 1342 (N.D. Ga. 2018) ............................................................................15

*Boschetto v. Hansing*,
    539 F.3d 1011 (9th Cir. 2008) .........................................................................................14

*Branch Banking & Tr. Co. v. Okay*,
    No. 1:16CV555(JCC/JFA), 2016 WL 4441997 (E.D. Va. Aug. 23, 2016) ........................5

*Brown v. Porter*,
    149 F. Supp. 3d 963 (N.D. Ill. 2016) ...............................................................................22

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*,
    334 F.3d 390 (4th Cir. 2003) ...........................................................................................14

*Central W. Va. Energy Co. v. Mountain State Carbon, LLC*,
    636 F.3d 101 (4th Cir. 2011) .............................................................................................9

*Councell v. Homer Laughlin China Co.*,
    823 F. Supp. 2d 370 (N.D. W. Va. 2011) ...........................................................................5

*Curry v. Boeing Co.*,
    542 F. Supp. 3d 804 (N.D. Ill. 2021) ................................................................15, 19, 22, 23

## TABLE OF AUTHORITIES (continued)

**Page(s)**

*Darrough v. LTI Trucking Servs., Inc.*,
No. 12-0024-DRH, 2012 WL 1149158 (S.D. Ill. Apr. 5, 2012)................................12

*Donais v. Green Turtle Bay, Inc.*,
No. 5:10-CV-167-TBR, 2012 WL 399160 (W.D. Ky. Feb. 7, 2012).....................16

*Ellenburg v. Spartan Motors Chassis, Inc.*,
519 F.3d 192 (4th Cir. 2008) ..................................................................................3

*Encompass Ins. Co. v. Stone Mansion Rest. Inc.*,
902 F.3d 147 (3d Cir. 2018)....................................................................................8

*Exec. Jet Aviation, Inc. v. City of Cleveland, Ohio*,
409 U.S. 249 (1972)................................................................................................15

*Gibbons v. Bristol-Meyers Squibb Co.*,
919 F.3d 699 (2d Cir. 2019)....................................................................................8

*Hammill v. Olympic Airways, S.A.*,
398 F. Supp. 829 (D.D.C. 1975) ............................................................................20

*Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*,
213 F.3d 48 (2d Cir. 2000)......................................................................................4

*Hertz Corp. v. Friend*,
559 U.S. 77 (2010)........................................................................9, 10, 11, 12

*Holbein v. TAW Enters., Inc.*,
983 F.3d 1049 (8th Cir. 2020) ................................................................................4

*Hoschar v. Appalachian Power Co.*,
739 F.3d 163 (4th Cir. 2014) ............................................................................9, 12

*Howard v. Crystal Cruises, Inc.*,
41 F.3d 527 (9th Cir. 1994) ....................................................................................15

*In re Air Crash into the Java Sea on Jan. 9, 2021*,
No. MDL 3072, 2023 WL 2876934 (U.S. Jud. Pan. Mult. Lit. Apr. 7, 2023).........7

*In re Korean Air Lines Disaster of Sept. 1, 1983*,
829 F.2d 1171 (D.C. Cir. 1987), *aff'd sub nom. Chan v. Korean Air Lines, Ltd.*,
490 U.S. 122 (1989)................................................................................................3

*In re Lion Air Flight JT 610 Crash*,
No. 18 C 07686, 2022 WL 17820965 (N.D. Ill. Dec. 20, 2022) ...........................15

iii

## TABLE OF AUTHORITIES (continued)

**Page(s)**

*In re Microsoft Corp. Antitrust Litig.*,
   355 F.3d 322 (4th Cir. 2004) .................................................................................7

*In re Norfolk S. Ry. Co.*,
   756 F.3d 282 (4th Cir. 2014) ..............................................................................3, 5

*In re Shell Oil Co.*,
   932 F.2d 1518 (5th Cir. 1991) ...............................................................................4

*In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*,
   97 F.3d 1050 (8th Cir. 1996) .................................................................................3

*Isla Nena Air Servs., Inc. v. Cessna Aircraft Co.*,
   380 F. Supp. 2d 74 (D.P.R. 2005), *aff'd on other grounds*, 449 F.3d 85
   (1st Cir. 2006) ......................................................................................................20

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*,
   513 U.S. 527 (1995)........................................................................................15, 19

*Korea Exch. Bank, N.Y. Branch v. Trackwise Sales Corp.*,
   66 F.3d 46 (3d Cir. 1995)........................................................................................4

*LaCourse v. PAE Worldwide Inc.*,
   980 F.3d 1350 (11th Cir. 2020) ...........................................................................15

*Lewis v. Lewis & Clark Marine, Inc.*,
   531 U.S. 438 (2001)...............................................................................................21

*Lewis v. Timco, Inc.*,
   716 F.2d 1425 (5th Cir. 1983) .............................................................................17

*Lively v. Wild Oats Mkts., Inc.*,
   456 F.3d 933 (9th Cir. 2006) .................................................................................4

*Lu Junhong v. Boeing Co.*,
   792 F.3d 805 (7th Cir. 2015) ...........................................................16, 18, 21, 23

*Mayor & City Council of Baltimore v. BP P.L.C.*,
   31 F.4th 178 (4th Cir. 2022) ................................................................................22

*McQueen v. Aramark Corp.*,
   No. 2:15-CV-492-DAK, 2016 WL 1261067 (D. Utah Mar. 30, 2016) ...................17

*Menowitz v. Brown*,
   991 F.2d 36 (2d Cir. 1993)......................................................................................3

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*Miller v. United States*,
    725 F.2d 1311 (11th Cir. 1984) ............................................................16

*Moores v. Greenberg*,
    834 F.2d 1105 (1st Cir. 1987) ...............................................................4

*Morris v. Nuzzo*,
    718 F.3d 660 (7th Cir. 2013) .................................................................4

*Mullinex v. John Crane, Inc.*,
    No. 4:18-cv-33, 2020 WL 2025538 (E.D. Va. Apr. 27, 2020) ...............19

*Offshore Logistics, Inc. v. Tallentire*,
    477 U.S. 207 (1986)...............................................................15, 19, 20

*Pacheco de Perez v. AT&T Co.*,
    139 F.3d 1368 (11th Cir. 1998) ..............................................................4

*Pan-Alaska Fisheries, Inc. v. Martine Constr. & Design Co.*,
    565 F.2d 1129 (9th Cir. 1977) ..............................................................17

*Pavlides v. Galveston Yacht Basin, Inc.*,
    727 F.2d 330 (5th Cir. 1984) ................................................................17

*Plastic Moldings Corp. v. Park Sherman Co.*,
    606 F.2d 117 (6th Cir. 1979) .................................................................4

*Richard v. Tallant*,
    No. 20-1752, 2022 WL 2526680 (4th Cir. July 7, 2022)....................7, 9

*Riverside Const. Co. v. Entergy Miss., Inc.*,
    626 F. App'x 443 (5th Cir. 2015), *as revised* (Oct. 16, 2015)...............21

*Riyanto v. Boeing Co.*,
    No. 21-CV-1475, 2022 WL 16635556. (N.D. Ill. Nov. 2, 2022) .........5, 6, 7, 22, 23

*Rowland v. Patterson*,
    882 F.2d 97 (4th Cir. 1989) ...........................................................7, 8, 9

*Sanchez v. Loffland Bros. Co.*,
    626 F.2d 1228 (5th Cir. 1980) ..............................................................15

*Saratoga Fishing Co. v. J.M. Martinac & Co.*,
    520 U.S. 875 (1997)..............................................................................17

# TABLE OF AUTHORITIES (continued)

**Page(s)**

*Savage Servs. Corp. v. United States*,
  522 F. Supp. 3d 1114 (S.D. Ala. 2021), *aff'd*, 25 F.4th 925 (11th Cir. 2022)........................16

*Sayers v. Sears, Roebuck & Co.*,
  732 F. Supp. 654 (W.D. Va. 1990) ...........................................................................................7, 9

*Servis v. Hiller Sys. Inc.*,
  54 F.3d 203 (4th Cir. 1995)), *cert. denied sub nom. BP P.L.C. v. Mayor &*
  *City Council Baltimore*, 143 S. Ct. 1795 (2023)........................................................................22

*Sisson v. Ruby*,
  497 U.S. 358 (1990)....................................................................................................................19

*Siswanto v. Airbus*,
  153 F. Supp. 3d 1024 (N.D. Ill. 2015) .......................................................................................14

*Siswanto v. Airbus Ams., Inc.*,
  No. 15-cv-5486, 2016 WL 7178458 (N.D. Ill. Dec. 9, 2016)....................................................18

*Spigner v. Apple Hospitality REIT, Inc.*,
  No. 3:21cv758(DJN), 2022 WL 1451397 (E.D. Va. Mar. 1, 2022) ...........................................8

*Stark v. Armstrong World Indus.*,
  21 F. App'x 371 (6th Cir. 2001) ................................................................................................17

*Taghadomi v. United States*,
  401 F.3d 1080 (9th Cir. 2005) ...................................................................................................16

*Texas Brine Co. v. Am. Arb. Ass'n*,
  955 F.3d 482 (5th Cir. 2020) .......................................................................................................8

*Williams v. United States*,
  711 F.2d 893 (9th Cir. 1983) ................................................................................................16, 20

**STATUTES**

28 U.S.C. § 1332(a) .............................................................................................................................6

28 U.S.C. § 1332(c)(1).........................................................................................................................9

28 U.S.C. § 1333(1) ...............................................................................................................6, 15, 21

28 U.S.C. § 1441........................................................................................................4, 5, 21, 22, 23

28 U.S.C. § 1441(a) ...................................................................................................................20, 21

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

28 U.S.C. § 1441(b)(2) .........................................................................................8, 15

28 U.S.C. § 1447(c) ..........................................................................................3, 5, 21

46 U.S.C. § 30301 ..................................................................................................15

## INTRODUCTION

This case, which was originally filed in Illinois state court and then removed to the Northern District of Illinois, is part of the multidistrict litigation arising out of the Sriwijaya Air flight SJY182 accident. Following removal, Plaintiffs moved for remand, but briefing was stayed prior to transfer. Boeing now responds to Plaintiffs' motion to remand.

Plaintiffs' motion should be denied. This Court unquestionably has diversity jurisdiction—Plaintiffs do not dispute that the parties are diverse and that the amount in controversy exceeds $75,000. Plaintiffs argue that removal was nonetheless improper because (1) an earlier Sriwijaya Air flight SJY182 case was remanded and (2) Boeing has not proved that its corporate headquarters is not in Illinois. *Aprillia*, Dkt. No. 25, ("Mot.") at 7–10. These arguments fail because (1) Plaintiffs' motion to remand is untimely, meaning that they waived these arguments and (2) the earlier Sriwijaya case is irrelevant as it was filed and removed at a time when Boeing's corporate headquarters was still in Chicago, Illinois, before Boeing's headquarters (and its principal place of business) moved to Arlington, Virginia. Plaintiffs' belated reliance on the forum defendant rule is also unavailing because Boeing removed the case before it was served (the trigger for applying the limitation), and even if the limitation did apply, Boeing's headquarters was in Virginia at the time this case was filed and removed.

Independently, this action was also properly removed on admiralty grounds (which is not subject to the forum defendant rule). The Court has admiralty jurisdiction because the alleged tort occurred, at least in part, on navigable waters and arose during an activity that bears a substantial relationship to traditional maritime activity. Plaintiffs' arguments to the contrary ignore the well-developed caselaw. Plaintiffs also invoke the saving-to-suitors clause to defeat removal but that claim is again both untimely and incorrect. The savings-to-suitors clause concerns venue, not subject matter jurisdiction, and Plaintiffs' failure to file a timely motion thus waived this argument.

Even if the Court were to consider Plaintiffs' late argument, the saving-to-suitors clause does not bar removal in this case because diversity jurisdiction is an independent basis for jurisdiction.

This Court has subject matter jurisdiction and Boeing properly removed this lawsuit. Plaintiffs' motion to remand should be denied.

## BACKGROUND

Preliminarily, Boeing notes that it responds herein to the arguments asserted by Plaintiffs in their original motion to remand filed in the Northern District of Illinois and in the supplemental memorandum filed in this Court. *See* Mot.; *In re Air Crash into the Java Sea on Jan. 9, 2021*, No. 1:23-md-3072, Dkt. No. 19 (supplemental memorandum) ("Supp. Mem.").

This lawsuit arises from the 2021 crash of Sriwijaya Air flight SJY182 into the Java Sea off the coast of Indonesia. *Aprillia v. Boeing Co.*, No. 1:23-cv-00474 (E.D. Va.), Dkt. No. 20, ("Am. Compl.") ¶ 1. Sriwijaya Air is an Indonesian air carrier. The flight was a commercial, intra-Indonesia flight that departed from Jakarta and was bound for Pontianak. *Aprillia*, Dkt. No. 26-1, KNKT Final Aircraft Accident Investigation Report ("KNKT Final Report") at xiii. Jakarta is located on the Indonesian island of Java, while Pontianak is across the Java Sea on the island of Borneo. There is no bridge connecting Java to Borneo, so the only way to travel between the two islands is either by boat or airplane.

The aircraft crashed into the water several miles off the coast of Java. *Id.* at 40. The 62 people on board, all citizens of Indonesia, died in the crash. Am. Compl. ¶ 3; KNKT Final Report at 3.

Plaintiffs, as heirs and beneficiaries, bring wrongful death claims on their own behalf and survival actions on behalf of the estates of their decedents alleging strict liability and negligence. *See generally* Am. Compl. They sued Boeing in September 2022 in the Circuit Court for Cook County. *Aprillia*, Dkt. No. 8-1. Before Boeing was served with the complaint, it removed the case

to the Northern District of Illinois. *Id.*, Dkt. No. 1. More than two months later, Plaintiffs filed an amended complaint. *Id.*, Dkt. No. 20.

Then, on January 20, 2023, more than three months after Boeing removed this case to federal court, Plaintiffs filed a motion to remand. *See generally* Mot. The case was then transferred to this Court for centralized pretrial proceedings along with twenty other actions arising from the crash of Sriwijaya Air flight SJY182. Dkt. No. 1. Pursuant to a Consent Motion, this Court allowed a supplemental memorandum limited to "any relevant differences between Seventh and Fourth Circuit law on the issues briefed in their original motions to remand." Dkt. No. 17, at 1. On questions of federal law, a transferee court applies the law of its own circuit.[1]

## ARGUMENT

### I.    Plaintiffs' motion to remand should be denied as untimely.

"A motion to remand the case on the basis of *any defect other than lack of subject matter jurisdiction* must be made within 30 days after the filing of the notice of removal under section 1446(a)." 28 U.S.C. § 1447(c) (emphasis added); *In re Norfolk S. Ry. Co.*, 756 F.3d 282, 287 (4th Cir. 2014) (quoting *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 196 (4th Cir. 2008)). Plaintiffs' motion to remand was filed long after the 30-day deadline, so any procedural defect is waived and removal is proper because this Court plainly has diversity jurisdiction.

---

[1] *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996); *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993); *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1175–76 (D.C. Cir. 1987), *aff'd sub nom. Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122 (1989); *see also Belmora LLC v. Bayer Consumer Care AG*, 987 F.3d 284, 293 (4th Cir. 2021) (applying transferee court's law to a transfer under § 1404(a)) ("[W]hen one district court transfers a case to another, the norm is that the transferee court applies its own Circuit's cases on the meaning of federal law.") (internal quotation marks and citations omitted)), *cert. denied*, 142 S. Ct. 483 (2021).

Plaintiffs do not contest that the parties are diverse or that the amount in controversy requirement has been satisfied. Plaintiffs and decedents are all citizens and residents of Indonesia. Am. Compl. ¶ 2; KNKT Final Report at 3. Although Plaintiffs incorrectly assert that Boeing is a citizen of Illinois, *see* Mot. at 3, it is undisputed that Boeing is not a citizen of Indonesia. Thus, there is complete diversity. Plaintiffs also do not dispute Boeing's allegation that the amount in controversy exceeds $75,000, exclusive of interests and costs. There can therefore be no credible dispute that this Court has subject matter jurisdiction based on diversity and such jurisdiction would exist even if Boeing did have its principal place of business of Illinois during the relevant time periods (which it did not). Plaintiffs' motion to remand does not challenge the facts that support the existence of diversity jurisdiction and should be denied on that basis alone.[2]

Plaintiffs appear to make two arguments for the purported absence of subject matter jurisdiction, both of which are wrong. First, Plaintiffs argue that diversity jurisdiction does not exist because Boeing is a forum defendant. *See* Supp. Mem. at 10. That argument fails because the forum defendant rule, found in 28 U.S.C. § 1441, establishes a procedural rule for removal of cases where subject matter jurisdiction exists, and Plaintiffs have waived any argument based on the rule. That the forum defendant rule is non-jurisdictional is well-established.[3] Although the Fourth Circuit has not addressed this question specifically, it has correctly held that "the statutory

---

[2] Plaintiffs also argue, incorrectly, that the Court lacks admiralty jurisdiction. *See infra* Section II.B. Even if Plaintiffs were correct, a lack of admiralty jurisdiction would not justify remand, because the Court has subject matter jurisdiction based on diversity.

[3] All ten circuits to consider the question agree. *See Holbein v. TAW Enters., Inc.*, 983 F.3d 1049, 1053 (8th Cir. 2020); *Morris v. Nuzzo*, 718 F.3d 660, 665 (7th Cir. 2013); *Lively v. Wild Oats Mkts., Inc.*, 456 F.3d 933, 939 (9th Cir. 2006); *Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 50 n.2 (2d Cir. 2000); *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1372 n.4 (11th Cir. 1998); *Korea Exch. Bank, N.Y. Branch v. Trackwise Sales Corp.*, 66 F.3d 46, 50 (3d Cir. 1995); *In re Shell Oil Co.*, 932 F.2d 1518, 1521–23 (5th Cir. 1991); *Moores v. Greenberg*, 834 F.2d 1105, 1106 n.1 (1st Cir. 1987); *Plastic Moldings Corp. v. Park Sherman Co.*, 606 F.2d 117, 119 n.1 (6th Cir. 1979); *Am. Oil Co. v. McMullin*, 433 F.2d 1091, 1093–95 (10th Cir. 1970).

requirements for removal provided in 28 U.S.C. §§ 1441–1453"—which includes the forum defendant rule—are the "defect[s] other than lack of subject matter jurisdiction." *In re Norfolk S. Ry. Co.*, 756 F.3d at 292. District courts within the Fourth Circuit too have agreed that the forum defendant rule is procedural, not jurisdictional. *Branch Banking & Tr. Co. v. Okay*, No. 1:16CV555(JCC/JFA), 2016 WL 4441997, at *3 n.2 (E.D. Va. Aug. 23, 2016); *Almutairi v. Johns Hopkins Health Sys. Corp.*, No. ELH-15-2864, 2016 WL 97835, at *6 (D. Md. Jan. 8, 2016) (collecting cases); *Councell v. Homer Laughlin China Co.*, 823 F. Supp. 2d 370, 379 (N.D. W. Va. 2011) ("[F]ailure to comply with forum defendant rule is a procedural defect and the ability to remand based upon violation of § 1441 is waivable under § 1447(c).").

Because the forum defendant rule is procedural and does not affect subject matter jurisdiction, Plaintiffs had 30 days after removal to file for remand based on that rule. *See* 28 U.S.C. § 1447(c). Plaintiffs did not do so—in fact they waited longer than three months to file their motion to remand—and thus have waived any procedural defect based on the forum defendant rule. Remand should therefore be denied.

Plaintiffs' second argument—that the Court lacks subject matter jurisdiction based on diversity—is based on a misreading of the decision in an earlier Sriwijaya case, *Riyanto v. Boeing Co.*, No. 21-CV-1475, 2022 WL 16635556. (N.D. Ill. Nov. 2, 2022). Plaintiffs claim that *Riyanto* held that "subject matter jurisdiction did not exist" or that "diversity jurisdiction was lacking." Mot. at 6, 7. But that was not *Riyanto*'s holding. Rather, the court concluded that removal was prohibited by the forum defendant rule even while explicitly finding that "the defendant [Boeing] satisfies the citizenship and amount in controversy requirements for diversity jurisdiction." *Riyanto*, 2022 WL 16635556, at *6. Unlike here, the plaintiff in *Riyanto* had not waived the forum defendant rule by filing a late notice of removal. Moreover, *Riyanto* was filed in February 2021

and removed in March 2021, more than a year before Boeing moved its headquarters to Virginia. *See supra*. *Riyanto* does not, therefore, stand for the proposition that the Court lacks subject matter jurisdiction based on diversity—indeed, it finds the opposite.

Because Plaintiffs do not raise any legitimate challenge to subject matter jurisdiction based on diversity, their motion to remand is untimely and should be denied. The Court's analysis can and should end there.

## II.   Plaintiffs' motion to remand should be denied because removal was proper on the basis of both diversity jurisdiction and admiralty jurisdiction.

Even if Plaintiffs are not deemed to have waived their procedural remand arguments, removal was proper on the basis of both diversity jurisdiction under 28 U.S.C. § 1332(a), and admiralty jurisdiction under 28 U.S.C. § 1333(1). Either one of these grounds is sufficient to support removal.

### A.   Removal was proper on the basis of diversity jurisdiction.

As discussed above, it is undisputed that the parties are diverse and that the amount in controversy exceeds $75,000, exclusive of interest and costs. The only substantive argument Plaintiffs advance against removal based on diversity jurisdiction is that it is barred by the forum defendant rule. *See* Mot. at 5–10. Even if that argument were not waived, it has no merit. Boeing is not, and was not at the time of filing or removal, a citizen of Illinois.

#### 1.   *Riyanto* has no preclusive effect.

As an initial matter, Plaintiffs incorrectly claim that any inquiry into Boeing's citizenship in this case is foreclosed by *Riyanto*. Mot. at 7–8. This argument is wrong because the facts in *Riyanto* were not the same as the facts in this case and issue preclusion does not apply.

Issue preclusion only prevents a party from relitigating issues that were resolved in a prior legal action when the factual and legal context underlying the issue are "identical" in the two

6

actions. *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 153 (2015); *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004). The issues here are not identical because, as Plaintiffs concede, citizenship is assessed at the time the action is commenced. *Rowland v. Patterson*, 882 F.2d 97, 99 (4th Cir. 1989); Supp. Mem. at 8. In a removed case, this means courts look to whether diversity "existed both at the time the action was originally commenced in state court and at the time of filing the petition for removal." *Rowland*, 882 F.2d at 99; *see also Richard v. Tallant*, No. 20-1752, 2022 WL 2526680, at *2 n.* (4th Cir. July 7, 2022) (unpublished); *Sayers v. Sears, Roebuck & Co.*, 732 F. Supp. 654, 656 (W.D. Va. 1990).

In *Riyanto*, Boeing's citizenship was assessed as of the date that case was removed: March 17, 2021. At that time, Boeing's headquarters unquestionably was in Chicago, Illinois, and there was thus no dispute that Boeing was a citizen of Illinois. *See Riyanto*, 2022 WL 16635556, at *5. By contrast, when this case was filed, more than eighteen months later, on September 23, 2022, and when it was removed on October 13, 2022, Boeing's headquarters was in Arlington, Virginia. *See generally* Declaration of Koji Torihara in Support of The Boeing Company's Oppositions to Plaintiffs' Motions to Remand ("Torihara Decl.") (filed contemporaneously herewith). The Judicial Panel on Multidistrict Litigation, recognizing this distinct factual difference, already considered and rejected the Plaintiffs' *res judicata* argument in its transfer order. *In re Air Crash into the Java Sea on Jan. 9, 2021*, No. MDL 3072, 2023 WL 2876934, at *2 (U.S. Jud. Pan. Mult. Lit. Apr. 7, 2023) ("[P]laintiffs err in asserting that the remand question already has been resolved for all actions by one district court decision, *Riyanto v. Boeing* . . . .").

Because citizenship will be assessed in this case at the time of filing and removal, the factual and legal contexts in *Riyanto* and this case are not identical, and issue preclusion does not apply.

### 2. The forum defendant rule does not apply because Boeing removed before the complaint was served.

The forum defendant rule only applies when a defendant has been properly served: "A civil action otherwise removable solely on the basis of … [diversity jurisdiction] may not be removed if any of the parties in interest *properly joined and served* as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2) (emphasis added). Here, Boeing was not served before this case was removed.

Three circuits have squarely held that § 1441(b)(2) does not apply when removal occurs before proper service. *See Texas Brine Co. v. Am. Arb. Ass'n*, 955 F.3d 482, 485–87 (5th Cir. 2020); *Gibbons v. Bristol-Meyers Squibb Co.*, 919 F.3d 699, 704–07 (2d Cir. 2019); *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 151–54 (3d Cir. 2018). No circuit has held otherwise. The most recent, and most persuasive, authority in this District has concluded the same. *Spigner v. Apple Hospitality REIT, Inc.*, No. 3:21cv758(DJN), 2022 WL 1451397, at *2–5 (E.D. Va. Mar. 1, 2022). Accordingly, even if Plaintiffs had not waived the forum defendant rule, it would not apply here. Boeing removed before it was served and thus removal was proper.

### 3. In any event, Boeing is not a forum defendant in Illinois because it had moved its corporate headquarters to Virginia.

Further, the forum defendant rule cannot apply because, at the relevant times, Boeing was not a citizen of Illinois. In May 2022, before these cases were filed and removed, Boeing announced the move of its corporate headquarters from Chicago, Illinois to Arlington, Virginia. And as the evidence shows, contrary to Plaintiffs' allegations (*see* Supp. Mem. at 8), Boeing's principal place of business was not in Illinois, but rather Virginia, at the time of filing and removal.

As Plaintiffs concede, citizenship is assessed at the time the action is commenced. *Rowland v. Patterson*, 882 F.2d 97, 99 (4th Cir. 1989); Supp. Mem. at 8. In a removed case, this means courts look to whether diversity "existed both at the time the action was originally

commenced in state court and at the time of filing the petition for removal." *Rowland*, 882 F.2d at 99; *see also Richard*, 2022 WL 2526680, at *2 n.*; *Sayers*, 732 F. Supp. at 656. Corporations are citizens of the states where they are incorporated and where they have their principal place of business. 28 U.S.C. § 1332(c)(1). Boeing unquestionably is incorporated in Delaware. Compl. ¶ 23; *Aprillia*, Dkt. No. 1, at 4. The only dispute is the location of Boeing's principal place of business.

For purposes of diversity jurisdiction, a corporation's principal place of business is "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities," which is "often metaphorically called … the corporation's 'nerve center.'" *Hertz Corp. v. Friend*, 559 U.S. 77, 80–81 (2010) (internal citation omitted); *see also Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 170–74 (4th Cir. 2014). As Plaintiffs concede, this is true "even if some of the officers are not located at that particular location." Supp. Mem. at 8 (citing *Central W. Va. Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101 (4th Cir. 2011)). This test is intended to be "straightforward," "simple," and "predictab[le]," which is valuable both "to corporations making business and investment decisions" and to "plaintiffs deciding whether to file suit in a state or federal court." *Hertz*, 559 U.S. at 94–95. Applying the test here, it is clear that Boeing's principal place of business at the time of filing and removal was Arlington, Virginia.

First, that is where Boeing's headquarters was located, as reflected in Boeing's contemporaneous public and corporate records. Torihara Decl. ¶¶ 4–10 (filed contemporaneously herewith). Boeing's filings with the SEC also identify Arlington, Virginia as the company's principal offices, *id.* ¶ 7, and its corporate bylaws identify the Arlington headquarters as the location of the "Corporation's executive offices" and direct that all notices from shareholders to

9

the company be sent there. *Id.* ¶ 8. As the Supreme Court held in *Hertz*, the "'nerve center' will typically be found at a corporation's headquarters." 559 U.S. at 81.

Second, Arlington, Virginia is where Boeing's high-level officers actually directed, controlled, and coordinated Boeing's activities at the relevant time. *See* Torihara Decl. ¶¶ 11–15. All communications with and activities of Boeing's Board of Directors are coordinated by Boeing's Office of the Corporate Secretary in Arlington. *Id.* ¶ 15. Boeing's Board met in Arlington in October 2022, while it has not met in Illinois since 2019. *Id.* ¶ 11. Boeing's Executive Council, a group of high-ranking Boeing executives, met in Arlington in November 2022; it has not met in Illinois since 2020. *Id.* ¶ 12. And Boeing's Chief Executive Officer and Chief Financial Officer have been in Arlington for all of Boeing's quarterly earnings conferences since May 2022. *Id.* ¶ 13. Boeing's leadership with enterprise-wide authority also is and was at the time of filing and removal primarily based at Boeing's headquarters in Arlington. *Id.* ¶¶ 19–26.

As the Supreme Court recognized in *Hertz*, "in this era of telecommuting, some corporations may divide their command and coordinating functions among officers who work at several different locations." 559 U.S. at 95–96. That is true for Boeing, especially during and after the COVID-19 pandemic. Nonetheless, the single location with the most officers with responsibility for Boeing's oversight and strategic decision-making at the time this case was filed and removed was Arlington, Virginia.

The primary office of Boeing's President and Chief Executive Officer (CEO), David Calhoun, was in Arlington at the relevant times. Torihara Decl. ¶ 19. Mr. Calhoun maintains his primary office in Arlington even though his primary residence is in New Hampshire and he works in multiple locations. *Id.* From Arlington, Mr. Calhoun oversees the company's three business units: Boeing Commercial Airplanes; Boeing Defense, Space & Security; and Boeing Global

Services. *See id.* ¶¶ 16–19. The leaders of each of these business units "report to, are accountable to, and are directed by" him. *Id.* ¶ 17.

Arlington is also where five other corporate leaders with enterprise-wide responsibilities were based at the time these cases were filed and removed (and still are). This includes Boeing's Chief Communications Officer, Corporate Secretary, Chief Strategy Officer, Chief Sustainability Officer, and Executive Vice President of Government Operations. *Id.* ¶ 21. Boeing's Chief Financial Officer also regularly traveled to Arlington for work even though his primary residence was in Connecticut. *Id.* ¶ 20. These are the kinds of "top officers" that are relevant to the "nerve center" test. *Hertz*, 559 U.S. at 96.

By comparison with these seven senior officials, only six members of Boeing's Executive Council with enterprise-wide responsibilities during the time these suits were filed and removed were not based in Arlington, Virginia. Four members were based in Washington state, Florida, and Ontario. Torihara Decl. ¶ 23.a–d. And only two—the former Treasurer and former Chief Compliance Officer—had offices in Chicago, Illinois. *Id.* ¶ 25.

Travel records further reinforce that Boeing's nerve center was Arlington, Virginia, not Illinois. In all, those members of the Executive Council with enterprise-wide responsibilities whose primary residences were in neither Illinois nor Virginia, including Mr. Calhoun and Mr. West, made a total of 16 business trips to Illinois and 48 business trips to Virginia. *Id.* ¶¶ 19, 20, 21.e., 23.

In short, this is not a case of attempted jurisdictional manipulation, such as where the company's supposed headquarters is "nothing more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat." *Hertz*, 559 U.S. at 97. Arlington was at

the time of filing and removal, and still is, "the place of actual direction, control, and coordination" of Boeing. *Id.*; *Hoschar*, 739 F.3d at 172.

None of the documents cited in Plaintiffs' supplemental memorandum change this conclusion. Plaintiffs cite a filing with the Commonwealth of Virginia's State Corporation Commission that listed a principal office address in Delaware and addresses for certain executives and directors in Illinois. Supp. Mem. at 9. That information was outdated and erroneous at the time it was filed, and has since been updated. The current filing correctly reflects that Boeing's corporate headquarters is located in Arlington. Torihara Decl. ¶ 9, Ex. A. An erroneous government form does not overcome "unchallenged affidavits" showing that the corporate officers had their offices in another state and that "corporate activities [we]re directed from that office." *Darrough v. LTI Trucking Servs., Inc.*, No. 12-0024-DRH, 2012 WL 1149158, at *2 (S.D. Ill. Apr. 5, 2012).

Further, Plaintiffs assert that "Boeing's CEO was announcing corporate decisions and policy from Chicago throughout 2022 as late as January 25, 2023," because three news releases regarding company-wide emails sent by Mr. Calhoun were labeled as being issued from Chicago. *See* Supp. Mem. at 9. The designation of a location on a press release is hardly competent evidence as to the location of corporate decision-making. Furthermore, contrary to Plaintiffs' assertions, Mr. Calhoun was in the Arlington area when these releases were issued. Indeed, on the day of each release, Mr. Calhoun gave an interview to CNBC in Washington D.C. discussing the quarterly earnings. Declaration of Mack H. Shultz, Jr. in Support of The Boeing Company's Oppositions to Plaintiffs' Motions to Remand (filed contemporaneously herewith) ("Shultz Decl.") ¶¶ 26–28, Exs. AA–AC. Boeing also issued news releases the same day that discussed the quarterly earnings in detail; all of those news releases were designated as issued from Arlington. *Id.* ¶¶ 30–32,

Exs. AD–AF. Finally, Boeing's website contains 228 press releases from after the May 5, 2022, announcement of the move of the corporate headquarters to Virginia through July 11, 2023. *Id.* ¶ 29. Only six of these news releases were designated as coming from Chicago (including the three cited by Plaintiffs). By comparison, 55 were issued from Arlington, with the remainder coming from around the world. *Id.* While Boeing does not believe the locations listed in these news releases are relevant to this inquiry, to the extent they are, they further establish that Boeing's principal place of business is in Arlington, not in Illinois.

Plaintiffs also cite various court filings that erroneously listed Illinois as Boeing's principal place of business after its headquarters moved to Virginia. *See* Supp. Mem. at 9. As Boeing informed Plaintiffs before their supplemental memorandum was filed, these filings were erroneous at the time and have since been corrected where appropriate. Declaration of Erin E. Williams in Support of The Boeing Company's Opposition to Plaintiffs' Motion to Remand ("Williams Decl.") ¶¶ 2–3, Ex. A; Declaration of Lucia V. Pazos in Support of The Boeing Company's Opposition to Plaintiffs' Motion to Remand ("Pazos Decl.") ¶¶ 2–7, Exs. A–I. In none of those cases did Boeing gain any advantage from the mistaken assertion that its principal place of business was in Chicago. Williams Decl. ¶ 4; Pazos Decl. ¶ 8. Furthermore, Boeing has correctly asserted its principal place of business was in Virginia in many more cases following the announcement of the headquarters move. Shultz Decl. ¶¶ 2–25, Exs. A–Z (cataloguing filings that correctly identify Boeing's headquarters in Virginia). For example, in opposing remand in *Ballesteros v. Boeing Co.*, No. 2:22-cv-00393-TSZ (W.D. Wa. May 16, 2022), Dkt. No. 16, 11 days after the announcement, Boeing described the move and its import as follows:

> On May 5, 2022, Boeing announced that it will be moving its corporate headquarters to Arlington, Virginia. News outlets have universally and accurately reported that Boeing is moving its headquarters *from* Chicago to Arlington. Once this transition is complete, a substantial majority of Boeing's executive council

members who hold enterprise-wide decision-making authority will either retain or establish offices in Arlington, Virginia.

*Id.* at 10 (internal citations omitted) (emphasis in original); *see* Shultz Decl. Ex. A (copy of brief). The handful of mistaken pleadings identified by Plaintiffs do nothing to undermine the *fact*, as reflected in many more contemporaneous filings, that Boeing's headquarters and principal place of business was and is in Arlington.

Thus, even if the forum defendant rule were not waived and unavailable because removal preceded service, it still would not apply because Boeing's headquarters and principal place of business at the time of filing and removal was not in Illinois. This Court can and should reach this conclusion without ordering the jurisdictional discovery Plaintiffs have requested regarding the location of Boeing's headquarters. Plaintiffs' request does not clear the "high hurdle" necessary to justify it. *See Siswanto v. Airbus*, 153 F. Supp. 3d 1024, 1032 (N.D. Ill. 2015). Speculation, bare allegations, and conclusory assertions are insufficient to justify jurisdictional discovery. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402–03 (4th Cir. 2003); *see also 1075 Mkt. St. Owners' Ass'n v. U.S. Dep't of Health & Hum. Servs. through Becerra*, 859 F. App'x 90, 92 (9th Cir. 2021) ("Jurisdictional discovery is inappropriate 'on little more than a hunch that it might yield jurisdictionally relevant facts.'" (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008))). Plaintiffs assert that they need discovery in order to "test[] the reliability and veracity of Boeing's position," Supp. Mem. at 9, but there is no real dispute of material fact with respect to the location of Boeing's headquarters and principal place of business.

## B.    Removal was proper on the basis of admiralty jurisdiction.

Removal was also independently proper based on admiralty jurisdiction.[4] Admiralty jurisdiction exists if (1) the alleged tort occurred on navigable water (the locality test) and (2) the

---

[4] Even if this Court concludes that the forum defendant rule bars removal based on diversity

14

activity in question bears a substantial relationship to traditional maritime activity (the connection test). *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995); 28 U.S.C. § 1333(1). This accident, in which the airplane crashed into the ocean several miles off the coast, satisfies both tests.[5]

### 1.     The locality test is satisfied.

The locality test is satisfied if the tort occurred on navigable water. *Grubart*, 513 U.S. at 534. This case meets the test for two separate reasons: (1) the injuries occurred when the aircraft crashed into the Java Sea, and (2) part of the alleged "wrong" occurred over navigable waters.

---

jurisdiction, that limitation would not apply to removal based on admiralty jurisdiction. That is because the forum defendant rule bars removal only if it is based "solely" on diversity, 28 U.S.C. § 1441(b)(2); *see Curry v. Boeing Co.*, 542 F. Supp. 3d 804, 819–20 (N.D. Ill. 2021), as Plaintiff concedes, Mot. at 11 (citing *Boakye v. NCL (Bahamas) Ltd.*, 295 F. Supp. 3d 1342, 1346 (N.D. Ga. 2018)).

[5] The Court may also have admiralty jurisdiction for another reason. Plaintiffs' complaint implies that U.S. law applies to their wrongful death and survival claims. Although Boeing asserts that Indonesian law likely controls some or all legal issues in the case, *see* Dkt. No. 12 (Brief in Support of Boeing's Motion to Dismiss for *Forum Non Conveniens*), at 11, if U.S. law were to apply, Plaintiffs' claims would be governed solely by the Death on the High Seas Act (DOHSA), which grants federal courts admiralty jurisdiction and preempts state law claims. *See* 46 U.S.C. § 30301, *et seq.*; *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 218–19, 232 (1986) (holding that "admiralty jurisdiction is expressly provided under DOHSA" and that DOHSA preempts state law); *Exec. Jet Aviation, Inc. v. City of Cleveland, Ohio*, 409 U.S. 249, 263–64 & n.13 (1972) (noting that "it may be considered as settled" that DOHSA "gives the federal admiralty courts jurisdiction of" wrongful-death actions "arising out of aircraft crashes into the high seas beyond one marine league from shore"); *LaCourse v. PAE Worldwide Inc.*, 980 F.3d 1350, 1358 (11th Cir. 2020) (holding that DOHSA "preempts all other wrongful-death claims under state or general maritime law"); *In re Lion Air Flight JT 610 Crash*, No. 18 C 07686, 2022 WL 17820965, at *3– 7 (N.D. Ill. Dec. 20, 2022). Courts have held that, for purposes of DOHSA, the "high seas" includes the territorial waters of a foreign country. *Howard v. Crystal Cruises, Inc.*, 41 F.3d 527, 529–30 (9th Cir. 1994) (holding that DOHSA applies to death caused by injury on Mexico's territorial waters and collecting cases). *Sanchez v. Loffland Bros. Co.*, 626 F.2d 1228, 1229–30 & n.4 (5th Cir. 1980) (per curiam) (holding that DOHSA applies to death on Venezuelan lake and collecting cases). In *Executive Jet*, the Supreme Court noted that the test it laid out for admiralty jurisdiction did not apply if an act of Congress specifically granted federal courts admiralty jurisdiction. *See Exec. Jet Aviation*, 409 U.S. at 263–64. Courts have subsequently held that DOHSA is such an act. *See, e.g.*, *Offshore Logistics*, 477 U.S. at 218–19.

**Crash on navigable waters.** Plaintiffs' injuries occurred, and the alleged tort was completed, when the aircraft crashed into navigable waters. It is irrelevant that Plaintiffs allege some tortious conduct occurred on land (Mot. at 13–14). *See, e.g.*, *Taghadomi v. United States*, 401 F.3d 1080, 1084 (9th Cir. 2005) (admiralty jurisdiction extends over claims arising from Coast Guard's activity on land when injury occurred on water); *Miller v. United States*, 725 F.2d 1311, 1315 (11th Cir. 1984) (admiralty jurisdiction exists when an airplane crashed into waters more than one marine league from the shores of the United States even though the alleged negligence occurred on land); *Williams v. United States*, 711 F.2d 893, 896 (9th Cir. 1983) (admiralty jurisdiction exists over claim that FAA's negligence on land caused accident in Pacific Ocean); *Savage Servs. Corp. v. United States*, 522 F. Supp. 3d 1114, 1127 (S.D. Ala. 2021) (admiralty jurisdiction exists over claims relating in part to alleged negligence of United States Army Corp of Engineers that occurred on land when oil spill occurred in a lock), *aff'd*, 25 F.4th 925 (11th Cir. 2022); *Donais v. Green Turtle Bay, Inc.*, No. 5:10-CV-167-TBR, 2012 WL 399160, at *4 (W.D. Ky. Feb. 7, 2012) (admiralty jurisdiction exists over claims relating in part to alleged negligence of boat repair workers when boat explosion occurred on water). There is no requirement that "the whole tort … occur on the water," *Lu Junhong v. Boeing Co.*, 792 F.3d 805, 816 (7th Cir. 2015) (accident landing in San Francisco), and there is no serious question that Plaintiffs' injuries were sustained when the airplane hit the water.

**Alleged wrong on navigable waters.** The locality test is also met here because the alleged wrong occurred, at least in part, over navigable waters. *See, e.g.*, *Lu Junhong*, 792 F.3d at 814–16 (admiralty jurisdiction proper because plaintiffs alleged autothrottle problems that occurred over San Francisco Bay). Indeed, "the locality test can be met if either the tortious conduct begins on land but culminates with an injury on navigable waters or the tortious conduct begins on a vessel

on navigable waters but culminates with an injury on the land." *McQueen v. Aramark Corp.*, No. 2:15-CV-492-DAK, 2016 WL 1261067, at *4 (D. Utah Mar. 30, 2016). Here, key events in the chain of causation occurred while the aircraft was over navigable water, and therefore the "wrongful conduct," if any, occurred at least in part over navigable water.

Plaintiffs attempt to narrowly frame the wrongful conduct as stemming from the design, manufacture, and sale of the aircraft's autothrottle and accompanying manuals on land. Mot. at 14. But courts have repeatedly recognized that product liability claims based on the onshore design and manufacture of products that cause injury on or over navigable water fall within admiralty jurisdiction. *See, e.g.*, *Saratoga Fishing Co. v. J.M. Martinac & Co.*, 520 U.S. 875 (1997); *Stark v. Armstrong World Indus.*, 21 F. App'x 371 (6th Cir. 2001); *Pavlides v. Galveston Yacht Basin, Inc.*, 727 F.2d 330 (5th Cir. 1984); *Lewis v. Timco, Inc.*, 716 F.2d 1425, 1426 (5th Cir. 1983); *Pan-Alaska Fisheries, Inc. v. Martine Constr. & Design Co.*, 565 F.2d 1129 (9th Cir. 1977).

Plaintiffs also assert that an autothrottle failure first occurred while the aircraft was over land. *See* Mot. at 14. But Plaintiffs also allege that it persisted over water and caused the accident. That suffices for admiralty jurisdiction

According to the final report, the airplane's thrust levels started becoming asymmetric at 07:38:40 UTC. KNKT Final Report at 33. By 07:39:48 UTC, while the aircraft was more than 10,000 feet over the Java Sea, it began turning left as the thrust asymmetry increased. *See id.* at 34, 40. As can be seen on the following diagram, that unintended turn to the left (followed by the sharp right turn and the crash) began while the aircraft was over water:

17



*Id.* at 40, 124 (circle added to show unintended left turn and resulting loss of control). The aircraft

crashed into the Java Sea less than a minute later. *See id.* at 3, 34, 40. Much of this sequence,

including the unintended turn to the left and the failure of the pilots to recover from it, occurred

over the Java Sea. This alone is enough to satisfy the locality test. *See, e.g.*, *Lu Junhong*, 792 F.3d

at 814, 816; *Siswanto v. Airbus Ams., Inc.*, No. 15-cv-5486, 2016 WL 7178458, at *4–5 (N.D. Ill.

Dec. 9, 2016).

Boeing's jurisdictional allegations, backed by the investigation report, "control unless it is

legally impossible for them to be true (or to have the asserted consequences)." *Lu Junhong*, 792

F.3d at 815. The locality test is therefore independently satisfied because the alleged wrong

occurred at least in part over navigable water.

## 2.    The connection test also is satisfied.

The connection test has two components: (1) whether the incident giving rise to the suit had a "potentially disruptive impact on maritime commerce," and (2) whether "'the general character' of the 'activity giving rise to the incident'" has a "substantial relationship to traditional maritime activity." *Grubart*, 513 U.S. at 534 (quoting *Sisson v. Ruby*, 497 U.S. 358, 364–65, 364 n.2 (1990)). Both elements are satisfied here.

**Disruptive impact.** Even a possibility that an incident could injure a crewmember or passenger is a potentially disruptive impact on maritime commerce sufficient to satisfy the first component of the test. *See, e.g.*, *Mullinex v. John Crane, Inc.*, No. 4:18-cv-33, 2020 WL 2025538, at *2 (E.D. Va. Apr. 27, 2020) (exposure to asbestos on Navy ships); *Curry*, 542 F. Supp. 3d at 814 ("serious questions about aircraft safety"). This case involves the death of all passengers and crew on a commercial flight between islands, and Plaintiffs do not seriously contest that this element is met.

**Substantial relationship.** Plaintiffs argue instead that Sriwijaya flight SJY182 did not bear a significant relationship to traditional maritime activity. *See* Mot. at 7–9. In a case neither cited nor distinguished by Plaintiffs, the Supreme Court made clear that flights bear a significant relationship to traditional maritime activity if, prior to the advent of air travel, the activity would have been performed by boat. *See Offshore Logistics*, 477 U.S. at 218–19. *Offshore Logistics* arose from a helicopter flight ferrying workers from an oil rig to the shore, a flight that the Supreme Court found bore a substantial relationship to traditional maritime activity:

> [A]dmiralty jurisdiction is appropriately invoked here under traditional principles because the accident occurred on the high seas and in furtherance of an activity bearing a significant relationship to a traditional maritime activity. Although the decedents were killed while riding in a helicopter and not a more traditional maritime conveyance, that helicopter was engaged in a function traditionally performed by waterborne vessels: the ferrying of passengers from an "island," albeit an artificial one, to the shore.

19

*Id.* (internal citations omitted).

Since the Supreme Court's decision in *Offshore Logistics*, "virtually every court considering the issue has found that aircraft crashes during overseas or inter-island flights involve a traditional maritime activity." *Isla Nena Air Servs., Inc. v. Cessna Aircraft Co.*, 380 F. Supp. 2d 74, 79–80 (D.P.R. 2005) (collecting cases), *aff'd on other grounds*, 449 F.3d 85 (1st Cir. 2006). Here, flight SJY182 was ferrying passengers and cargo from one Indonesian island to another and thus bears a substantial relationship to traditional maritime activity.

Plaintiffs also wrongly claim that domestic flights cannot bear a substantial relationship to traditional maritime activity. *See* Mot. at 12–13. Numerous courts have found that domestic flights, such as those involving islands, satisfy the connection test. *See, e.g.*, *Williams*, 711 F.2d at 894, 896 (flight from California to Hawaii); *Isla Nena Air Servs.*, 380 F. Supp. 2d at 76, 81 (flight from Puerto Rico to another nearby island); *Hammill v. Olympic Airways, S.A.*, 398 F. Supp. 829, 834 (D.D.C. 1975) (flight from Corfu to Athens). Indeed, *Offshore Logistics* was a flight to an offshore oil rig, which is an "artificial" island. 477 U.S. at 219.

Because both the locality and connection tests are satisfied, this Court has admiralty jurisdiction over this action. Removal was therefore proper on that basis alone, as the Court has original jurisdiction over this action. 28 U.S.C. § 1441(a) ("[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed.").

### 3. Plaintiffs' arguments based on the savings-to-suitors clause have been waived and, in any event, the clause does not bar removal.

Plaintiffs' arguments based on the savings-to-suitors clause fail both because they have been waived and because the savings-to-suitors clause does not bar removal.

**Waiver**. Section 1333 confers upon the federal courts original jurisdiction over any civil case of admiralty or maritime jurisdiction, "saving to suitors in all cases all other remedies to which

they are otherwise entitled." 28 U.S.C. § 1333(1). This is known as the "saving-to-suitors" clause. The clause concerns venue, not subject matter jurisdiction. *Lu Junhong*, 792 F.3d at 818; *see also Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 455 (2001) (describing "a claimant's forum choice under the saving to suitors clause"). As a result, any objection to removal based on the savings-to-suitors clause can be waived, *see Lu Junhong*, 792 F.3d at 818, as Plaintiffs concede in their motion, Mot. at 10 ("[A] Plaintiff must specifically invoke the savings to suitor clause. Failure to do so waives the defense").

Like their arguments based on the forum defendant rule, Plaintiffs waived any argument for remand based on the savings-to-suitors clause by failing to move for remand within 30 days of removal. *See* 28 U.S.C. § 1447(c); *Riverside Const. Co. v. Entergy Miss., Inc.*, 626 F. App'x 443, 447 (5th Cir. 2015), *as revised* (Oct. 16, 2015) ("[A] case that is improperly removed under [the saving-to-suitors clause] suffers from a procedural defect, rather than a jurisdictional defect, and such a defect may be waived if the plaintiff fails to timely move for remand.").

**Not a bar to removal.** Even if Plaintiffs had not waived their argument based on the savings-to-suitors clause, it would not bar removal here for two reasons.

*First*, the plain language of 28 U.S.C. § 1441(a) allows for removal. Since the 2011 amendment, the statute now states that, except as expressly prohibited by another statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed." 28 U.S.C. § 1441(a). The saving-to-suitors clause only provides for concurrent jurisdiction for state courts; it does not say anything about removal, let alone expressly prohibit it. *See* 28 U.S.C. § 1333(1). A number of courts have held that the 2011 amendment to § 1441 now allows for the removal of admiralty actions. *A.E.A. ex rel. Angelopoulos v. Volvo Penta of the Ams., LLC*, 77 F. Supp. 3d 481, 490 (E.D. Va. 2015)

(collecting cases). Although other district courts have reached the opposite conclusion, that disregards the statute's plain language.

*Second*, even if the saving-to-suitors clause could bar removal after the 2011 amendment to § 1441, courts have clearly and consistently held that admiralty "and maritime cases may … be removable to federal court when there exists some independent basis for federal jurisdiction, such as diversity of citizenship …." *Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 225 (4th Cir. 2022), (omission in original) (alteration added) (quoting *Servis v. Hiller Sys. Inc.*, 54 F.3d 203, 207 (4th Cir. 1995)), *cert. denied sub nom. BP P.L.C. v. Mayor & City Council Baltimore*, 143 S. Ct. 1795 (2023); *see also Curry*, 542 F. Supp. 3d at 819; *Brown v. Porter*, 149 F. Supp. 3d 963, 969 (N.D. Ill. 2016) (collecting cases). This case fits the exception because there is both admiralty and diversity jurisdiction. *See supra*. The independent existence of diversity jurisdiction means that even if the saving-to-suitors clause could bar removal, it would not apply to prevent removal here.

This Court should reject Plaintiffs' invitation to follow the non-binding decision in *Riyanto*, which found that the combination of the forum defendant rule and the savings-to-suitors clause barred removal. First, and most importantly, the *Riyanto* analysis hinged on Boeing's status as a forum defendant, 2022 WL 16635556, at *6, which it is not in this case. Because the forum defendant rule does not apply here (and because any challenge based on it has been waived), the Court clearly has an independent basis for both jurisdiction and removal. Therefore, even under *Riyanto*, this case is properly removable.

Even if that were not the case, *Riyanto* is still not persuasive.[6] As the court explained in *Curry*, "whether [the forum defendant rule][7] allows a defendant to remove a case within the federal jurisdiction is a question of removal *procedure* unrelated to the *substantive* question of whether the suit in fact falls within the federal jurisdiction." 542 F. Supp. 3d at 820. Thus, even if the forum defendant rule applied to bar removal on the basis of diversity jurisdiction, it would "not disturb the fact that this suit's falling within the diversity jurisdiction creates an independent basis for federal subject matter jurisdiction for purposes of the saving-to-suitors clause," *id.* (internal quotation marks omitted), rendering removal permissible.[8]

Accordingly, both because the saving-to-suitors clause does not bar removal based on admiralty jurisdiction, and because in any event diversity serves as an independent basis for federal jurisdiction, the saving-to-suitors clause does not bar removal here.

## CONCLUSION

Plaintiffs' motion to remand should be denied. This Court has subject matter jurisdiction on two independent grounds—diversity jurisdiction and admiralty jurisdiction. Plaintiffs' motion is untimely with respect to all other arguments. Even if the Court considers Plaintiffs' claimed procedural bars, removal remains proper in this case.

---

[6] *Riyanto* also purported to rely on dicta in *Lu Junhong* to support its reading. 2022 WL 16635556, at *6. But *Lu Junhong* is no support at all. The Seventh Circuit recognized the plain language support for removal based upon admiralty jurisdiction, treated any saving-to-suitors issue as waived, and did not consider the issue further. *See Lu Junhong*, 792 F.3d at 818.

[7] The *Curry* court appears to have mistakenly cited § 1442 here instead of § 1441.

[8] This conclusion is further supported by Congress's 2011 amendment to § 1441(b), which clarified that the forum defendant rule operates only where "the action is removable solely on the basis" of diversity jurisdiction. This case features *both* admiralty and diversity jurisdiction, rendering the forum defendant rule inapplicable for that reason as well.

Dated:  July 21, 2023

By: /s/ *Benjamin L. Hatch*
Benjamin L. Hatch, VA Bar No. 70116
BHatch@mcguirewoods.com
McGuireWoods LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, VA 23510-1655
Telephone:     +1.757.640.3700
Facsimile:     +1.757.640.3947

Mack H. Shultz (admitted *pro hac vice*)
MShultz@perkinscoie.com
Perkins Coie LLP
1201 3rd Avenue, Ste 4900
Seattle, WA 98101
Telephone:     +1.206.359.8000
Facsimile:     +1.206.359.9000

*Attorneys for Defendant The Boeing Company*

24

## CERTIFICATE OF SERVICE

I, Benjamin L. Hatch, hereby certify that on July 21, 2023, I filed the foregoing ***BOEING'S***

***MEMORANDUM IN OPPOSITION TO PLAINTIFFS MOTION TO REMAND*** with the Clerk

of the Court using the CM/ECF system, which will send notification of such filing to the attorneys

of record.

*/s/ Benjamin L. Hatch*
Benjamin L. Hatch
McGuireWoods LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, VA 23510-1655
Telephone:     +1.757.640.3700
Facsimile:     +1.757.640.3947
BHatch@mcguirewoods.com

25