**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

Alexandria Division

| | |
|---|---|
| IN RE:<br><br>AIR CRASH INTO THE JAVA SEA<br>ON JANUARY 9, 2021 | MDL No. 1:23MD3072 |

## ILLINOIS PLAINTIFFS CONSOLIDATED REPLY TO BOEINGS' OPPOSITIONS TO REMAND (Dkts. 38-44.)

### I. Introduction

All Illinois plaintiffs want their cases remanded and took appropriate steps to move the court for relief. Boeing in error now claims Illinois plaintiffs waived their jurisdictional and save-to-suitor arguments.[1] Illinois plaintiffs timely, factually, and legally invoked rights and objections.[2]

There has been no consent to or waiver as to jurisdiction.[3] Boeing asserted that it was a citizen of Virginia without informing Illinois plaintiffs of material facts that placed that assertion

---

[1] Dkt. 38, p. 5; Dkt. 39, p. 5.

[2] *In re Air Crash Into Java Sea on January 9, 2021*, --- F.Supp.3d ----, 2023 WL 2876934 *2 (M.D.L. April 7, 2023)("The actions also share **significant threshold questions concerning**…whether admiralty or diversity jurisdiction lies over the actions…")(emphasis added.) Boeing never mentioned waiver to the MDL panel. When the MDL panel transferred this case, it did so with the expectation that all jurisdiction arguments would be heard by a single court.

[3] Dkt. 38, p. 3-4; Dkt. 39, p. 3-6.

1

into dispute.[4]  Boeing is at odds with "fundamental principle of our jurisprudence" that "seeks the discovery of truth by means of a managed adversarial relationship between the parties."[5]

Boeing is using its claimed principal place of business as a means of procedurally creating division and entanglement among the plaintiffs towards a common end: dismissal on *Forum Non-Conveniens* (FNC) grounds.[6]  Boeing's request that the Court find some Illinois plaintiffs objection to jurisdiction as untimely, a request not made as to other Illinois plaintiffs is yet another example of its strategy.[7]

Boeing's "Stalingrad defense"[8] should give this Court pause. The SJY-182's suits filed in Illinois seek to hold Boeing accountable for a product that has caused significant loss of life and raises important safety questions over a mechanism currently in place in planes flying on American soil. The SJY-182 suits raise common questions of law and fact like the 737 MAX litigation: whether Boeing an American company with international presence is

---

[4] Dkt. 20, Exhibit A to X.

[5] *MercExchange, L.L.C. v. eBay, Inc.*, 467 F.Supp.2d 608, 617 (E.D.Va.2006); Dkt. 44, p. 2 ("In their supplemental memorandum, the Illinois Plaintiffs request jurisdictional discovery.")  This statement omits a material fact that jurisdictional discovery was requested since January 20, 2023, "Plaintiffs request that the Court grant them permission to conduct discovery to establish that Boeing was not a citizen of Virginia on October 13, 2022 when it filed its notice of removal." *Aprillia et al. v. Boeing*, No. 22-CV-05609, Northern District of Illinois, Dkt. 25, p. 9.

[6] Dkt. 30 at 1. ("These cases present a textbook example of a lawsuit warranting forum non conveniens dismissal.") They are not.

[7] Dkt. 39, p. 3-6.

[8] *Safer Display Tech., Ltd. v. Tatung Co.*, 227 F.R.D. 435, 442 (E.D.Va.2004) (Doumar, J.)

2

introducing a product into commerce that is defectively designed, manufactured, and modified in America.[9] Boeing's attempt to side-step inquiry on that issue is not new.[10]

Though the 737-Max cases involved Boeing's MCAS system whereas SJY-182 involves Boeing's auto-throttle system, Boeing's motive, intent, absence of mistake, and knowledge regarding both the MCAS system, the auto-throttle system, and its product generally are relevant as other act evidence in this case.[11] 737-Max, Lion Air crashed on October 29, 2018. 737-Max, Ethiopian Airlines crashed on March 10, 2019. On January 7, 2021, Boeing was indicted for the 737-Max crashes and entered into a deferred prosecution agreement with the Department of Justice.  Two days later, SJY-182 crashed.

To protect the plaintiffs' selected forum, promote judicial efficiency, and protect international principles of comity, the Court "not only has a right but a duty to inquire *sua sponte* into whether subject matter jurisdiction exists if the basis of such jurisdiction appears questionable as it does in this case."[12]

---

[9] *In re: Ethiopian Airlines Flight ET 302 Crash*, No. 19 C 2170 (Consolidated), 2023 WL3728625 (N.D. Il. May 30, 2023); *United States v. Boeing Co.*, 4:21-CR-5-O, 2022 WL 13829875, at *6 (N.D. Tex. Oct. 21, 2022).

[10] Gelles, David, *Boeing Aims To Move Victim Lawsuits Abroad, but C.E.O. Says He Is Unaware*, The New York Times, November 10, 2019 available at https://www.nytimes.com/2019/11/10/business/boeing-lion-air-lawsuits-indonesia.html (last checked July 28, 2023.)

[11] Federal Rule of Evidence 404(b).

[12] *Craighead v. Nissan Motor Acceptance Corp.*, No. 1:10–cv-981 (JCC/JFA), 2010 WL 5178831, at *6 (E. D. Va. Dec. 14, 2010) (citing *Roche v. Lincoln Prop. Co.*, 373 F.3d 610, 621 (4th Cir. 2004), rev'd on other grounds by *Lincoln Property Co. v. Roche*, 546 U.S. 81 (2005) ("Because the parties may not waive or consent to federal subject matter jurisdiction-indeed we must raise it sua sponte if jurisdiction appears questionable[.]")

Boeing cannot demonstrate by a "preponderance of evidence" that there is federal jurisdiction over these cases.[13] To the extent Boeings' declarations suggest otherwise, they are disputed and discovery is requested. All Illinois plaintiffs respectfully ask that the Court return these cases back to state court in Illinois where SJY-182 cases are pending.

## II. Boeing's principal place of business was in Illinois when Illinois plaintiffs' actions commenced.[14]

In the interests of judicial economy and international comity, and pursuant to binding precedent, because some SJY-182 cases will be heard in Illinois state court, that court should hear all Illinois cases.

Boeing's principal place of business was in Illinois as of May 17, 2022.[15] With the exception of a quarterly report filed on June 30, 2022, the first date mentioned in Boeing's declaration on this point is August 16, 2022. Boeing identifies in its declaration June 30, 2022 as the earliest date its citizenship was

---

[13] *Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 194 (4th Cir. 2017); *Roche*, 373 F.3d at 616-617.

[14] In support of this section and in reply to Boeing's oppositions, plaintiffs have attached the declaration of an investigator named Brett Starr marked in sequence as Exhibit Y. Dkt. 20.

His declaration is supported by extensive research material. That material is not attached to the declaration out of courtesy to those individuals identified even though the material would not be subject to seal or redaction. *See* F.R.C.P 5.2, LCR 5 and 7(C). The documents will be given to Boeing. LCR 5(G). If Boeing contests their authenticity or accuracy, plaintiffs will file them with the Court as "provided by law" and "Court rule." LCR 5(A).

[15] Dkt. 20-5, Ex. E.

based in Virginia. The evidence demonstrates that Boeing remained a citizen of Illinois when Illinois actions commenced.

When Boeing filed its Stock-Corporation, Annual Report with the Commonwealth of Virginia's State Corporation Commission on May 17, 2022, the document was filed and signed by its president and CEO, Mr. David Calhoun.[16]

The steps taken to file the report require reflection and deliberation.[17] The reporter is required by law to identify the corporation's "directors," "principal officers" including their "post office addresses,"[18] and when an officer signs the form:[19]

> The undersigned affirms that the information contained in this electronic submission is accurate and complete and that the undersigned is legally authorized to sign the document. The undersigned acknowledges that it is unlawful to sign a document that is false in any material respect with the intent that it be delivered to the Commission for filing.

Many individuals identified in Boeing's declaration were not identified by Mr. Calhoun as officers or directors pursuant to Virginia law in the May 17, 2022 report.[20] It follows that those individuals identified in Boeing's declaration not listed in the

---

[16] Id.

[17] Ex. Z (State Corporation Commission – File an Annual Report in the Clerk's Information System).

[18] Code of Virginia § 13.1-775(A)(3).

[19] Ex. Z, p. 2; see also Trace Mountain Prods., Inc. v. Special Data, Inc., 1994 WL 1031414(Va. Cir. Ct. Nov.3, 1994)("the annual report…was filed with the State Corporation Commission as required by law listing…directors and officers of that corporation, which report was filed under the oath of [the signatory]…")

[20] Dkt. 42, p. 8-10.

report were not directors or officers of Boeing on or about May 17, 2022.

In Virginia, "[a]ll corporate powers shall be exercised by or under the authority of the board of directors, and the business and affairs of the corporation managed under the direction, and subject to the oversight, of the board of directors…"[21] Acknowledging the board's broad powers, the declarant states that Boeing's operations are "…subject to the direction of Boeing's senior executive leadership and oversight of Boeing's Board of Directors."[22] That acknowledgement finds support in Boeing's Certificate of Incorporation:[23]

> (b) The business of the Corporation shall be managed by its Board of Directors, and the Board of Directors shall have power to exercise all the powers of the Corporation, including (but without limiting the generality hereof) the power to create mortgages upon the whole or any part of the property of the Corporation, real or personal, without any action of or by the stockholders, except as otherwise provided by statute or by the By-Laws.

---

[21] VA Code Ann. § 13.1-673(B); *Sfreddo v. Sfreddo*, 59 Va. App. 471, 481-482 (2012)(The "intent of the board of directors is necessarily the intent of the corporation," the board of directors have the "widest powers" under Virginia law). The current board exercised their wide powers when they recently refused to payout a bonus to Boeing's CEO. Tangel, Andrew, *Boeing Board Denies CEO David Calhoun a Performance Bonus*, The Wall Street Journal, March 3, 2023 available at https://www.wsj.com/articles/boeing-board-denies-ceo-david-calhoun-a-performance-bonus-3a3a6c74 (last checked July 24, 2023.

[22] Dkt. 42, p. 5.

[23] The Boeing Company, Amended and Restated Certificate of Incorporation, p. 4, available at https://www.boeing.com/resources/boeingdotcom/company/general_info/pdf/certificate_incorporation.pdf (last checked July 28, 2023.)

Mr. Calhoun identified as directors: himself; Robert Bradway; Susan Schwab; Ronald A Williams; Arthur D Collins; Edmund P Giambastiani; Lawrence Kellner; Lynn Good; Caroline Kennedy; John M. Richardson; Steven M. Moellenkopf; Akhil Johri; and listed everyone's post office address in Chicago, Illinois.[24]

Mr. Calhoun separately identified the following corporate officers: Natalie N. Rorem (assistant treasurer); Grant M. Dixton (secretary); David A. Dohnalek (treasurer) and listed everyone's post office address in Chicago, Illinois.[25] Boeing admits Mr. Dohnalek worked and resided in Chicago and public records demonstrate that Ms. Rorem is currently located in Chicago.[26]

Mr. Starr's research confirms that Mr. Calhoun, Mr. Bradway, Mr. Collins, Mr. Williams, Ms. Schwab, Mr. Collins, Mr. Giambastani, Ms. Rorem, Mr. Dixton, Mr. Dohnalek are not residents of Virginia and do not have associations with the state of Virginia.[27]

Boeing's declarant corroborates Mr. Starr's research stating that Mr. Calhoun's "primary residence is in New Hampshire."[28] The declarant further confirms that Mr. Dohnalek was the treasurer, resided and maintained an office in Illinois.[29] That corroboration bolsters Mr. Starr's overall research.

---

[24] Id.

[25] Id.

[26] Dkt. 20-24, Ex. X at 3.

[27] Ex. Y, p. 8.

[28] Hamoudi Declaration.

[29] Dkt. 42, p. 10-11.

Separately, Mr. Kellner's location is listed in Austin, Texas.[30] Ms. Good was located in Charlotte, North Carolina.[31] Mr. Moellenkopf was located in San Diego, California in 2022.[32]

Per Mr. Calhoun's affirmation, all the individuals legally identified as directors and officers who owe fiduciary obligations to shareholders maintained their Boeing offices in Chicago, Illinois on or about May 17, 2022, including himself.[33]

Boeing's declarant states that the directors held a virtual meeting on August 29-30, 2022, a meeting in Arlington, Virginia on October 17-18, 2022, then a meeting in St. Louis on December 8-9, 2022, but does not reveal if they made or discussed "significant corporate decisions" and "corporate policy,"[34] *Central West Virginia Energy Co., Inc. v. Mountain State Carbon, LLC.*, 636 F.3d 101, 107 (4th Cir. 2011.), or attended "executive retreat[s]." *Hertz Corp. v. Friend,* 559 U.S. 77, 97 (2010). Since Mr. Calhoun is a director, he attended both meetings, he has that information. A deposition would aid the Court in clearing up this ambiguity.

These meetings in different locations supports plaintiffs' position that Boeing was in the process of transitioning its principal place of business from Illinois to Virginia throughout 2022 into early 2023 but had not finalized the move.

---

[30] https://en.wikipedia.org/wiki/Larry_Kellner ("He resides in Austin, Texas.")(last checked July 23, 2023).

[31] https://www.duke-energy.com/our-company/about-us/leadership/lynn-j-good ("She and her husband, Brian, live in Charlotte.")(last checked July 23, 2023).

[32] Ex. AA, Moellenkopf Information.

[33] *Adelman v. Conotti Corporation*, 215 Va. 782, 790, 213 S.E.2d 774, 779 (1975)(stating that directors owe fiduciary obligations under Virginia law.)

[34] Ex. 42, p. 3-4.

That it was affirmed by Boeing's CEO and director that all these directors and officers including himself maintained offices in Chicago and as plaintiffs have demonstrated that they lived outside of Virginia further reinforces plaintiffs' position.

But there is more. Boeing then filed an additional report with the state of Virginia in December 2022 like the one Mr. Calhoun filed in May 2022. The December 2022 form affirmed a significant change while leaving intact Mr. Calhoun's earlier affirmation that all directors and officers maintained a post office box in Chicago.[35]

Ms. Rorem changed[36] the principal office from Virginia to Delaware on December 1, 2022.[37] The amendment circumstantially demonstrates that the transition was not complete and indicates that Mr. Calhoun's earlier affirmation may have been premature.

The timing of the change is circumstantially significant for another reason. Some Illinois plaintiffs had filed remand motions on October 7, 2022, prior to December 1, 2022 disputing Boeing's claim that it had moved to Virginia.[38] It is reasonable to infer that Boeing amended the report because it faced the prospect of having their CEO's earlier affirmation in May 2022 scrutinized. The board may have instructed Ms. Rorem to amend the report.

---

[35] Dkt. 20, Ex N. Ms. Norem also filed and signed a subsequent report on March 10, 2023 but was identified as President and Assistant Treasurer. Id., See Ex. T.

[36] It is reasonable to infer that Ms. Rorem filed amended report since this was the second report filed in 2022, and only one report is required annually under the law. VA Code Ann. § 13.1-775(A);(C).

[37] Dkt. 20, Ex N.

[38] *Wadu et al. v. Boeing*, No. 1-22-04896, Dkt. 14 (Motion to Remand, October 7, 2022).

Deposition and discovery will aid the Court in addressing these issues.

There is even more. Boeing first announced its plan to move to Virginia on May 5, 2022.[39] Mr. Calhoun affirmed on May 17, 2022, that they had moved to Virginia. No company, let alone a company the size of Boeing can magically transform its principal place of business within 12 days. That Boeing fails to provide evidentiary facts disputing plaintiffs' evidence that Mr. Calhoun was announcing policy to Boeing's employees from Chicago, Illinois on July 27, 2022, October 26, 2022, and January 25, 2023 speaks volumes.[40] In short, he was in Chicago throughout 2022 into early 2023 at Boeing's principal place of business making announcing policy.

Separately, Ms. Rorem, like Mr. Calhoun, identified: Edmund P Giambastiani; Arthur D Collins; Ronald A Williams; and Susan Schwab as directors listing their addresses in Chicago, Illinois.[41] It continues to follow that those individuals identified in Boeing's declaration not listed in the report were not directors or officers of Boeing on or about December 1, 2022.

As explained above, all the directors and officers in the December 1, 2022 report live and work outside of Virginia per Mr. Starr's declaration.[42]

Ms. Rorem's affirmation that all these individuals maintained an office in Chicago, Illinois shows that Mr. Calhoun's earlier affirmation, on that point, was no oversight. Both her

---

[39] Dkt. 42, fn. 2 ("Boeing Plans to Move Headquarters to Arlington, Virginia.")

[40] Dkt. 20-7, Ex. G, Dkt. 20-12, Ex. L, Dkt. 20-19, Ex. S.

[41] Id.

[42] Ex. Y, p. 8.

affirmations and Mr. Calhoun's affirmation were made subject to Virginia law, by two individuals who have deep insight as to the innerworkings of Boeing's corporate structure, and because of that, their affirmations should resolve this matter in favor of Illinois' plaintiffs' position.

> The undersigned affirms that the information contained in this electronic submission is accurate and complete and that the undersigned is legally authorized to sign the document. The undersigned acknowledges that it is unlawful to sign a document that is false in any material respect with the intent that it be delivered to the Commission for filing.

Boeing's declarant was not present at the Board meetings where these decisions were made. Ms. Rorem has unique insight since she is also Vice President of Boeing Aerospace.[43] She filed another report for Boeing Aerospace in March 2023 affirming that Chicago is Boeing Aerospace's "principal office."

For Boeing Aerospace, she identifies as officers Gregory Vogelsperger (secretary), Laura Howley (treasurer), and Tim Buerk (president) with all of them located in Illinois. As of March 18, 2023, Mr. Vogelsperger[44] was Chief Counsel, Corporate Finance and Governance for Boeing, in Chicago, Illinois where he was charged with making high level legal, finance, and governance decisions on behalf of the company, the type of decisions made at a company's principal place of business.

There is more evidence. Boeing's declarant is in Chicago where she currently keeps and maintains Boeing's corporate records lending further support that Boeing's principal place of business

---

[43] Dkt. 20, Ex. U.

[44] Mr. Vogelsperger provided a declaration in some of the Illinois cases. *Handayani v. Boeing*, No. 23-CV-00371, Dkt. 17-1. The declaration speaks to Boeing's principal place of business as of January 5, 2023.

located in Illinois.[45] The reason Boeing's Corporate records are in Chicago is because Chicago is its principal place of business:[46]

> (a) The books of the Corporation may be kept outside the State of Delaware at such place or places as may from time to time be designated by the Board of Directors.

Faced with overwhelming evidence, Boeing points to its media representations. Boeing's representations in the media and on its website claiming that Virginia was the corporation's "headquarters" are not probative because "[self-serving] materials [like articles and website postings], ... do not convert [Virginia] into the place where the corporations high level officers direct, control, and coordinate the corporation's activities." *Carbon* at 105 n.2 (quoting *Hertz*, 559 U.S. at 80) (quotations omitted). These representations reflect a reality in corporate or brand imaging—that a company's desire to create a particular perception outpaces reality.

For example, Boeing's declarant states "Boeing currently employs approximately 500 people," in Arlington, Virginia.[47] On May 29, 2022, the Virginia Business, a local publication, reported that "Boeing already employs 400 people at its 4.7-acre campus in Arlington's Crystal City — near Amazon.com Inc.'s HQ2 and Virginia Tech's Innovation Campus."[48] By its own admissions, to date, a

---

[45] Dkt. 42, p. 1; *see also Brown v. PracticeLink, Ltd.*, 2017 Fair Empl. Prac. Cas. (BNA) 434099, 2017 WL 6029630, *4 (S.D. W. Va. 2017)(concluding in part that citizenship was in St. Louis because corporate records were kept and maintained there.)

[46] See Footnote 23.

[47] Dkt. 42, p. 3.

[48] Andrews, Kate, *Boeing will move global HQ to Arlington*, Virginia Business, May 29, 2022 available at https://www.virginiabusiness.com/article/boeing-will-move-global-hq-to-arlington/ (last checked July 26, 2023.)

company with more than "141,500 employees" has managed to move roughly a 100 people to its new principal place of business since May of last year. But the declaration fails to state how many employees worked in Arlington when these actions commenced months ago. Considering the two annual reports filed by Boeing in the state of Virginia in 2022 that list all post office addresses for directors and officers in Illinois, it is reasonable to conclude that no one or maybe a handful moved there in 2022 from Chicago.

The declarant states "[t]he matters stated here are based on my review of Boeing's corporate records, work product generated by Boeing employees based on those corporate records, and/or my personal knowledge," but does not identify the records or work product so that they can be adequately confronted in a reply.[49]

In contrast, plaintiffs will disclose to the defendant the information underlying their declaration. This is why discovery is necessary so that documents are produced in an orderly fashion. For example, Boeing cited its 10-Q report in support of its position that they were in Virginia but did not provide the entire report to the Court. Plaintiffs provided the document in its entirety then identified factual issues. Dkt. 19, p. 3. Without discovery, plaintiffs are left with having to scour public records.

Public records show its principal place of business was in Chicago, Illinois at the end of 2022. In its 2022, proxy statement, Boeing directs shareholders to send proposals and nominations for directors to Chicago, Illinois all the way into January 29, 2023.[50]

---

[49] Dkt. 42, p. 1.

[50] Boeing, 2022 Annual Meeting of the Shareholders, April 29, 2022 available at https://s2.q4cdn.com/661678649/files/doc_financials/2021/ar/Boeing-2022-Proxy-Statement.pdf (last checked July 26, 2023.)

## The 2023 Annual Meeting

### Proposals for Inclusion in 2023 Proxy Statement

If you wish to submit a proposal for inclusion in our 2023 proxy statement, you must follow the procedures set forth in Rule 14a-8 of the Securities Exchange Act of 1934. To be eligible for inclusion, we must receive your proposal at the address below no later than Friday, November 11, 2022.

### Director Nominations for Inclusion in 2023 Proxy Statement (Proxy Access)

Subject to certain requirements, our By-Laws permit a shareholder, or a group of up to 20 shareholders, that has owned at least 3% of our outstanding common stock for at least three years to nominate and include in our annual meeting proxy materials directors constituting the greater of two individuals and 20% of the Board. Any such nomination must be received at the address below no earlier than the close of business on Wednesday, October 12, 2022 and no later than Friday, November 11, 2022. Any such notice must meet the other requirements set forth in our By-Laws, which are publicly available on our website.

### Other Proposals or Nominations

Our By-Laws require that we receive advance written notice for any shareholder proposal or director nomination that is not submitted for inclusion in our proxy statement. Any such proposal or nomination must be received at the address below no earlier than the close of business on Friday, December 30, 2022 and no later than the close of business on Sunday, January 29, 2023. Any such notice must meet the other requirements set forth in our By-Laws, which are publicly available on our website.

### Where to Send All Proposals and Nominations

Office of the Corporate Secretary
The Boeing Company
100 North Riverside Plaza
MC 5003-1001
Chicago, Illinois 60606-1596

Boeing's By-Laws list Arlington as the "Corporation's executive offices," but those By-Laws were "amended and restated" after these suits were filed:[51]

**BY-LAWS**

**OF**

**THE BOEING COMPANY**

(as amended and restated effective April 5, 2023)

Boeing has provided pleadings filed by its attorneys to the Court to demonstrate that Boeing's principal place of business was in Virginia when these actions commenced to counter pleadings provided by Illinois plaintiffs that stated otherwise. An attorney's assertion in a pleading does not establish Boeing's principal place of business because, "[t]he parties'

---

[51] Dkt. 42. Fn. 5.

characterization of themselves or their claims is not determinative for federal jurisdiction purposes."[52]

Plaintiffs brought those pleadings to the Court's attention to demonstrate factually "that Boeing had not completed its transition from Illinois to Virginia."[53] The attorneys that now state they made a mistake do not disclose the factual basis that changed their position.[54] They may have waived the underlying work product supporting the claimed mistakes.[55] That work product would include the correspondences sent and received between Boeing and these attorneys regarding the issue. Boeing does not provide a declaration confirming that it has corresponded with all agents advocating its interests in courts to determine if others made "mistakes."

Though it is not their burden, Plaintiffs have clearly shown that Boeing's principal place of business was in Illinois when these actions commenced. Stated differently, Boeing cannot plausibly demonstrate by a preponderance of the evidence that its principal place of business was not in Illinois when these actions commenced.

The Court should resolve this issue in plaintiff's favor because of that failure. If not and to the extent Boeing's

---

[52] *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 118 (4th Cir. 2004) (quoting *Roche v. Lincoln Prop. Co.*, 373 F.3d 610, 615–16 (4th Cir. 2004)).

[53] Dkt. 19, p. 5.

[54] Dkts. 40, 43.

[55] *U.S. v. Caldwell*, 7 F.4th 191, 207 (4th Cir. 2021) (when an attorney freely and voluntarily discloses the contents of otherwise protected work product to someone with interests adverse to his or those of the client, he may be deemed to have waived work product protection.)

15

declarations suggest otherwise, plaintiffs dispute all declarations filed by Boeing with this Court and filed in Illinois. Further, plaintiffs renew their request for discovery.

Plaintiffs request that Boeing answer the interrogatories it previously agreed to answer.[56] Plaintiffs request an opportunity to depose Mr. Calhoun and Ms. Rorem given their affirmations to the state of Virginia's Corporation Commission regarding Boeing's principal place of business and the location of its officers and directors. Finally, plaintiffs request an opportunity to depose Boeing's declarants and request the opportunity to review the documents they have relied on including documents favorable to plaintiffs that have been withheld.

### III. The forum defendant rule applies to Illinois plaintiffs.

Illinois plaintiffs adopt the Virginia plaintiffs' arguments that the forum defendant rule applies, Boeing's snap removal was improper, and that Boeing was properly joined and served.[57] For the reasons set out by Virginia plaintiffs, the forum defendant rule applies to the Illinois plaintiffs because at the time their actions commenced, they properly joined and served Boeing in its home forum.

### IV. There is no admiralty jurisdiction.

Boeing states that it is "irrelevant" that plaintiffs allege in their complaints that the tort occurred over land.[58] This

---

[56] Dkt. 34-1, p. 16.

[57] *Kastenbaum et al. v. Boeing*, No. 1:23-cv-00044-CMH-WEF, Dkt. 24, p. 15-20; Dkt. 14, p. 14-21.

[58] Dkt. 38, p. 14, Dkt. 39, p. 16 *compare with* Dkt. 20, Ex. H, ("the autothrottle failed within minutes after the accident aircraft departed the runway and while it was over land."); Ex. K ("the auto-throttle failed within minutes after the accident aircraft departed the runway and while it was over land."); Ex. Q

16

circuit, however, clearly finds it relevant.[59] Boeing admits that the product, plaintiffs' claim was designed negligently, was designed, and built on land.[60] The alleged tort does not pose any "risk to a variety of activities essential to maritime commerce."[61] And a domestic passenger flight bound from Jakarta International Airport to Supadio International Airport in Pontianak, Indonesia does not show a "substantial relationship" to traditional maritime activity.[62] That the two airports were separated by water presents "too attenuated a relationship to traditional maritime activity."[63]

While it is true that SJY 182 ultimately crashed into the water, the focus is not where the tortuous harm ended but when "the alleged negligence became operative while the aircraft was on or over navigable waters."[64] The rule makes sense otherwise

---

("while it was flying over land."); Ex. R ("the autothrottle failed within minutes after the accident aircraft departed the runway and while the aircraft was over land.").

[59] *Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 226-228 (4th Cir. 2022) ("BP P.L.C.")

[60] Dkt. 15, p. 9-10 ("The SJY 182 aircraft was assembled in the State of Washington, which is also where most of Boeing's design work for the 737-500 aircraft and its Cruise Thrust Split Monitor ("CTSM") took place. Boeing's activities in connection with the design, manufacture, assembly, testing, and certification of Boeing 737-500 model aircraft, the CTSM, and the manuals for the accident aircraft were based predominantly in the State of Washington.")

[61] *White v. U.S.*, 53 F.3d 43, 47 (4th Cir. 1995.)

[62] *Id.*

[63] *Id.*

[64] *Compare Executive Jet* 409 U.S. 249, 264 (1972); *and Executive Jet Aviation, Inc. v. City of Cleveland*, 448 F.2d 151, 154 (6th Cir. 1971) ("the alleged tort in this case occurred on land before the aircraft reached Lake Erie…") *with Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995)("The place

17

admiralty jurisdiction in cases involving the same alleged tort would lie simply if the plane crashed in water as opposed to land creating an absurd disparity where some freak events are subject to admiralty jurisdiction whereas others are not even if the tortuous conduct originated on land in the United States decades earlier. "It was manufactured in 1994 and initially delivered to Continental Airlines on May 31, 1994, in Washington state." Dkt. 15, p. 2.

Finally, Illinois plaintiffs have not waived their right to invoke common-law remedies in state court. Dkt. 19, p. 11-12. This is another attempt by Boeing to create procedural disparity between the plaintiffs.

**V. Conclusion**

Plaintiffs respectfully ask that the Court remand these cases for the reasons set out in all their pleadings filed in this Court and in Illinois federal court.

As the Honorable Robert Dow concluded, federal jurisdiction does not lie over some Illinois plaintiffs' actions.[65] Though his decision's precedential value is limited to some of its facts, it has a great deal of value for purposes of judicial economy and international comity.

To maintain congruity between similarly situated plaintiffs already in state court in Illinois, the Court should respectfully remand these cases. Boeing will not suffer prejudice because it can raise its "textbook"' case for FNC in Illinois state court

---

in the river where the barge sat, and from which workers directed the crane [the tort arose], is in the 'navigable waters of the United States.'") and *Lu Junhong v. Boeing*, 792 F.3d 805 (7th Cir. 2015)(wrong occurring while the aircraft was over the ocean).

[65] *Riyanto v. Boeing*, No. 21-1475, 2022 WL 16635556 (N.D. Ill. Nov. 2, 2022) (Riyanto I).

18

where its Chief Legal Counsel and all its corporate records are currently located.[66] Indeed, Boeing prefers to be in Illinois state even though its preference is federal court.[67]

Dated: July 28, 2023.         Respectfully submitted,

By: */s/ Mohammad Hamoudi*
      By Counsel
Charles Herrmann (WA Bar No. 6173)
Anthony Marsh (WA Bar No. 45194)
Mohammad Hamoudi (WA Bar No. 48512, CA Bar No. 273104)
Pro Hac Vice
HERRMANN LAW GROUP
505 5th Avenue South, Suite 330
Seattle, WA 98104
(206) 625-9104


By: */s/ Thomas Patrick Routh*
      By Counsel
Thomas Patrick Routh
Nolan Law Group
20 N Clark St 30th Floor
Chicago, Illinois 60602-5094
(312) 630-4000

---

[66] *Vivas v. Boeing Co.*, 392 Ill. App. 3d 644, 657, 331 Ill.Dec. 827, 911 N.E.2d 1057 (2009); *Milton v. The Boeing Company*, 2023 IL App (1st) 220647 (Ill. App. February 3, 2023); *Arik v. Boeing Co.*, No. 1-10-0750, 2011 IL App (1st) 100750-U, at *2-3 (Ill. App. Ct. Jan. 10, 2012).

[67] Ex. BB ("The reason we've argued in favor of the Northern District of Illinois is that that's where the first filed cases are. That's where the majority of the decedents are represented. There's only six unique decedents in the Eastern District of Virginia, and the evidence with respect to Boeing's activities would primarily come out of Washington state because the aircraft would have been designed and manufactured there.")

By:   */s/ Floyd Wisner*
         By Counsel
Floyd A. Wisner
Alexandra Wisner
Wisner Law Firm
161 N. Clark Street Suite 1600
Chicago, Illinois 60601
(312) 216-5168


By:   */s/ Sanjiv N. Singh*
         By Counsel
Sanjiv N. Singh
Sanjiv N. Singh, A Professional Law
Corporation
1700 S. El Camino Real Suite 503
San Mateo, CA 94402
(650) 389-2255


By:   */s/ Michael B. Indrajana*
         By Counsel
Michael B. Indrajana
Indrajana Law Group, A Professional
Law Corporation
1700 S. El Camino Real Suite 503
San Mateo, CA 94402
(650) 597-0928


By:   */s/ Vincent C. Mancini*
         By Counsel
Vincent C. Mancini
Reimer Dobrovolny & La Bardi PC
15 Spinning Wheel Road
Suite 310
Hinsdale, IL 60521
(630) 654-9547